UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| POWER INVESTMENTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. |
| CARDINALS PREFERRED, LLC, | ) |
| | ) |
| Serve at: 405 Lexington Ave., 59th Floor | ) |
| New York, NY 10174 | ) |
| | ) |
| Defendant. | ) |
| | ) |

## VERIFIED COMPLAINT

Plaintiff Power Investments, LLC, for its Verified Complaint against Defendant

Cardinals Preferred, LLC, states as follows:

## Parties

1.      Plaintiff Power Investments, LLC ("**Power**" or the "**Class A Unitholder**") is a

limited liability company organized and existing under the laws of the State of Nevada.  Its

members are citizens of Kentucky, Nebraska, and New York.  Power is therefore a citizen of

Kentucky, Nebraska, and New York.

2.      Defendant Cardinals Preferred, LLC ("**Cardinals**" or the "**Preferred**

**Unitholder**") is a limited liability company organized and existing under the laws of the State of

Delaware.

3.      Based on information and belief, Cardinals has four members.  The names of its

members are highly confidential business information, but information concerning the specific

names of the members is available for *in camera* review by this Court.  For the purposes of this

Complaint, in order to preserve sensitive and confidential business information, the members shall be referred to as "Member 1," "Member 2," etc., and are described as follows:

    a.    Member 1 is a limited liability company organized and existing under the laws of the State of Delaware.  The sole member of Member 1 is a Canadian corporation organized under the laws of Canada, with its principal place of business in Ontario, Canada.  Member 1 is therefore a citizen of Canada.

    b.    Member 2 is a limited liability company organized and existing under the laws of the State of Delaware.  The sole member of Member 2 is the same Canadian corporation organized under the laws of Canada, with its principal place of business in Ontario, Canada.  Member 2 is therefore a citizen of Canada.

    c.    Member 3 is a limited liability company organized and existing under the laws of the Cayman Islands.  The sole member of Member 3 is the same Canadian corporation organized under the laws of Canada, with its principal place of business in Ontario, Canada.  Member 3 is therefore a citizen of Canada.

    d.    Member 4 is a limited liability company organized and existing under the laws of the State of Delaware.  The sole member of Member 4 is a C-Corporation organized under the laws of the State of Delaware, with its principal place of business in Ontario, Canada.  Member 4 is therefore a citizen of Canada and Delaware.

4.    Cardinals is therefore a citizen of Delaware and Canada.

## Jurisdiction and Venue

5.    This Court has jurisdiction over this case under 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties and the amount in controversy exceeds the sum or value of $75,000.00.

6.    The amount in controversy is satisfied for various reasons, including without limitation that: (a) the value of Ashley Energy LLC, the company a substantial part of whose ownership and shares are at issue in this dispute, far exceeds $75,000.00; and (b) the 999,222 Preferred Units whose status is at issue in this dispute were initially purchased for $999,222 and have a market value that far exceeds $75,000.00.

7.    This Court has personal jurisdiction over Defendant in that Defendant has expressly consented to the jurisdiction of this Court.  Ex. 1 (Agreement) § 15.8.

8.    This Court has personal jurisdiction over Defendant notwithstanding Defendant's contractual assent.  Defendant has been a part owner of the Company, a Missouri limited liability company with its operations located exclusively in Missouri, since 2017.  Through its ownership interest in the Company and its conduct complained of below directly affecting the ownership status and structure of the Company, Defendant has purposefully availed itself of the forum, and—in light of its ownership interest and conduct—it was reasonably foreseeable that Defendant could be sued in Missouri.  Further, the claims herein concern the ownership status and structure of the Company, a Missouri company with only Missouri operations, and therefore arise at least in part from Defendant's contacts with Missouri.  Finally, Missouri has a substantial interest in hearing this dispute since it concerns the ownership status and structure of a Missouri company with only Missouri operations, and any burden or logistical inconvenience to Defendant of having this dispute decided in Missouri is insignificant.

9.    Venue is proper in this Court because all parties have expressly consented to jurisdiction and venue in this Court for the present dispute.  Ex. 1 § 15.8.

10.    Venue is likewise proper in this Court under 28 U.S.C. § 1391(b)(2) and (b)(3).

11.    A substantial part of the events or omissions giving rise to Power's claim occurred in this District.  Specifically, and as further described below, this dispute concerns the ownership and shares of Ashley Energy LLC, a Missouri limited liability company with its operations located exclusively within this District.

12.    Additionally, venue is proper in this Court because Cardinals is subject to this Court's personal jurisdiction with respect to this action, as described above.

## Facts

13.     Power is a member of Ashley Energy, LLC (the "**Company**" or the "**LLC**").

14.     Cardinals is also a member of the Company.

15.     Power and Cardinals are also each referred to under the Agreement as a "**Unitholder**." Ex. 1 *passim*.

16.     The Company's ownership structure is set forth in that certain *Ashley Energy LLC Amended and Restated Limited Liability Company Agreement* (the "**Agreement**"). A true and accurate copy of the Agreement is attached as Exhibit 1.

17.     In 2017, Power and Cardinals partnered to purchase 100% of the Company.

18.     Specifically, on August 8, 2017, the Company's Original Member, Michael Becker, transferred 100% of the Company's equity interests to Power, also known under the Agreement as the "Class A Unitholder." Ex. 1 at 1.

19.     Also on August 8, 2017, Cardinals, also known under the Agreement as the "Preferred Unitholder," purchased 999,222 Preferred Units of the Company in exchange for an investment of $999,222.00. *Id.*

20.     Power is the sole owner of the Company's Class A Common Units and owns 850,988 such units. *Id.* at Schedule I.

21.     Cardinals is the sole owner of the Company's Preferred Units and owns 999,222 such units. *Id.*

22.     Section 10.5 of the Agreement sets forth a Call Option. *Id.* § 10.5(b).

23.     The Call Option provides: "At any time on or following August 9, 2021, a majority of Class A Common Units shall have the right to purchase a portion or all of the

Preferred Units pursuant to this <u>Section 10.5(b)</u> (the "<u>Call</u>").  The Call shall be consummated within the same time period and at the same price described in Section 10.5(a) above." *Id.*

24.     Therefore, at any time on or after August 9, 2021, Power—the majority Class A Unitholder—was entitled to exercise its rights under the Call and thereby purchase all or a portion of the Company's Preferred Units.  *Id.*

25.     Pursuant to Section 10.5(b), the Call shall be consummated at the price described in Section 10.5(a), which specifies the pricing of the Put as follows:

> The price for Preferred Units sold to the LLC in accordance with this <u>Section 10.5(a)</u> shall be equal to the greater of (x) the sum of (1) the Preferred Unitholder's Unreturned Capital and (2) the Preferred Unitholder's Unpaid Return, in each case as of the date of such redemption or (y) the price of the Preferred Units calculated in accordance with the following formula:
>
> $$E * 11 - D - WC - O$$
>
> E = trailing twelve month EBITDA, as determined by LLC's auditors, measured from the month ending prior to redemption;
> D = all secured debt outstanding at the time of redemption;
> WC = adjusted working capital, as determined by the LLC's auditors;
> O = other material, on-balance sheet LLC obligations, measured for the month ending prior to redemption

*Id.* § 10.5.

26.     Therefore, the Call, once exercised by Power—the majority Class A Unitholder—must be consummated at the price described in Section 10.5(a).  *Id.*

27.     The price formulas set by Section 10.5 applicable to the Put Option and Call Option are to be calculated as of the time of exercise by the purchasing party.  *Id.*

28.     Therefore, the purchase price for Power's purchase of the Preferred Units pursuant to the Call Option is to be calculated as of August 9, 2021, when Power exercised its Call.  *Id.*

29.     Also pursuant to Section 10.5(b), the Call, once exercised by the majority Class A Unitholder, shall be consummated within the timing specified by Section 10.5(a) governing the Put, which provides that the Put shall be consummated within six months after the delivery of notice of exercise: "The Put shall be consummated within six (6) months after the delivery of notice that the Preferred Unitholder has exercised the Put (such date of consummation, the "Put Closing").  If the Put Closing does not take place in accordance with Section 10.5(a) or to the extent that the LLC may not, as of the Put Closing legally redeem the Preferred Units, such redemption will take place as soon as legally permitted." *Id.*

30.     Therefore, the Call, once exercised by Power—the majority Class A Unitholder— must be consummated within six months after the delivery of notice that Power has exercised the Call. *Id.*

31.     The parties specifically agreed that they would cooperate so as to ensure the purposes of the Agreement are achieved: "The Parties agree to execute and deliver all documents, provide all information and take or refrain from taking such actions as may be necessary or appropriate to achieve the purposes of this Agreement." *Id.* § 15.12.

32.     The parties further agreed that specific performance and injunctive relief would be available as potential remedies for breach of any provision of the Agreement: "The Parties agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of this Agreement and that the LLC and each Unitholder may in its sole discretion apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive relief (without posting a bond or other security) in order to enforce or prevent any violation of the provisions of this Agreement." *Id.* § 15.3.

33.     On and effective August 9, 2021, Power exercised the Call as set forth in the Call Option (Agreement § 10.5) and thereby proceeded with purchasing all of the Company's Preferred Units.

34.     On August 9, 2021, Power delivered written notice to Cardinals of Power's Call exercise and resulting purchase of the Preferred Units, as well as the Call purchase price in accordance with the Section 10.5(a) price formula, namely: $1,610,971.77.  A true and accurate copy of Power's Call Notice is attached as Exhibit 2.  Power sought to consummate the transaction immediately.  *Id*.

35.     The Call Notice was delivered to Cardinals' office located at 405 Lexington Ave., 59th Floor, New York, NY 10174 via courier, facsimile, and mail on August 9.  *Id*.

36.     The purchase price amount includes a total return of $611,749.77 over the life of Cardinals' 4-year investment, or 61%, on its original $999,220.00 investment.

37.     Since receiving the Call Notice, Cardinals has informed Powers that it is unwilling to comply with its obligations under the Agreement to consummate and close the Call.

38.     On an August 12, 2021 phone call, representatives of Cardinals made all of this clear to Mason Miller, Power's representative, despite also admitting to Mr. Miller that Section 10.5 of the Agreement is "very clear" in providing Power with the Call Option it exercised.  On that phone call, the Cardinals' representatives even asked Power to retract its exercise of the Call (which Power declined to do).  Cardinals also refused to permit Power to consummate the call and refused to provide payment/wire instructions.

39.     Further, after receiving Power's notice, Cardinals began taking steps to prevent the consummation and closing of the Call, including attempting to convert its Preferred Units— all of which Cardinals was already obligated to sell to Power by virtue of the Call exercise.

40.     Section 4.1(a) provides a mechanism by which the Preferred Unitholder may convert Preferred Units it owns into Class A Common Units.  Ex. 1 § 4.1(a).

41.     Almost a week after receiving the Call Notice, Cardinals informed Power that Cardinals was attempting to convert all of its 999,222 Preferred Units to Class A Common Units under Section 4.1(a) in an effort to "moot" Power's Call.

42.     Specifically, shortly after 7:00 p.m. Central on Sunday, August 15, 2021—six days after receiving Power's notice—Cardinals faxed Mr. Miller a letter purporting to provide notice that Cardinals is converting all of its Preferred Units into Class A Common Units pursuant to Section 4.1(a).  A true and accurate copy of the August 15 Letter to Mr. Miller is attached as Exhibit 3.

43.     Cardinals sent a second letter at that same time to Mr. Miller, as a board member of Ashley Energy, giving the board the same notice.  A true and accurate copy of the August 15 Letter to the Board is attached as Exhibit 4.

44.     Section 4.2(a) of the Agreement provides that the effective time of conversion of Preferred Units under Section 4.1(a) is "[t]he close of business on the date of receipt by the LLC of such notice [of conversion]."  Ex. 1 § 4.2(a).

45.     Thus, notwithstanding the fact that Cardinals' purported conversion attempts to convert all of the very shares that Power has already begun purchasing through its Call, the earliest Cardinals' attempted conversion could even become effective is the close of business on Monday, August 16, 2021—after the filing of this Complaint.  *Id.*

46.     Cardinals' August 15, 2021 letters further purported to reject Power's exercise of its Call Option, despite admitting that Cardinals had received Power's August 9, 2021 notice of its Call exercise.  Ex. 3 at p.1; Ex. 4 at p.1.  These attempts to convert the Preferred Units so as to

"moot" Power's Call constitutes immediate and irreparable harm to Cardinals, as it purports to prevent Power from purchasing and owing the Preferred Units, as bargained for in the Agreement.

47.     Further, after receiving Power's notice, Cardinals has threatened to take additional steps to frustrate and/or prevent the consummation and closing of the Call pursuant to the Agreement.

48.     Specifically, in a separate August 12, 2021 phone call, a Cardinals representative communicated to Mr. Miller that Cardinals believed it has the power to delay the closing of Power's Call at least six months, and to take steps to significantly increase the Call's purchase price by forcing cash distributions from the Company, and prematurely settling an as-yet-unlitigated and unliquidated subrogation claim by the Company against the Metropolitan St. Louis Sewer District and forcing those proceeds to be distributed as well.  The representative also expressed that he had no intention of selling the Preferred Units at the price contemplated by section 10.5 of the Agreement.

49.     These threats were made despite, earlier in the day on August 12, 2021, a Cardinals representative admitting by email that the Agreement requires consummation of the Call purchase within six months of Power's notice and in the same email chain admitting that the price mechanics for the Call Option are the same as for the Put Option under the Agreement. August 12 email chain at pp. 1-3, a true and accurate copy of which is attached as Exhibit 5.

50.     In an email the following day, on August 13, the Cardinals' representative further acknowledged that the Board of the Company, including Cardinals' two Board members, had unanimously approved the form and methodology of the calculation of the price set forth in the

Call exercise.  August 13 email at p.1, a true and accurate copy of which email chain is attached as Exhibit 6.

51.     The closing delay threatened by Cardinals represents an attempt to delay the closing indefinitely so as to make execution of the Call purchase impossible, which again constitutes irreparable harm to Power.

52.     The delay and/or refusal to consummate the Call threatened by Cardinals represent an attempt to raise the purchase price for Power's Call significantly, under a scenario where the purchase price is calculated as of the date of closing.

53.     The Agreement does not provide for the Call purchase price to be calculated as of the date of closing; on the contrary, it requires the purchase price to be calculated as of the date of Power's exercise of the call.  Ex. 1 § 10.5.

54.     Beyond Cardinals' wholesale refusal to comply with its obligations to consummate and close the Call and its attempt to subvert Power's Call through conversion, Cardinals' taking the additional threatened steps would render impossible the consummation and closing of Power's Call pursuant to the Agreement because it would delay the start of the closing process (which involves a number of events that must happen in sequence over a period of months) and would improperly burden Power with a higher purchase price that it is not obligated to pay.

55.     Power exercised its Call Option, including delivering the required notice, before Cardinals informed Power of its refusal to comply with its contractual obligations with respect to the Call, its attempted conversion of all of the Preferred Units, and its threat to take additional subversive actions.

56.     The parties agreed that they would have all rights and remedies available to them under any law, including the Agreement: "Each Unitholder shall have all rights and remedies set forth in this Agreement and all rights and remedies which such person has been granted at any time under any other agreement or contract and all of the rights which such Person has under any law." Ex. 1 § 15.3.

57.     The parties further agreed that Missouri law would govern this dispute and this Court would be an appropriate venue: "This Agreement and any dispute hereunder shall be governed by, and construed in accordance with, the laws of the State of Missouri, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Missouri or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Missouri.  Any dispute relating to this Agreement shall be heard in the state or federal courts of Missouri, and the Parties agree to jurisdiction and venue therein." Id. § 15.8.

## COUNT I – DECLARATORY RELIEF

58.     Plaintiff restates and re-alleges paragraphs 1 through 57 as if fully set forth herein.

59.     The Declaratory Judgment Act ("the Act") provides in relevant part that: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Act further provides: "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." Id.

60.     To state a claim under the Act, the plaintiff must meet the "case or controversy" requirements of Article III of the Constitution and have standing to sue under the relevant state law. Cooper Indus., LLC v. Spectrum Brands, Inc., 2017 WL 1078045, at *1-2 (E.D. Mo. Mar. 22, 2017).  Under Missouri law, a party must be a party to a contract or third-party beneficiary

thereof in order to have standing to obtain a declaration of rights, status, and legal relationship under that contract. *Id.*

61.     An actual and justiciable controversy exists between Power and Cardinals, and this Court is vested with the power to declare the rights and other legal relations of the parties with respect to the Agreement and the Call Option set forth therein.

62.     An actual and justiciable controversy exists because Power, pursuant to the Agreement, has exercised its Call Option rights in order to purchase all of the Company's Preferred Units, and delivered notice of same and of Power's intent to consummate and close the Call, and Cardinals, after receiving Power's notice, has informed Powers that it intends not to comply with its obligations under the Agreement to consummate and close the Call, and is threatening to take steps to frustrate and/or prevent the consummation and closing of the Call pursuant to the Agreement, including delaying the closing to try to impose on Power an unauthorized and falsely inflated purchase price.

63.     An actual and justiciable controversy further exists because after receiving Power's notice, Cardinals has taken steps to try to prevent the consummation and closing of the Call.  Specifically, Cardinals is attempting to convert all of its 999,222 Preferred Units—all of which Power had already begun purchasing through its Call exercise—into Class A Common Units under Section 4.1(a).

64.     An actual and justiciable controversy further exists because the parties expressly agreed in Section 15.12 of the Agreement that they would "take or refrain from taking such actions as may be necessary or appropriate to achieve the purposes of this Agreement," but Cardinals has informed Power that it is refusing to take or refrain from taking actions necessary and appropriate to achieve the purposes of the Agreement, in that it is refusing to cooperate with

the consummation and closing of Power's Call pursuant to Section 10.5 of the Agreement, and intends to take actions to frustrate and/or prevent the consummation and closing of Power's Call through delay and financial manipulation to try to alter the purchase price.  Further, Cardinals is attempting to convert all of the shares subject to Power's previous Call exercise.

65.     An actual and justiciable controversy further exists because Cardinals has claimed entitlement to delay the closing of Power's Call and to avoid taking necessary and appropriate steps to consummate and close the Call within six months of Power's notice, but nothing in the Agreement so entitles them, and in fact, the Agreement is expressly to the contrary.

66.     An actual and justiciable controversy further exists because Cardinals has claimed entitlement to take financial steps to manipulate Power's purchase price upward after receiving notice of Power's exercise, but nothing in the Agreement so entitles them, and in fact, the Agreement is expressly to the contrary.

67.     An actual and justiciable controversy further exists because Cardinals contends that the purchase price for Power's Call is to be calculated as of the date of closing, but the Agreement provides that it is to be calculated as of the date of Power's exercise of the Call.

68.     Power validly exercised its Call Option, including delivering the required notice, before Cardinals informed Power of its refusal to comply with its contractual obligations with respect to the Call, its attempted conversion of all of the Preferred Units, and its threat to take additional subversive actions.

69.     The Call Option constitutes a continuing and irrevocable offer by Cardinals to Power that Cardinals cannot legally withdraw.  Once Power accepted the offer in the manner specified in the Call Option, the Call Option was exercised so as to create a binding bilateral contract that is specifically enforceable by Power against Cardinals.  *In re Estate of Schulze*, 105

S.W.3d 548, 550 (Mo. App. 2003); *Walsh v. White House Post Productions, LLC*, 2020 WL 1492543, at *5-6 (Del. Ch. Ct. Mar. 25, 2020).

70.     Conversion of Cardinals' Preferred Units into Class A Common Units constitutes an attempt to nullify and make impossible the consummation and closing of Power's Call by making all Preferred Units unavailable to be purchased by Power.

71.     Therefore, Cardinals' refusal to comply with its obligations to consummate and close the Call and its threatened subversive actions constitute anticipatory breach, and its attempted conversion of the Preferred Units constitutes actual breach, of Cardinals' obligations under Sections 10.5 and 15.12 of the Agreement.

72.     Moreover, there is implied in every contract a covenant of good faith and fair dealing.  Cardinals, therefore, owed duties of good faith and fair dealing to Power under the Agreement.

73.     Cardinals' conduct in refusing to honor and perform its contractual obligations in connection with Power's Call under Section 10.5, in attempting to convert its Preferred Units after being notified that Power had exercised its Call Option and had begun purchasing the Preferred Units, and in threatening to take additional steps to frustrate and/or prevent the consummation and closing of Power's Call through unauthorized financial manipulation of the purchase price, bespeaks a conscious effort to frustrate, prevent, and subvert the fulfillment of the exercised Call Option and therefore deprive Power of the benefits it is rightly owed under the Agreement.

74.     Thus, not only did Cardinals breach the Agreement, it also breached its duties of good faith and fair dealing.

75.     The subject matter over which Power seeks declaratory relief—the rights and other legal relations of the parties with respect to the Agreement and the Call Option set forth therein—is a matter within the subject matter jurisdiction of this Court.

76.     Power has standing under Missouri law to obtain declaratory relief under the Agreement in this Court because Power is a party to the Agreement.

77.     Power further has standing to seek declaratory relief in this Court because the parties agreed that such relief was available as a potential remedy in the event of a breach of the Agreement by the other party.  Ex. 1 § 15.3.

78.     The Agreement is a valid and enforceable contract.

WHEREFORE, Plaintiff Power Investments, LLC requests that this Court enter declaratory judgment in favor of Plaintiff Power Investments, LLC and against Defendant Cardinals Preferred, LLC, including: (1) a declaration by this Court that the Agreement is a valid and enforceable contract; (2) a declaration by this Court that the Agreement's Call Option, set forth in Section 10.5, constitutes a continuing and irrevocable offer by Cardinals to Power that Cardinals cannot legally withdraw; (3) a declaration by this Court that once Power accepted the offer in the manner specified in the Call Option, the Call Option was exercised so as to create a binding bilateral contract that is specifically enforceable by Power against Cardinals; (4) a declaration by this Court that under Sections 10.5 and 15.12 of the Agreement, Cardinals is obligated to take all steps necessary and appropriate to cooperate with the consummation and closing of Power's Call within six months of August 9, 2021, and at the purchase price of $1,610,971.77; (5) a declaration by this Court that Cardinals' refusal to consummate and close Power's Call constitutes breaches of Sections 10.5 and 15.12 of the Agreement, as well as the implied covenant of good faith and fair dealing; (6) a declaration by this Court that Cardinals'

attempted conversion of its Preferred Units constitutes a breach of Sections 10.5 and 15.12 of the Agreement, as well as the implied covenant of good faith and fair dealing; (7) a declaration by this Court that Cardinals' attempted conversion of its Preferred Units under Section 4.1(a) is invalid and ineffectual and must yield to Power's exercised Call Option rights under Section 10.5; (8) a declaration by this Court that Cardinals' threatened actions, including delaying the consummation and closing of the Call and upward financial manipulation of the purchase price after Power's notice of exercise, constitute breaches of Sections 10.5 and 15.12 of the Agreement, as well as the implied covenant of good faith and fair dealing; (9) a declaration by this Court that the Agreement does not entitle Cardinals to delay the consummation and closing of Power's Call or to avoid taking necessary and appropriate steps to consummate and close the Call within six months of Power's notice; (10) a declaration by this Court that the Agreement does not entitle Cardinals to manipulate the Call purchase price upward, including without limitation through cash infusions into the Company after Power's notice, or to impose on Power a purchase price other than the purchase price communicated by Power to Cardinals in its notice on August 9, 2021; (11) a declaration by this Court that the Agreement provides that the Call purchase price is to be calculated as of the date of Power's exercise, not the date of closing; (12) a declaration by this Court that the purchase price for Power's Call, in accordance with Section 10.5, is $1,610,971.77; and (13) such other or different declaratory relief as the Court deems just and proper.

## COUNT II – SPECIFIC PERFORMANCE

79.     Plaintiff restates and re-alleges paragraphs 1 through 78 as if fully set forth herein.

80.     The Call Option provides that on or after August 9, 2021, Power—the majority Class A Unitholder—was entitled to exercise the Call and thereby purchase all or a portion of the Company's Preferred Units.  Ex. 1 § 10.5(b).

81.    The Call, once exercised by Power—the majority Class A Unitholder—must be consummated within six months after the delivery of notice that Power has exercised the Call, at the price described in Section 10.5(a).  *Id.* § 10.5.

82.    On August 9, 2021, Power delivered written notice to Cardinals that Power was exercising the Call and was thereby proceeding with purchasing all of the Preferred Units, as well as the Call purchase price in accordance with the Section 10.5(a) price formula, namely: $1,610,971.77.

83.    The Call Option constitutes a continuing and irrevocable offer by Cardinals to Power that Cardinals cannot legally withdraw.  Once Power accepted the offer in the manner specified in the Call Option, the Call Option was exercised so as to create a binding bilateral contract that is specifically enforceable by Power against Cardinals.  *In re Estate of Schulze*, 105 S.W.3d 548, 550 (Mo. App. 2003); *Walsh v. White House Post Productions, LLC*, 2020 WL 1492543, at *5-6 (Del. Ch. Ct. Mar. 25, 2020).

84.    Thus, once Power accepted the Call Option offer, Cardinals became obligated to take affirmative steps to consummate and close Power's purchase of the Preferred Units in the manner prescribed by Section 10.5, including within six months of Power's notice of exercise and at the $1,610,971.77 price communicated by Power.  Ex. 1 § 10.5.

85.    Since receiving Power's notice, Cardinals has failed to take such steps and has indicated to Power that it is refusing to comply with its obligations to consummate and close the Call as required by Section 10.5, and instead is threatening to take steps to frustrate and/or prevent the consummation and closing of the Call.

86.     Specifically, Cardinals has threatened to delay the closing and to manipulate the purchase price upward through, at minimum, cash infusions into the Company after Power's August 9, 2021 notice in an effort to impose an unauthorized inflated purchase price on Power.

87.     Accordingly, Cardinals has anticipatorily breached Section 10.5.

88.     Cardinals, further, has taken affirmative steps to try to prevent and nullify the consummation and closing of Power's Call and associated purchase of all of the Preferred Units.

89.     Specifically, after receiving Power's notice, Cardinals has attempted to convert all of its Preferred Units to Class A Common Units under Section 4.1(a) of the Agreement.

90.     Conversion of Cardinals' Preferred Units into Class A Common Units constitutes an attempt to nullify and make impossible the consummation and closing of Power's Call by making all Preferred Units unavailable to be purchased by Power.

91.     Accordingly, Cardinals is in actual breach of Section 10.5.

92.     Further, the parties are obligated to "take or refrain from taking such actions as may be necessary or appropriate to achieve the purposes of the Agreement," i.e., to cooperate as necessary and appropriate to achieve the Agreement's purposes. *Id.* § 15.12.

93.     One of the Agreement's purposes is to provide Power with the right to exercise the Call Option and thereby purchase some or all of the Company's Preferred Units in the manner prescribed by Section 10.5, and to have that purchase consummated and closed in the manner prescribed by Section 10.5, including within six months of delivery of Power's notice and at the price set by Section 10.5(a)'s formula at the time of exercise. *Id.* § 10.5.

94.     The Agreement therefore imposes on Cardinals an obligation to take or refrain from taking such actions as may be necessary or appropriate to allow Power's purchase of Preferred Units to be consummated and closed in the manner prescribed by Section 10.5,

including within six months of delivery of Power's notice and at the price set by Section 10.5(a)'s formula at the time of exercise. *Id.* §§ 10.5, 15.12.

95.     Cardinals has informed Power that it will not take such actions as may be necessary or appropriate to allow Power's purchase of Preferred Units to be consummated and closed in the manner prescribed by Section 10.5, including within six months of Power's notice and at the price of $1,610,971.77.

96.     Specifically, Cardinals has informed Power that it is refusing to cooperate with the consummation and closing of Power's Call and associated purchase of Preferred Units as prescribed by Section 10.5.

97.     Cardinals has further informed Power that it will not refrain from taking such actions as may be necessary or appropriate to allow Power's purchase of Preferred Units to be consummated and closed in the manner prescribed by Section 10.5, including within six months of Power's notice and at the price of $1,610,971.77.

98.     Specifically, Cardinals is threatening to take steps to frustrate and/or prevent the consummation and closing of the Call, namely, through improper delay and financial manipulation in an effort to alter the purchase price.

99.     Accordingly, Cardinals has anticipatorily breached Section 15.12.

100.    Further, Cardinals is in actual breach of Section 15.12 because of its attempted conversion of the Preferred Units, which constitutes a failure to refrain from conduct as may be necessary or appropriate to cooperate in the consummation and closing of Power's Call.

101.    Power validly exercised its Call Option, including delivering the required notice, before Cardinals informed Power of its refusal to comply with its contractual obligations with

respect to the Call, its attempted conversion of all of the Preferred Units, and its threat to take additional subversive actions.

102.    Moreover, there is implied in every contract a covenant of good faith and fair dealing.  Cardinals, therefore, owed duties of good faith and fair dealing to Power under the Agreement.

103.    Cardinals' conduct in refusing to honor and perform its contractual obligations in connection with Power's Call under Section 10.5, in attempting to convert its Preferred Units after being notified that Power had exercised its Call Option and had begun purchasing the Preferred Units, and in threatening to take additional steps to frustrate and/or prevent the consummation and closing of Power's Call through unauthorized financial manipulation of the purchase price, bespeaks a conscious effort to frustrate, prevent, and subvert the fulfillment of the exercised Call Option and therefore deprive Power of the benefits it is rightly owed under the Agreement.

104.    Thus, not only did Cardinals breach the Agreement, it also breached its duties of good faith and fair dealing.

105.    As a direct and proximate result of Cardinals' breaches, Power has been damaged, and will continue to be damaged.

106.    In light of Power's consideration paid to enter into the Agreement, Power's purposes for entering into the Agreement, and Power's settled expectations regarding the Agreement's benefits, the damages caused by Cardinals' breaches are uniquely catastrophic and can only be fully cured by the remedy of specific performance.

107.     Specific performance is also authorized and warranted because the parties expressly consented to specific performance and injunctive relief as potential remedies for any breaches of the Agreement.  Ex. 1 § 15.3.

108.     The Agreement is a valid and enforceable contract.

109.     Power has performed, and continues to perform, all of its obligations under the Agreement, and stands ready, willing, and able to continue performing any and all such obligations.

WHEREFORE, Plaintiff Power Investments, LLC requests that this Court enter judgment in favor of Plaintiff Power Investments, LLC and against Defendant Cardinals Preferred, LLC, ordering Defendant Cardinals Preferred, LLC to perform its obligations under Sections 10.5 and 15.12 of the Agreement and accordingly take any and all steps necessary and appropriate to consummate and close Power's Call and associated purchase of all of the Preferred Units within six months of August 9, 2021 and at the purchase price of $1,610,971.77, and immediately enjoin Cardinals' attempted conversion of its Preferred Units to Class A Common Units and any and all steps Cardinals has taken or plans to take to prevent and/or frustrate the consummation and closing of the Call, including without limitation delaying the closing process and affecting Company finances in an effort to manipulate the purchase price upward; or such other relief as may otherwise be determined and proven at trial; and such other and further relief as is just and appropriate.

## COUNT III – BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

110.     Plaintiff restates and re-alleges paragraphs 1 through 109 as if fully set forth herein.

111.     Plaintiff brings this claim in the alternative to Count II, and seeks the relief set forth in this Count III only in the event the Court does not grant the relief sought in Count II.

112.     The Call Option provides that on or after August 9, 2021, Power—the majority Class A Unitholder—was entitled to exercise the Call and thereby purchase all or a portion of the Company's Preferred Units.  Ex. 1 § 10.5(b).

113.     The Call, once exercised by Power—the majority Class A Unitholder—must be consummated within six months after the delivery of notice that Power has exercised the Call, at the price described in Section 10.5(a).  *Id.* § 10.5.

114.     On August 9, 2021, Power delivered written notice to Cardinals that Power was exercising the Call and was thereby proceeding with purchasing all of the Preferred Units, as well as the Call purchase price in accordance with the Section 10.5(a) price formula, namely: $1,610,971.77.

115.     The Call Option constitutes a continuing and irrevocable offer by Cardinals to Power that Cardinals cannot legally withdraw.  Once Power accepted the offer in the manner specified in the Call Option, the Call Option was exercised so as to create a binding bilateral contract that is specifically enforceable by Power against Cardinals.  *In re Estate of Schulze*, 105 S.W.3d 548, 550 (Mo. App. 2003); *Walsh v. White House Post Productions, LLC*, 2020 WL 1492543, at *5-6 (Del. Ch. Ct. Mar. 25, 2020).

116.     Thus, once Power accepted the Call Option offer, Cardinals became obligated to take affirmative steps to consummate and close Power's purchase of the Preferred Units in the manner prescribed by Section 10.5, including within six months of Power's notice of exercise and at the $1,610,971.77 price communicated by Power.  Ex. 1 § 10.5.

117.     Since receiving Power's notice, Cardinals has failed to take such steps and has indicated to Power that it is refusing to comply with its obligations to consummate and close the Call as required by Section 10.5, and instead is threatening to take steps to frustrate and/or prevent the consummation and closing of the Call.

118.     Specifically, Cardinals has threatened to delay the closing and to manipulate the purchase price upward through, at minimum, cash infusions into the Company after Power's August 9, 2021 notice in an effort to impose an unauthorized inflated purchase price on Power.

119.     Accordingly, Cardinals has anticipatorily breached Section 10.5.

120.     Cardinals, further, has taken affirmative steps to try to prevent and nullify the consummation and closing of Power's Call and associated purchase of all of the Preferred Units.

121.     Specifically, after receiving Power's notice, Cardinals has attempted to convert all of its Preferred Units to Class A Common Units under Section 4.1(a) of the Agreement.

122.     Conversion of Cardinals' Preferred Units into Class A Common Units constitutes an attempt to nullify and make impossible the consummation and closing of Power's Call by making all Preferred Units unavailable to be purchased by Power.

123.     Accordingly, Cardinals is in actual breach of Section 10.5.

124.     Further, the parties are obligated to "take or refrain from taking such actions as may be necessary or appropriate to achieve the purposes of the Agreement," i.e., to cooperate as necessary and appropriate to achieve the Agreement's purposes. *Id.* § 15.12.

125.     One of the Agreement's purposes is to provide Power with the right to exercise the Call Option and thereby purchase some or all of the Company's Preferred Units in the manner prescribed by Section 10.5, and to have that purchase consummated and closed in the

manner prescribed by Section 10.5, including within six months of delivery of Power's notice and at the price set by Section 10.5(a)'s formula at the time of exercise.  *Id.* § 10.5.

126.     The Agreement therefore imposes on Cardinals an obligation to take or refrain from taking such actions as may be necessary or appropriate to allow Power's purchase of Preferred Units to be consummated and closed in the manner prescribed by Section 10.5, including within six months of delivery of Power's notice and at the price set by Section 10.5(a)'s formula at the time of exercise.  *Id.* §§ 10.5, 15.12.

127.     Cardinals has informed Power that it will not take such actions as may be necessary or appropriate to allow Power's purchase of Preferred Units to be consummated and closed in the manner prescribed by Section 10.5, including within six months of Power's notice and at the price of $1,610,971.77.

128.     Specifically, Cardinals has informed Power that it is refusing to cooperate with the consummation and closing of Power's Call and associated purchase of Preferred Units as prescribed by Section 10.5.

129.     Cardinals has further informed Power that it will not refrain from taking such actions as may be necessary or appropriate to allow Power's purchase of Preferred Units to be consummated and closed in the manner prescribed by Section 10.5, including within six months of Power's notice and at the price of $1,610,971.77.

130.     Specifically, Cardinals is threatening to take steps to frustrate and/or prevent the consummation and closing of the Call, namely, through improper delay and financial manipulation in an effort to alter the purchase price.

131.     Accordingly, Cardinals has anticipatorily breached Section 15.12.

132.    Further, Cardinals is in actual breach of Section 15.12 because of its attempted conversion of the Preferred Units, which constitutes a failure to refrain from conduct as may be necessary or appropriate to cooperate in the consummation and closing of Power's Call.

133.    Power validly exercised its Call Option, including delivering the required notice, before Cardinals informed Power of its refusal to comply with its contractual obligations with respect to the Call, its attempted conversion of all of the Preferred Units, and its threat to take additional subversive actions.

134.    Moreover, there is implied in every contract a covenant of good faith and fair dealing.  Cardinals, therefore, owed duties of good faith and fair dealing to Power under the Agreement.

135.    Cardinals' conduct in refusing to honor and perform its contractual obligations in connection with Power's Call under Section 10.5, in attempting to convert its Preferred Units after being notified that Power had exercised its Call Option and had begun purchasing the Preferred Units, and in threatening to take additional steps to frustrate and/or prevent the consummation and closing of Power's Call through unauthorized financial manipulation of the purchase price, bespeaks a conscious effort to frustrate, prevent, and subvert the fulfillment of the exercised Call Option and therefore deprive Power of the benefits it is rightly owed under the Agreement.

136.    Thus, not only did Cardinals breach the Agreement, it also breached its duties of good faith and fair dealing.

137.    As a direct and proximate result of Cardinals' breaches, Power has been damaged, and will continue to be damaged, in an amount that exceeds $75,000.

138.    The Agreement is a valid and enforceable contract.

139.    Power has performed, and continues to perform, all of its obligations under the Agreement, and stands ready, willing, and able to continue performing any and all such obligations.

WHEREFORE, Plaintiff Power Investments, LLC requests that this Court enter judgment in favor of Plaintiff Power Investments, LLC and against Defendant Cardinals Preferred, LLC, for an amount that exceeds $75,000 or as may otherwise be determined and proven at trial, plus prejudgment interest, and for such other and further relief as is just and appropriate.

Dated:  August 16, 2021                              ARMSTRONG TEASDALE LLP


By: */s/ Christopher R. LaRose*
      Christopher R. LaRose          #59612MO
      Daniel R. O'Brien                 #69258MO
      Armstrong Teasdale LLP
      7700 Forsyth Blvd., Suite 1800
      St. Louis, Missouri 63105
      Telephone:  314.621.5070
      Fax:  314.621.5065
      clarose@atllp.com
      dobrien@atllp.com

      ATTORNEYS FOR PLAINTIFF POWER INVESTMENTS, LLC

## VERIFICATION

I, Mason L. Miller, being of lawful age, hereby declare under penalty of perjury, as follows:

      1.       I am the manger and member of Plaintiff Power Investments, LLC.

      2.       I am a board member of Ashley Energy LLC.

      3.       The facts alleged in the Verified Complaint are based upon matters known

personally to me and/or on information provided to me by others, and are true and correct to the

best of my knowledge, information, and belief.


Executed within the United States of America on this 16th day of August, 2021.

_____

Mason L. Miller, Manager and Member