UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| POWER INVESTMENTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-01022 |
| | ) |
| CARDINALS PREFERRED, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DECLARATION IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

STATE OF NEW YORK       )
                                              )  ss:
COUNTY OF NASSAU      )

David Disque declares as follows:

1. I am a Managing Director employed by the investment manager for investments made or held by Cardinals Preferred, LLC ("Preferred Holder"), and I am authorized to submit this affidavit in support of Preferred Holder's Opposition to Plaintiff's Motion For Temporary Restraining Order And Preliminary Injunction (the "Motion").

2. The facts and matters set forth in this Declaration are based on my personal knowledge and/or my review of Preferred Holder's business records, and are true to the best of my knowledge, information and belief.

3. Plaintiff Power Investments, LLC ("Plaintiff") and Preferred Holder are the members and owners of Ashley Energy LLC, which operates the St. Louis district energy system and supplies steam to nearly 70 buildings, hotels, sports venues and businesses in downtown St. Louis.

4.      The parties' agreement is documented in, among other documents, an Amended and Restated Limited Liability Company Agreement (the "LLC Agreement"), attached to Plaintiff's Verified Complaint as Exhibit 1.

5.      In 2017, Ashley acquired the steam plant located at One Ashley Place, St. Louis, Missouri, 63102 to provide its services.

6.      In 2019, a force main sewer failed, causing a water intrusion event at the plant and millions of dollars in damages.

7.      With insurance recoveries still outstanding, the plant is being repaired and renovated for operations and is nearly complete (and has been nearly complete for several months).

8.      Plaintiff owns 850,988 shares of Ashley's Class A Common Units, which Plaintiff obtained for $850,988.

9.      For a payment of $999,222, Cardinal received 999,222 Preferred Units, giving it preferential rights over the common unitholders, as was negotiated, agreement up and spelled out in the LLC Agreement.

10.     Based upon their respective investments, Plaintiff owns 45.99% of Ashley Energy and Preferred Holder owns 54.01%.

11.     It was negotiated by and agreed to by the parties that the Preferred Holder would, at all times, have preferential (i.e., "preferred") rights unless and until it converted to common shares.

12.     One such preferential right that was bargained for by Preferred Holder and agreed to by Plaintiff was Preferred Holder's right to convert its Preferred Units "**at any time**" simply by giving written notice to the LLC and without paying any additional consideration. See Complaint, Exhibit 1 at §4.1(a).

13. As was agreed to by Plaintiff and Preferred Holder, the <u>only</u> limitation on the Preferred Unit conversion right is "in the event of a liquidation, dissolution or winding up of the LLC." <u>Id.</u>, at §4.1(b).

14. There is no dispute between the parties that Ashley is not facing a liquidation, dissolution or winding up of the LLC, and thus §4.1(b) is not applicable.

15. Per the LLC Agreement, the effect of conversion is that all such Preferred Units surrendered for conversion are no longer deemed outstanding "immediately" as of the Conversion Time, defined as the close of business on the date of receipt by Ashley of the notice of the conversion.

16. The Agreement also provides for a put option by which the Preferred Holder could require the redemption of its Preferred Units at a per unit price based on a formula specified in the LLC Agreement. <u>See</u> Complaint, Exhibit 1 at §10.5(a). The formula depends on various accounting factors measured either "from the month ending prior to the redemption" or "at the time of redemption."

17. This section of the LLC Agreement requires that the put option be consummated within six (6) months after delivery of notice by the Preferred Holder of a decision to exercise the put option. The date of consummation is defined in the Agreement as the "Put Closing" and is separately referred to in the agreement as "such redemption". <u>See id.</u>, Exhibit 1 at §10.5(a)(ii). Redemption is thus the closing of the transaction, not the initial notice date.

18. The provision was negotiated in the event that the Preferred Holder was unhappy with its investment and participation in Ashley, and thus created a mechanism by which Ashley would be required to buy out (i.e., redeem) the Preferred Holder's interest.

19. At the same time, the LLC Agreement also provided for a call option, by which Plaintiff could notice an intent to buy out the Preferred Holder, subject to the other rights and obligations of the Preferred Holder in the LLC Agreement.

20. Providing notice of an intent to call the Preferred Holder's Preferred Units required notice of Power's intention to do so, with the LLC Agreement then providing that "[t]he Call shall be consummated within the same time period and at the same price described for the put option." Complaint, Exhibit 1 at §10.5(b).

21. In light of the water intrusion event and damages at the plant, which adversely affected operations for many months, the earnings and accounting metrics applicable to Ashley have been artificially depressed, while at the same time providing Ashley Energy tens of millions of insurance proceeds to reconstruct the plant.

22. Upon information and belief, and now seeing that Plaintiff has attempted, through litigation, to force Preferred Holder to sell its Preferred Units at an artificially and abnormally low valuation. Preferred Holder has concerns that Mr. Miller – who is both the member of Power Investments (Plaintiff) as well as the CEO/Manager of Ashley Energy – has been self-dealing and managing Ashley Energy so as to manipulate the reconstruction schedule, the timing of insurance payments, and the earnings exclusively for Plaintiff's benefit, in breach of his fiduciary duties in order to try to facilitate the exercise of the call option -- a scheme in the making for many months.

23. As set forth in the LLC Agreement, once Plaintiff sends a notice of intent to begin the call of the Preferred Units, the Preferred Holder's options are (1) allow a redemption and transfer of its Preferred Units (while making sure that the accounting metrics are correct and the price to be calculated is consistent with the LLC Agreement), or (2) convert its Preferred Units to

Common Units, thereby losing its preferential status and rights over the Common Units. Either alternative benefits Plaintiff and forces the Preferred Holder to make a choice.

24. In addition to being squarely provided for by the LLC Agreement -- and consistent with Preferred Holder's preferred rights – this was also built in precisely at the suggestion of Plaintiff's principal, Mason Miller, who at the time of the negotiation of the LLC Agreement stated that in a scenario where the investment became more valuable than the value implied by the put / call formula, he should not be able to do what he is attempting to do here. Indeed, Mr. Miller's exact words were "**we shouldn't be able to call your equity at a value of 2X at closing and keep the spread for ourselves.**"

25. On Thursday, August 12, 2021, undersigned Declarant was notified that Mr. Miller had purportedly sent notice to Preferred Holder's offices (which remain largely empty due to COVID related restrictions) of his intent to proceed with the call / conversion process outlined above.

26. Although Preferred Holder had up to six (6) months to make its election, as redemption would not occur until a closing, Preferred Holder elected to exercise its rights to immediately convert its Preferred Units to Common Units, giving up its preferential rights and status in exchange and becoming a common unit holder in Ashley Energy.

27. While Plaintiff asserts wild, unfounded allegations that Preferred Holder is somehow not acting in good faith by exercising its preferred rights, Preferred Holder firmly believes that, upon full investigation into Plaintiff's and its principal's actions and inactions surrounding the scheme to send the call notice in the manner and under the circumstances that he did, the evidence will establish that it has been Plaintiff and its principal, Mason Miller, that has not been acting in good faith, not acting for the best interest of members of Ashley Energy or its

business partner, Preferred Holder, and Preferred Holder believes that Mr. Miller has been delaying repairs at the facility in order to slow down insurance payouts, in order to undertake the very actions he has embarked upon leading up to this litigation, all for Mr. Miller's own personal gain.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of August, 2021.

DAVID DISQUE