UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| POWER INVESTMENTS, LLC, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:21-cv-01022-SEP |
| | ) |
| CARDINALS PREFERRED, LLC, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Power Investments, LLC's Motion for Temporary Restraining Order and Preliminary Injunction. Doc. [2]. For the reasons set forth below, the Motion is granted in part.

### FACTS AND BACKGROUND

Plaintiff Power Investments, LLC ("Power") and Defendant Cardinals Preferred, LLC ("Cardinals") are co-owners of Ashley Energy, LLC (the "Company"). Doc. [1] ¶¶ 13, 17. Power is the sole owner of the Company's Class A Common Units, owning 850,988 units, and is referred to as the "Class A Unitholder." Cardinals is the sole owner of the Company's Preferred Units, owning 999,222 units, and is referred to as the "Preferred Unitholder." *Id.* ¶¶ 18-21. The Company's ownership structure is set forth in the Ashley Energy, LLC, Amended and Restated Limited Liability Company Agreement (the "Agreement"). Section 10.5 of the Agreement establishes a Call Option, which provides the majority Class A Unitholder the following right:

> At any time on or following August 9, 2021, at majority of Class A
> Common Units shall have the right to purchase a portion or all of
> the Preferred Units pursuant to this Section 10.5(b) (the "Call"). The
> Call shall be consummated within the same period and at the same
> price described in Section 10.5(a) above.

Doc. [1-1] at 33. The Agreement also prescribes a formula for calculating the purchase price of the Preferred Units. *Id.* Once the Call Option is exercised, § 10.5 dictates that it "shall be consummated within six (6) months after the delivery of notice that the [Class A] Unitholder has exercised" the Call. Docs. [1] ¶ 29; Docs. [1-1] at 33.

1

On August 9, 2021, Power, the Class A Unitholder, sent notice to Cardinals that it was exercising the Call Option and that it sought "to effectuate the closing of the Call . . . in a timely manner and [was] in a position to close as soon as practicable." Doc. [1-2] (Power's Call Notice); *see also* Doc. [1] ¶¶ 33-34.  According to Power, Cardinals conveyed that it was "unwilling to comply with its obligations under the Agreement to consummate and close the Call," Doc. [1] ¶ 37, and instead started "taking steps to prevent the consummation and closing of the Call," *id.* ¶ 39.

The Agreement confers certain rights on Cardinals as Preferred Unitholder.  One such right is the "Conversion Right" under § 4.1, which states:  "Preferred Units shall be convertible at any time or from time to time by a holder of such Preferred Units giving written notice to the LLC of the exercise of conversion rights . . . into . . . Class A Common Units . . . ." Doc. [1-1] at 16.  Section 4.1(b) specifies three occurrences that terminate the right to convert:  liquidation, dissolution, or winding up of the Company.  *Id.*  The Agreement also dictates that the "Conversion Time" shall be the "close of business on the date of receipt by the [Company] of such notice," and that the Company shall "as soon as practicable after the Conversion Time issue and deliver . . . a notice of issuance of Class A Common units . . . ." *Id*

On August 15, 2021, six days after Power sent notice of its exercise of the Call Option, Cardinals notified Power and the Company that it was invoking its Conversion Right to convert all of its Preferred Units to Class A Common Units, allegedly "in an effort to 'moot' Power's Call."  Doc. [1] ¶¶ 39-42.  In response, Power filed its Complaint, Doc. [1], and the Motion for Temporary Restraining Order, Doc. [2], on August 16, 2021.  The Complaint brings three counts based on allegations that Cardinals breached §§ 10.5 and 15.12 of the Agreement as well as the implied covenant of good faith and fair dealing.

Power's position is that the Call Option was an irrevocable offer and the August 9, 2021, notice was Power's acceptance of that offer.  After that date, Cardinals was contractually bound to sell its Preferred Units to Power; thus, its attempt to convert its Preferred Units to Class A Common Units was an unlawful breach of contract.  Power also invokes Cardinals's contractual obligation to "take or refrain from taking such actions as may be necessary or appropriate to achieve the purposes of [the] Agreement." Doc. [1-1] § 15.12; *see also* Doc. [1] ¶ 31.  Because one such "purpose" is the Call Option, Power argues, any attempt to interfere with consummation of the Call—including by trying to convert Cardinals's Preferred Units to Class A

2

Common Units—is a breach of the Agreement. The Complaint seeks specific performance and injunctive relief, citing Agreement § 15.3, in which the parties agreed to the availability of such remedies. Doc. [1] ¶ 32.

In its Motion for a Temporary Restraining Order, Power requests that the Court immediately restrain Cardinals from, in summary:

1) exercising or otherwise advancing or acting upon any purported conversion of its Preferred Units to Class A Common Units,
2) taking or attempting to take action that would frustrate, nullify, subvert, or interfere with the consummation of Power's August 9, 2021, Call.

According to Power, such relief would simply preserve the status quo. Doc. [3] at 15. Cardinals disagrees. Doc. [13] at 18. The Court held a hearing on the Motion on August 19, 2021.

### LEGAL STANDARD

"A temporary restraining order is an extraordinary and drastic remedy." *King v. Blake*, 2009 WL 73678, at *1 (E.D. Mo. Jan. 9, 2009). The party seeking the injunctive relief bears the burden of establishing the necessity of such relief. *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *Morningside Church, Inc. v. Rutledge*, 471 F. Supp. 3d 921, 924 (E.D. Mo. 2020). "Temporary injunctive relief functions to 'preserve the status quo until, upon a final hearing, a court may grant full, effective relief.'" *Amdocs, Inc. v. Bar*, 2016 WL 9405679, at *3 (E.D. Mo. May 23, 2016) (quoting *Kansas City S. Trans. Co., Inc. v. Teamsters Local Union #41*, 126 F.3d 1059, 1065 (8th Cir. 1997)). In deciding whether to issue a temporary restraining order (TRO), the Court must consider (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the harm that granting the injunction will inflict on other parties; (2) the probably that the movant will prevail on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *City of Berkeley v. Ferguson-Florissant Sch. Dist.*, 2019 WL 1558487, at *2 (E.D. Mo. Apr. 10, 2019). "While 'no single factor is determinative,' the probability of success factor is the most significant." *Home Instead, Inc. v. Florence*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase*, 640 F.2d at 113) (internal citations omitted)).

3

## DISCUSSION

### I.      Likelihood of Success on the Merits

Power claims that in refusing to sell and attempting to convert its Preferred Units, Cardinals has breached the Agreement. It argues that § 10.5 is a binding option contract, which unlike a standard offer, cannot be revoked before acceptance. *See In re Estate of Schulze*, 105 S.W.3d 548, 550 (Mo. Ct. App. 2003) ("An option coupled with consideration is a continuing and irrevocable offer to sell that the seller cannot withdraw during a stated period . . . The option vests the buyer with a power of acceptance."). Once the buyer accepts, the option is exercised, and a binding bilateral contract is created. *Id.* Power asserts that its notice of exercise of the Call Option—sent on August 9th—bound the parties to proceed with the Call. Therefore, Cardinals must consummate the transaction, and it has no ability to convert its Preferred Units. *See* Doc. [3] at 9. Any efforts otherwise are a breach of the Agreement.

Power further argues that to permit Cardinals to moot a Call exercise using a conversion right would render § 10.5 meaningless. Interpreting a contract in a manner that nullifies a provision is, Power claims, "contrary to basic tenets of contract interpretation." Doc. [3] at 11. In support, Power cites to Missouri case law holding that "[i]nterpretations that render provisions meaningless should be avoided." *Storey v. RGIS Inventory Specialists, LLC*, 466 S.W.3d 650, 655 (Mo. Ct. App. 2015); *see McGuire v. Lindsay*, 496 S.W.3d 599, 607 (Mo. Ct. App. 2016).

Cardinals responds that its receipt of Power's notice of Call exercise did not create a binding bilateral contract to sell Power the Preferred Units because the Agreement provided Cardinals two options upon receiving Power's notice. Cardinals can "allow a redemption and transfer of its Preferred Units"—like Powers requests—or it can exercise its Conversion Rights. Doc. [13] at 7. Cardinals is not required to consummate the Call. In making that argument, Cardinals relies on the plain language of the Agreement: § 4.1(a) clearly states that the Preferred Units are convertible "at any time or from time to time." Doc. [1-1] at 16. And § 4.1(b) enumerates three events that terminate Cardinals's conversion rights—liquidation, dissolution, or winding up of the Company. Because the Class A Unitholder's exercise of the Call Option is not on that list, Cardinals claims that it retained its Conversion Rights even after Power's notice of Call. *Id.*; Doc. [13]. Moreover, because conversion occurs at the close of business the day the Company receives the notice of conversion, Cardinals's conversion occurred at close of business

4

on August 16, 2021. Accordingly, in Cardinals's view, there are no Preferred Units left for Power to purchase.

At this very early stage in the litigation, both parties have presented compelling arguments supporting their interpretation of the contractual text, and neither has effectively countered the other's position with either legal authority or evidence. On the papers so far, the Court declines to hold that Power is more likely than not to prevail, but Power's arguments do give it a "fair chance of prevailing" on the merits, which is all that is required to satisfy this *Dataphase* factor. *Planned Parenthood Minn. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008).

## II.     Irreparable Harm

There is a much greater differential between the parties as to the likelihood of irreparable harm. A plaintiff seeking a temporary injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 21 (2008). "[T]he absence of a finding of irreparable injury is alone sufficient ground for denying temporary injunctive relief." *Amdocs., Inc.*, 2016 WL 9405679, at *3; *see Watkins v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The Agreement expressly contemplates the parties seeking specific performance or injunctive relief in the event of a breach, *see* Doc. [1-1] at 38, which, Power believes, suggests that irreparable harm will occur unless specific performance is awarded. *See Wells Fargo v. Bank of Am.*, No. 11 Civ. 4062, 2013 WL 372149, at *8 (S.D.N.Y. Jan. 31, 2013) ("Assuming a breach is proven, 'when specific performance is contemplated by the contract, courts tend to find that irreparable harm would be suffered unless specific performance is granted.'" (citing *Tico v. Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 2009))).

Power further asserts that without an injunction, it will be irreparably harmed because (1) Power will lose its ability to exercise the Call Option, and (2) Power will lose its seat on the Company's Board. Doc. [3] at 11-12. Those losses will not be remediable, because—as both parties acknowledged at the hearing—the Agreement does not provide a procedure to reverse conversion of the Preferred Units.[1] If the conversion takes effect, the structure of the Company

---

[1] Pressed on this point by the Court, Cardinals noted that § 15.1 of the Agreement gives the parties the power to amend the Agreement to create new Preferred Units, but upon review of that provision, the Court notes that the power to amend the Agreement appears to be subject to numerous limitations. *See* Doc. [1-1] § 15.1. Moreover, even if it could be accomplished, the possibility of creating new Preferred

5

will be irrevocably changed. Preferred Units will no longer exist; there will be only Class A Common Units, of which Cardinals will own the majority. That would permanently terminate Power's ability to consummate the Call and become a Preferred Unitholder. Moreover, Cardinals would retain ownership—albeit of Class A Common Units rather than Preferred—and would gain Power's Board seat, depriving Power of the ability to participate in the Company's governance. Those harms cannot be remedied appropriately with monetary damages as they are difficult—if at all possible—to calculate.[2] *See Watkins*, 346 F.3d at 844 ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." (quoting *Bandag, Inc. v. Jack's Tire & Oil, inc.*, 190 F.3d 924, 926 (8th Cir. 1999)). Moreover, Power has demonstrated that should conversion be effective, those harms are likely— not just possible—to occur. *See Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief."); *id.* (movant must show that irreparable harm is "*likely* in the absence of an injunction").

      Cardinals is correct that Power's claimed irreparable harm is based on the disputed premise that conversion has not already occurred. It is true that if Cardinals ultimately prevails, the injunction will have simply delayed harms that are inevitable, given that Cardinals will have already effectuated its conversion. But in that event, Cardinals will not have been appreciably harmed by the 14-day delay in furthering the effects of the conversion, whereas if Power's underlying breach of contract claims are meritorious, then a temporary restraint order will have prevented irreparable harm to Power's position and preserved the possibility of specific performance as a remedy.

---

Units after Cardinals becomes the majority holder of Class A Common Shares would not have remotely the same effect as preventing the conversion of Cardinals's current shares, which—given Power's exercise of its Call Option—would make Power the exclusive owner of the Company.

[2] The Court notes that Power's proposed temporary restraining order also seeks the prevention of certain kinds of harm that do *not* qualify as irreparable under this standard, for example, changes to the timing and/or purchase price associated with its Call. Unlike conversion of Cardinals's Preferred Units and outright frustration of Power's Call, such harms would be compensable by monetary damages, and thus do not justify the extraordinary remedy of injunctive relief. *See General Motors Corp. v. Harry Brown's LLC*, 563 F.3d 312, 319 (8th Cir. 2009); *Iowa Utils. Bd. v. F.F.C.*, 109 F.3d 418, 426 (8th Cir. 1996).

**III.    Balance of the Equities and Public Interest**

Balancing the equities favors granting the requested injunction for reasons already discussed in relation to irreparable harm.  The prospective harm to Cardinals from granting the TRO is dwarfed by the prospective harm to Power from denying it.

And consideration of the public interest does not help the Court in this case.  Both parties rely on case law finding that public interest is furthered by preserving the enforceability of contractual relationships.  *Compare Ronnoco LLC v. Peoples*, 2020 WL 6875754, at *8 (E.D. Mo. Nov. 23, 2020 (quoting *H&R Block Tax Servs., LLC v. Cardenas*, 2020 WL 1031033, at *4 (W.D. Mo. Mar. 3, 2020)) (Power's authority), *with State ex. Rel. Nat'l Life Ins. Co. v. Allen*, 256 S.W. 737 (1923) (Cardinals's authority).  Without resolving the merits of the contract claims, it is impossible to know which way the public interest in the enforcement of contracts militates in this case.  Thus, the Court finds this factor to be unhelpful to its analysis of Power's request for immediate injunctive relief.

CONCLUSION

Weighing the four *Dataphase* factors, then, the Court finds that the balance weighs in favor of granting a temporary restraining order to preserve the status quo while the parties brief and argue their respective substantive positions.  Because Power has shown that it is likely to suffer irreparable harm in the absence of an injunction, the Court must balance that harm against "any competing irreparable injury" to Cardinals, and then "consider likelihood of success on the merits, not in isolation, but 'in the context of the relative injuries to the parties and the public.'"  *Sharp v. Parents in Cmty. Action, Inc.*, 172 F.3d 1034, 139 (8th Cir. 1999) (quoting *Dataphase*, 640 F.2d at 113).  Cardinals has not demonstrated any competing irreparable harm, and based on the preliminary evidence and argument before the Court, Power has shown that it has at least a "fair chance" of prevailing on the merits.  *Planned Parenthood Minn.*, 530 F.3d at 730.  In the context of the relative injuries to the parties to this litigation, that fair chance is sufficient to support a temporary restraining order.  *See Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) ("Clear evidence of irreparable injury should result in a less stringent requirement of certainty of victory.") (quoting Developments of Law, *Injunctions*, 78 Harv. L. Rev. 994, 1056)).  Thus, the Court will grant Power an injunction against those activities that it has demonstrated to be likely to cause it irreparable harm in the absence thereof.

Accordingly,

7

**IT IS HEREBY ORDERED** that Plaintiff Power Investment LLC's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. [2]) is **GRANTED in part**.

**IT IS FURTHER ORDERED** that Defendant is immediately enjoined and restrained, from the date of this Order for fourteen (14) days, from directly or indirectly, on its own or on behalf of, or in conjunction or concert with, any person, persons, or legal entity, whether as agent, representative, employee, or consultant, or in any capacity:

1) exercising or otherwise advancing or acting upon any purported conversion of its Preferred Units to Class A Common Units, and

2) taking or attempting to take action that would frustrate, nullify, prevent, subvert, interfere with, or undermine the consummation of Power's August 9, 2021, Call.

**IT IS FURTHER ORDERED** that this Temporary Restraining Order shall remain in full force and effect until **11:00 a.m., Friday, September 3, 2021**, at which time the Court will hear testimony and argument on Plaintiff's Request for a Preliminary Injunction.

**IT IS FINALLY ORDERED** that the Court elects to impose a zero bond on Plaintiff.

Dated this 20th day of August, 2021.

*Sarah E. Pitlyk*
_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE