UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| POWER INVESTMENTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:21-cv-01022-SEP |
| vs. ) | |
| ) | |
| CARDINALS PREFERRED, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**STATEMENT OF UNCONTROVERTED
MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Power Investments, LLC submits this Statement of Uncontroverted Material Facts in support of its Motion for Partial Summary Judgment and states as follows:

1. Power Investments, LLC ("**Power**") is a member of Ashley Energy, LLC (the "**Company**"). **Exhibit 1** (Ashley Energy LLC Amended and Restated Limited Liability Company Agreement) at p.1.

2. Cardinals Preferred, LLC ("**Cardinals**") is a member of Ashley Energy, LLC. *Id.*

3. On August 9, 2017, the Company, Cardinals, and Power entered into the Ashley Energy LLC Amended and Restated Limited Liability Company Agreement (the "**Agreement**"). *Id.*

4. Under the Agreement, Power is the sole owner of the Company's Class A Common Units. *Id.* at Schedule I.

5. Under the Agreement, Power owns 850,988 Class A Common Units. *Id.*

6. Under the Agreement, Cardinals is the sole owner of the Company's Preferred Units. *Id.*

7. Under the Agreement, Cardinals owns 999,222 Preferred Units. *Id.*

8. Section 10.5(b) of the Agreement is titled "Call Option." *Id.* § 10.5(b).

9. Section 10.5(b) of the Agreement provides: "At any time on or following August 9, 2021, a majority of Class A Common Units shall have the right to purchase a portion or all of the Preferred Units pursuant to this Section 10.5(b) (the 'Call')." *Id.*

10. Section 10.5(b) of the Agreement further provides: "The Call shall be consummated within the same time period and at the same price described in Section 10.5(a) above." *Id.*

11. Section 10.5(a) of the Agreement provides: "The Put shall be consummated within six (6) months after the delivery of notice that the Preferred Unitholder has exercised the Put (such date of consummation, the 'Put Closing')." *Id.* § 10.5(a).

12. Section 15.12 of the Agreement is titled "Further Action." *Id.* § 15.12.

13. Section 15.12 of the Agreement provides: "The Parties agree to execute and deliver all documents, provide all information and take or refrain from taking such actions as may be necessary or appropriate to achieve the purposes of this Agreement." *Id.*

14. Section 15.3 of the Agreement is titled "Remedies." *Id.* § 15.3.

15. Section 15.3 of the Agreement provides: "The Parties agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of this Agreement and that the LLC and each Unitholder may in its sole discretion apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive relief (without posting a bond or other security) in order to enforce or prevent any violation of the provisions of this Agreement." *Id.*

16. On and effective August 9, 2021, Power exercised the § 10.5 Call Option. **Exhibit 2** (August 9, 2021 Notice of Exercise of Call Option) at p.1.

17. On August 9, 2021, Power delivered written notice to Cardinals of Power's Call Option exercise and resulting purchase of all of the Preferred Units. *Id.*

18. Power also sought consummation of the Call Option immediately. *Id.*

19. The Call Notice was delivered to Cardinals' office located at 405 Lexington Ave., 59th Floor, New York, NY 10174 via courier, facsimile, and USPS Priority Express mail on August 9, 2021. *Id.*

20. Section 4.1 of the Agreement is titled "Conversion Right." **Ex. 1** § 4.1.

21. Section 4.1(a) of the Agreement provides: "Preferred Units shall be convertible at any time or from time to time by a holder of such Preferred Units giving written notice to the LLC of the exercise of conversion rights contemplated by this Article IV (the 'Conversion Rights')." *Id.* § 4.1(a).

22. Section 4.1(b) of the Agreement provides: "In the event of a liquidation, dissolution or winding up of the LLC, the Conversion Rights shall terminate at the close of business on the last full day preceding the date fixed for the payment of any such amounts distributable on such event to the Preferred Unitholder." *Id.* § 4.1(b).

23. Section 5.1 of the Agreement is titled "Distributions." *Id.* § 5.1.

24. Section 5.1(b) of the Agreement governs distributions that result from a liquidation, dissolution, or winding up of the Company, including liquidations under Article XIII of the Agreement. *Id.* § 5.1(b).

25. Section 5.1(b) provides that Preferred Unitholders must receive the first such distribution, followed by the Common Unitholders who take "ratably among such holders based

upon the number of Common Units held by each such holder immediately prior to such Distribution." *Id.* § 5.1(b)(i)-(ii).

26. Article XIII of the Agreement is titled "Dissolution and Liquidation." *Id.*, art. XIII.

27. Article XIII of the Agreement provides that the Board of the Company (or others appointed as liquidators by the Board) must promptly "determine the amounts to be distributed to each Unitholder in accordance with Section 5.1." *Id.* § 13.2(b).

28. On Sunday, August 15, 2021, at 8:15 p.m. EDT, Cardinals sent a letter to Mr. Mason Miller in his capacity as manager of Power. **Exhibit 3** (August 15, 2021 letter to Mr. Miller and Power).

29. That letter notified Power that Cardinals had received Power's notice of Call exercise. *Id.* at p.1.

30. The letter further purported to reject Power's exercise of the Call Option on the basis of lack of sufficient information. *Id.*

31. As of the date of this Statement, Cardinals has not requested any additional such information. **Exhibit 17** (Declaration of Mason L. Miller) ¶ 22.

32. Cardinals' letter further expressed that Cardinals had purportedly "elected to convert all of the Preferred Units held by the Preferred Holder into Class A Common Units" pursuant to § 4.1(a) of the Agreement. **Ex. 3** at p.2.

33. The letter further expressed that Cardinals considered Power's Call to be rendered "moot" by Cardinals' purported conversion of all of the Preferred Units, stating: "[F]ollowing the date of delivery of the Conversion Notice (the same as the date of this notice to you), there are no longer any outstanding Units that are subject to the provisions of Section 10.5(b) of the

Operating Agreement. Consequently, the transactions contemplated by the Purported Option Notice are moot as of the date hereof." *Id.*

34. Also on Sunday, August 15, 2021, at 8:15 p.m. EDT, Cardinals sent a letter to Mr. Miller in his capacity as a board member of the Company. **Exhibit 4** (August 15, 2021 letter to Mr. Miller and the Company).

35. That letter contained the same information as Cardinals' letter to Power. *Id.*

36. Leading up to the Agreement's execution in 2017, Mr. Miller and representatives of Cardinals exchanged a series of emails and other documents. **Exhibits 5-15** (emails and other documents exchanged); *see* **Exhibit 17** (Declaration of Mason L. Miller) ¶¶ 9-19 (authenticating these documents).

37. Arena Investors, LP (representing Cardinals) also authored an August 9, 2017 internal Investment Memorandum regarding Power and Cardinals' purchase of the Company and the August 9, 2017 Agreement. **Exhibit 16** (Arena Investors, LP internal Investment Memorandum dated August 9, 2017); *see* **Exhibit 17** (Declaration of Mason L. Miller) ¶ 20 (authenticating this document).

38. In none of those documents (**Exs. 5-16**) did any party ever state or suggest that the Preferred Unitholder's conversion right could be used as a means to eliminate or moot an exercised call option. **Exs. 5-16**.

39. In none of those documents (**Exs. 5-16**) did any party ever state or suggest that any party's intent was that the Preferred Unitholder's conversion right could be used as a means to eliminate or moot an exercised call option. *Id.*

40. In none of those documents (**Exs. 5-16**) did any party ever state or suggest that the Preferred Unitholder's conversion right would trump the Common Unitholder's rights under an exercised call option. *Id.*

41. In none of those documents (**Exs. 5-16**) did any party ever state or suggest that any party's intent was that the Preferred Unitholder's conversion right would trump the Common Unitholder's rights under an exercised call option. *Id.*

42. In none of those documents (**Exs. 5-16**) did any party ever state or suggest that upon the Common Unitholder's exercise of the call option, the Preferred Unitholder would then have the option to either sell the Preferred Units subject to the exercised call option or convert its Preferred Units to Class A Common Units. *Id.*

43. In none of those documents (**Exs. 5-16**) did any party ever state or suggest that any party's intent was that upon the Common Unitholder's exercise of the call option, the Preferred Unitholder would then have the option to either sell the Preferred Units subject to the exercised call option or convert its Preferred Units to Class A Common Units. *Id.*

44. In none of those documents (**Exs. 5-16**) did any party ever state or suggest that the Common Unitholder's ability to exercise, consummate, or close on the call option would be at the sole discretion of the Preferred Unitholder. *Id.*

45. In none of those documents (**Exs. 5-16**) did any party ever state or suggest that any party's intent was that the Common Unitholder's ability to exercise, consummate, or close on the call option would be at the sole discretion of the Preferred Unitholder. *Id.*

46. The documents demonstrate that the parties' intent was that the Preferred Unitholder's rights would be *in pari passu* (on equal footing) with the rights of the Common Unitholder. **Exhibit 6** at p. 1 (February 10, 2017 email from Victor Dupont of Cardinals to

Mason Miller of Power stating: "I tried to make it as clear as possible that the terms of the preferred equity are pari passu/identical to those of the 'common.'"), p.1 (February 6, 2017 email from Victor Dupont of Cardinals to Mason Miller of Power stating that Cardinals' equity was to be "Pari passu w/" Power's equity).

47. The documents demonstrate that Cardinals proposed the clause "at any time" as part of the Preferred Unitholder's conversion right before the parties included a call option in the term sheet for the Agreement. **Exhibit 6** at p.1, attachment pp.2-3 (February 10, 2017 7:17 p.m. email from Victor Dupont of Cardinals to Mason Miller of Power attaching updated term sheet for Agreement prepared by Cardinals, which contains the conversion right with the "at any time" language and a put option for Cardinals (stated as "a redemption right, exercisable at [Cardinals'] sole option, on its Preferred Stock 4 years after the Closing Date"), but not the call option the parties later agreed to); **Exhibit 7** at p.1 (February 10, 2017 9:08 p.m. email from Mason Miller of Power to Victor Dupont of Cardinals stating that "we'd like a reciprocal right to redeem/call Arena's equity interest, whether preferred or post-conversion" and thus proving that no such call option had been agreed to or even discussed by the parties prior to that time).

48. The term sheet that served as the basis for the parties' Agreement shows that the call option was to be exercisable by Power in its sole discretion and not subject to Cardinals' approval. **Exhibit 9** at p.1, attachment p.3 (February 13, 2017 email from Victor Dupont of Cardinals to Mason Miller of Power attaching updated term sheet for the Agreement prepared by Cardinals, which specifically states that "*PI* [Power Investments, LLC] *will have a redemption right (the 'Common Call'), exercisable at its sole option, on* [Cardinals'] *Preferred Stock 4 years after the Closing Date*, at a value equal to the Preferred Stock's post-conversion ownership FMV." (emphasis added)).

49. The foregoing was later confirmed in August 2017 as evidenced by Cardinals' own internal investment memorandum discussing the call option: "*PI* [Power Investments, LLC] *will have a redemption right (the 'Common Call'), exercisable at its sole option, on* [Cardinals'] *Preferred Stock 4 years after the Closing Date*, at a value equal to the Preferred Stock's post-conversion ownership FMV." **Exhibit 16** (Arena Investors, LP internal Investment Memorandum dated August 9, 2017) at p.26 (emphasis added).

50. Dentons US LLP was counsel for Cardinals and Arena Investors, the investment management firm that oversees Cardinals, in connection with the Agreement. **Exhibits 11-15** (August 2017 emails exchanged between Mr. Miller, representatives of Cardinals, and Cardinals' legal counsel Dentons US LLP); *see* **Exhibit 10** (February 17, 2017 letter from Dentons US LLP to Mason L. Miller and Ashley Energy, LLC).

51. Dentons US LLP, Cardinals' counsel, drafted the Agreement. **Exhibits 11-15** (August 2017 emails exchanged between Mr. Miller, representatives of Cardinals, and Cardinals' legal counsel Dentons US LLP demonstrating Dentons' drafting of the Agreement).

52. Attached hereto as **Exhibit 17** is a Declaration by Mason Miller which, among other things, authenticates various other Exhibits (**Exs. 1-16**).

Dated:  September 13, 2021                    Respectfully submitted,

                                              ARMSTRONG TEASDALE LLP


By: */s/ Christopher R. LaRose*
    Christopher R. LaRose, #59612MO
    Daniel R. O'Brien, #69258MO
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    Telephone:  314.621.5070
    Fax:  314.621.5065
    clarose@atllp.com
    dobrien@atllp.com

    ATTORNEYS FOR PLAINTIFF
    POWER INVESTMENTS, LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 13th day of September, 2021, the foregoing and all attachments were electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the same to all counsel of record.

*/s/ Christopher R. LaRose*
