# EXHIBIT 1

```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                        EASTERN DIVISION

POWER INVESTMENTS, LLC,            )
                                   )
     Plaintiff,                    )
                                   )
     v.                            )
                                   )
                                   ) No 4:21-CV-1022 SEP
CARDINALS PREFERRED, LLC,          )
                                   )
     Defendant.                    )
```

**TEMPORARY RESTRAINING ORDER HEARING**
**BEFORE THE HONORABLE SARAH E. PIKLYK**
**UNITED STATES DISTRICT JUDGE**
**AUGUST 19, 2021**

APPEARANCES:
For Plaintiff:         Christopher LaRose, Esq.
                       Daniel Richard O'Brien, Esq.
                       ARMSTRONG TEASDALE LLP
                       7700 Forsyth Blvd., Suite 1800
                       Clayton, MO  63105

For Defendant:         Stephen J. O'Brien, Esq.
                       DENTONS US LLP
                       One Metropolitan Square, Suite 3000
                       St. Louis, MO  63102

REPORTED BY:           SHANNON L. WHITE, RMR, CRR, CSR, CCR
                       Official Court Reporter
                       United States District Court
                       111 South Tenth Street, Third Floor
                       St. Louis, MO  63102
                       (314) 244-7966

PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

```
APPEARANCES CONTINUED:




For Defendant:      Joseph J. Tuso, Esq.
                    Wayne Stansfield, Esq.
                    1717 Arch Street, Suite 3100
                    Philadelphia, PA  19103


(For clarity of the record, there were two Mr. O'Briens
present.  Mr. Stephen J. O'Brien was the lead counsel of
record for defendants in the transcript.)
```

6

1 not; right? We're seeking specific performance in the case.
2 But today what we're saying is we need a TRO and then
3 eventually a preliminary injunction to preserve those rights;
4 right? We're not seeking an ultimate ruling on whether, you
5 know, the Call Option is a binding agreement which they have
6 to perform. We're not saying, hey, you know, enter a
7 preliminary injunction now.
8 So our -- we're simply seeking an injunction for 14
9 days, just like the rule applies, to go through the normal
10 process.
11 THE COURT: Okay. But what do you want me to enjoin
12 for 14 days?
13 MR. LAROSE: So on our proposed order, we're
14 enjoining -- it all has to do with this conversion; right? So
15 we want to enjoin the exercise or otherwise advancing or
16 acting upon any purported conversion, right, like the
17 conversion we'll talk about from this Sunday.
18 THE COURT: Uh-huh.
19 MR. LAROSE: Taking or attempt to take action that
20 would frustrate or nullify, subvert, or interfere with in any
21 way the consummation of the Call.
22 THE COURT: Okay.
23 MR. LAROSE: Delaying the consummation of the Call.
24 So what we're trying to do is simply preserve the
25 status quo. We understand that there's a competing --

1   sorry -- a competing -- you know, there's competing rights in
2   this operating agreement that we think needs to be litigated.
3   We think ours prevails.
4           But in the meantime, right, what we can't have is
5   that the Preferred Units get converted, and the reason we
6   can't have that is because there's nothing left to sell;
7   right?  This is a unique piece of property that we've
8   bargained to buy with it.
9           You know, we would get -- if allowed, and the
10  judge -- and the Court orders us to purchase it, we get
11  preferred rights under the operating agreement, which are
12  valuable rights, and a unique piece of property.
13          THE COURT:  And that transaction, if it's allowed,
14  the conversion of the Preferred Units to Class A Units -- and
15  please don't mistake my use of those terms as a deep
16  understanding of what they mean.  But from Preferred Units to
17  Class A Units -- that cannot be undone?  They could not
18  reverse that transaction later?
19          MR. LAROSE:  So there's all sorts of things they can
20  do with that.  They can -- you know, there's common shares --
21  so it gets converted to a common share; right?  And once it's
22  a common share, then there's other rights that arise by virtue
23  of that, such as, right, they become -- they step into our
24  shoes as the majority of common share --
25          THE COURT:  Right.  And there's a board member

1 associated with that; right?

2     MR. LAROSE: Yeah. And the reason that's
3 important -- sorry to interrupt --

4     THE COURT: No.

5     MR. LAROSE: -- is because the board controls 100
6 percent of how this company operates; right? Right now, Mason
7 Miller is our one board representative out of the three.
8 Cardinals has two already; right? So, presumably, they take
9 those common share voting interests as the majority owner now,
10 which is how we have our board seat.

11     THE COURT: What would happen to the one associated
12 with the preferred shares which they would no longer have?

13     MR. LAROSE: You know, it's -- to me, it's sort of an
14 ambiguous question.

15     THE COURT: Okay.

16     MR. LAROSE: I don't know how that would work. It
17 doesn't seem to contemplate that but --

18     THE COURT: But it would certainly be the case that
19 they would now have the majority of the Class A shares or
20 common shares. Are those interchangeable terms?

21     MR. LAROSE: Yes.

22     THE COURT: Are there different classes of common
23 shares?

24     MR. LAROSE: No.

25     THE COURT: Okay. So they would have -- the majority

1 cannot be compensated with money.

2 MR. LAROSE: Yes. I mean, I think the whole nature
3 of a specific performance claim, right, is that we're trying
4 to buy a unique asset. The only way to buy the unique asset
5 is if the conversion is stopped or the status quo as of our
6 Call, right, is preserved such that, if we're right and
7 they're wrong, you know --

8 THE COURT: The transaction can still go forward.

9 MR. LAROSE: Yeah, we can still go forward with the
10 transaction.

11 THE COURT: Okay. So you're looking in the TRO for
12 14 days of an injunction to be determined on preliminary
13 injunction whether that would go longer, preventing, to
14 whatever extent that's possible -- and I'm sure I'll hear this
15 from defendants -- the exercise or activities to advance the
16 conversion of the preferred shares to common shares and
17 enjoining defendants from taking any action that would
18 frustrate or delay or otherwise impede the consummation of the
19 Call, should it later be determined that the Call -- that you
20 all are correct on the law. Is that correct?

21 MR. LAROSE: That's correct. And that would include
22 things like, you know, re-certificating the shares from
23 preferred to common, dealing with the preferred shares pledged
24 to Regions Bank, and you know --

25 THE COURT: Those are the things that could be done

34

1  THE COURT: Okay. Let me check back over here to see
2  if we know the answer to that. Do we know the answer to that?
3  What's the composition of the board?
4  MR. LAROSE: I guess the third is both. It's both
5  Mr. Miller and -- yeah, both shareholders get to elect a
6  third.
7  THE COURT: I see. You and the other shareholder
8  agree to the third shareholder. Okay.
9  And then -- but when you were talking about the
10 management of the company, you're talking about something
11 different than the board?
12 MR. TUSO: I mean, the board would have an impact on
13 that for sure.
14 And if the Court would indulge me just to go back and
15 answer, I think, one other question yet, "What would the
16 effect be to their claim that they would lose a board seat?"
17 they wouldn't lose anything as a result of not issuing this
18 injunction today, the TRO.
19 I mean, the fact of the matter is Mr. Miller will
20 continue to be a board member. One of our board members will
21 exist. And the third that they dually appoint -- dually, not
22 duly, both appointed --
23 THE COURT: Yeah.
24 MR. TUSO: -- will -- that is the composition of the
25 board.

CERTIFICATE

I, Shannon L. White, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 69 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 23rd day of September, 2021.

        /s/Shannon L White
        /s/Shannon L. White
        Shannon L. White, CRR, RMR, CCR, CSR
        Official Court Reporter