# EXHIBIT 21



**Christopher R. LaRose**
Direct **T** 314.259.4779 **F** 314.612.2361
clarose@atllp.com

December 16, 2021

**VIA EMAIL TO WSTANSFIELD@REEDSMITH.COM**

Wayne C. Stansfield
Reed Smith LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103

    Re:    Power Investments, LLC v. Cardinals Preferred, LLC
             Cause No. 4:21-cv-01022-SEP – Cease and Desist

Dear Wayne:

The purpose of this letter is to address David Disque and Victor Dupont's attempted violations of the Court's preliminary injunction order.

Both the temporary restraining order and preliminary injunction barred Cardinals from taking any action that would "frustrate, nullify, prevent, subvert, interfere with, or undermine the consummation of Power's August 9, 2021 Call." [Dkts. 15, 22]. The entire purpose of the Call is to purchase Cardinals' share of Ashley Energy. At the time of the Call, Ashley Energy—the asset that is the subject of the Call—was managed in a certain way, with Mr. Miller, its CEO, President and Secretary, managing the day-to-day operations, along with certain key employees. Recently, Mr. Disque and Mr. Dupont have attempted to alter Ashley's management structure by unilaterally attempting to hire advisors supposedly for Ashley's benefit on Ashley's dime. These attempts by Cardinals to alter Ashley's management structure violate both the letter and spirit of the preliminary injunction. Moreover, the heavy-handed tactics are not in Ashley's best interests.

Specifically, Mr. Disque and Mr. Dupont recently: (1) purported to unilaterally pass a resolution (drafted by attorneys working for Arena Investors, not Ashley) to hire "independent" counsel for Ashley's Board without consulting Mr. Miller (the other Board member); (2) refused to interview qualified candidates proposed by Mr. Miller; (3) instead, despite claiming the need for independence from Ashley's shareholders, unilaterally contacted Sandberg Phoenix to discuss the engagement without Mr. Miller; and (4) purported to hire transactional lawyers from Sandberg Phoenix at Ashley's expense without giving Mr. Miller a chance to interview those lawyers to asses their qualifications, independence from Cardinals, anticipated expenses or expected scope of work.

Wayne C. Stansfield
December 16, 2021
Page 2

Moreover, just yesterday, Mr. Disque indicated that he and presumably Mr. Dupont want to also hire an "industry" advisor for Ashley Energy. Again, this advisor was contacted unilaterally by Cardinals and presumably will be at Ashley's expense. Having an "industry advisor" hand selected by Cardinals inserted into Ashley's management structure is a fundamental alteration to how Ashley was run at the time of the Call (i.e., the status quo). Moreover, my understanding is that Dan Dennis (Ashley's COO) and other key employees have indicated that they will resign if Cardinals' hand-selected "advisors" attempt to wrest control of Ashley from Mr. Miller. Losing key employees is clearly not in Ashley's best interest. Neither is paying advisors and attorneys who appear to have been hired to do Cardinals' bidding in its lawsuit with Power.

When Power gave notice of its Call on August 9, Ashley was a company that was being run in a particular way; Mason Miller ran day-to-day operations and the board was kept informed and voted on certain issues. Since the Call, Mr. Disque and Mr. Dupont have been attempting to alter that management structure at Ashley's expense and take control of day-to-day operations. These efforts to change the structure of Ashley—the asset that is the subject of the Call—clearly violate the Court's prohibition against frustrating, interfering with and undermining the consummation of the Call. In other words, if the asset that is the subject of the Call is changed, it will be impossible for Power to purchase what it agreed to buy on August 9.

Beyond violating the terms of the TRO and preliminary injunction, Mr. Disque and Mr. Dupont's actions also violate Power's ownership interest in the Preferred Units subject to the Call and are not even authorized under well-established corporate law. Both Delaware and Missouri recognize that upon exercise of the Call Option, Power immediately became equitable owner of, and took equitable title to, the Preferred Units. Consequently, from that point forward Cardinals was not authorized to take or attempt any actions that would violate or tend to violate that ownership interest. *E.g., Crow v. Newspaper Dealer Supply, Inc.*, 603 F. Supp. 847, 850 (E.D. Mo. 1985); *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 328 (8th Cir. 2001); *Len v. Fuller*, 1997 WL 305833, at *3-4 (Del. Ch. May 30, 1997); *Freeman v. Fabiniak*, 1985 WL 11583, at *7 (Del. Ch. Aug. 15, 1985); *Duncan v. Kelly*, 435 S.W.2d 29, 35 (Mo. App. 1968). Mr. Disque and Mr. Dupont's improper actions, conducted to benefit Cardinals in this litigation under the guise of being done as Ashley board activities, violate Power's equitable ownership of the Preferred Units and are prohibited under the law.

Please instruct your clients to immediately cease and desist these unlawful activities.

Sincerely,

Christopher R. LaRose

CRL