UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

POWER INVESTMENTS, LLC, )
)
    Plaintiff/Counterclaim- )
    Defendant )
) Case No. 4:21-cv-01022
vs. )
)
CARDINALS PREFERRED, LLC, )
)
    Defendant/Counterclaim- )
    Plaintiff )

## DECLARATION OF DAVID DISQUE

I, David Disque, declare as follows:

1. I am over the age of 18 and competent to attest to the facts set forth below.

2. I am a representative of Cardinals Preferred, LLC ("Cardinals"), a co-owner of Ashley Energy LLC ("Ashley" or the "Company"), and authorized to make this Declaration on Cardinals' behalf.

3. I submit this Declaration in support of Cardinals' Motion for Temporary Restraining Order and Preliminary Injunction. This Declaration is based upon facts of which I have personal knowledge and, if called as a witness, could testify to the facts contained in this Declaration.

4. There are currently three (3) Managers on Ashley's Board of Managers: (i) Mason Miller ("Miller"), (ii) Victor Dupont ("DuPont"), and (iii) myself, David Disque.

5. In my role as a Manager on Ashley's Board, I learned that Christopher R. LaRose, Esq. of Armstrong Teasdale LLP, counsel for Power Investments, LLC ("Power"), was also engaged to jointly represent Power, Mr. Miller, and Ashley in a related matter styled *SL EC, LLC,*

*et al. v. Ashley Energy, LLC, et al.*, Case No. 4:18-CV-01377-JAR ("SL EC Litigation"), which is currently pending in this Court before Judge Ross.

6. The SL EC Litigation involves a dispute between Ashley's original owner, Michael Becker, and Mr. Miller related to Becker selling his 100% ownership interest in Ashley to Power on or about August 7, 2017.

7. Although I was generally aware of the SL EC Litigation, I believed that Ashley was not a defendant in that action. That belief was based upon Mr. Miller's infrequent updates to the Board about the SL EC Litigation and his representations to Ashley's Board of Managers, including as recently as October 2021, that Ashley had been dismissed from the action.

8. I have also recently learned that Armstrong Teasdale LLP represented Ashley in a number of other matters, including drafting and negotiating loan documents with Regions Bank ("Regions").

9. It is deeply troubling to me that Mr. LaRose and his law firm, Armstrong Teasdale LLP, are concurrently representing Ashley in the SL EC Litigation and potentially other matters, while also representing Ashley's minority Unitholder (Power) in this matter against Ashley's majority Unitholder (Cardinals). I believe this creates a conflict of interest.

10. In light of this, Mr. DuPont and I, as a majority of the Board of Managers, proceeded to request all of Ashley's client files from Mr. LaRose, to which Mr. LaRose responded and claimed that Ashley, through Miller, was in possession of those files and, therefore he claimed, he did not need to provide such files to Ashley's Board. In addition, Mr. LaRose suggested that disseminating such information could waive Ashley's attorney-client privilege.

11. To avoid a dispute over the capacity in which I was requesting this information, a Special Meeting of the Board was held wherein it was proposed, and unanimously approved, that

Ashley's Board of Managers would retain Special Counsel to investigate the conflict resulting from Armstrong Teasdale LLP's dual representation of Ashley and Power.

12. In addition, because Mr. Miller's law firm, Miller Edwards Rambicure PLLC ("MER"), had also represented Ashley in the SL EC Litigation, Mr. DuPont and I, on behalf of the Board, believed the Special Counsel should investigate any conflicts associated with MER's representation of Ashley and its concurrent representation of Mr. Miller and Power.

13. As two out of the three members of the Board, Mr. DuPont and I represent the Board majority and, under Ashley's Operating Agreement, are authorized to act by written consent on most matters, including the retention of counsel, without a Board meeting. Nevertheless, a Special Meeting of the Board of Managers was called to discuss these potential conflict issues as a Board, including with Mr. Miller.

14. This Special Meeting of Ashley's Board of Managers took place on November 17, 2021. The Board of Managers unanimously approved the appointment of Special Counsel to investigate the conflicts of interest associated with Ashley's legal representation in the SL EC Litigation.

15. Following that approval, minutes of the Special Meeting were circulated and approved by the Board.

16. Thereafter, I circulated written resolutions reflecting the decision to appoint Special Counsel on December 2, 2021. Mr. DuPont and I also suggested using Sandberg Phoenix & Van Gontard P.C. ("Sandberg Phoenix"), with whom Cardinals or its affiliates had no previous relationship, to serve as Special Counsel.

17. Mr. Miller suggested other law firms to potentially serve as Special Counsel, but Mr. DuPont and I determined Sandberg Phoenix's credentials were more impressive and their experience was more relevant to the investigation which they were being engaged to conduct.

18. In addition, many of Mr. Miller's recommendations were lawyers who appear to have attend law school with Mr. LaRose. Mr. DuPont and I believe that Special Counsel should have no affiliation with Armstrong Teasdale LLP, Mr. LaRose, or MER.

19. Mr. Miller never sought and was never given the approval of Ashley's Board of Managers to negotiate or execute the September 30, 2021 amendment to Ashley's loan agreement with Regions Bank. Mr. Miller entered into this amendment, which contained material changes to the terms of the loan, unilaterally without authority to do so and without prior notice to the Board. Mr. Miller has never had the authority to modify the terms of the loans that Ashley has with its senior lenders without the express approval of the Board.

20. Mr. Miller never sought and was never given the approval of Ashley's Board of Managers to negotiate or execute the November 2021 amendment to Ashley's loan agreement with Regions Bank. Mr. Miller entered into this amendment, which contained material changes to the terms of the loan, unilaterally without authority to do so and without prior notice to the Board. As referenced above, Mr. Miller has never had the authority to modify the terms of the loans that Ashley has with its senior lenders without the express approval of the Board.

21. In addition, Mr. Miller agreed, without first consulting with or obtaining the approval of, the Board, that all excess proceeds received from the insurers as a result of the Water Intrusion Event, which are deposited directly into a special account at Regions Bank, would be used to pay down the Regions Loan once the Plant was rebuilt. The Board had previously agreed

that any excess proceeds from the Water Intrusion Event would be distributed to the Members of Ashley once the Plant was rebuilt and not be used to repay debt.

22.     Mr. Miller knew he lacked the authority to negotiate or enter into any loan amendment without prior Board approval. In fact, prior to Mr. Miller sending notice of his intent to exercise his Call Option, Mr. Miller always sought the express approval of the Board to agree to prior amendments to the Regions Bank loan. These approvals were documented in formal resolutions of the Board, which delegated to Mr. Miller the authority to execute only the specific amendment identified in the resolution.

23.     On December 16, 2021, Ashley's Board of Managers held a meeting, where the following transpired:

   a.     Mr. Miller claimed the Board of Managers lacked the authority to manage Ashley's affairs despite the fact that Ashley's Operating Agreement explicitly states otherwise;

   b.     Mr. Miller stated that he alone controlled and managed Ashley, including all voting authority and, as a result, Mr. Dupont and I had no voting rights at the Board level;

   c.     Mr. Miller claimed Power was the owner of Cardinals' Preferred Units;

   d.     Relating to appointment of Special Counsel, which he had voted in favor of at the Special Meeting, Mr. Miller now claimed he was the only person at Ashley with the authority to engage counsel and, as such, that he would be interviewing and retaining Special Counsel to investigate his own counsel's potential conflicts; and

   e.     Mr. Miller also stated he would instruct the Special Counsel to investigate whether Mr. Dupont and I breached the implied covenant of good faith and fair dealing,

whether we should continue to serve on the Board, and whether Cardinals' attempt to convert Preferred Units to Class A Common Units would breach loan agreements with Regions Bank.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 20, 2021

David Disque