UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| POWER INVESTMENTS, LLC, | ) |
| | ) |
| Plaintiff/Counterclaim | ) |
| Defendant, | ) |
| | ) |
| vs. | ) Case No. 4:21-cv-01022-SEP |
| | ) |
| CARDINALS PREFERRED, LLC, | ) |
| | ) |
| Defendant/Counterclaim | ) |
| Plaintiff. | ) |
| | ) |

**POWER INVESTMENTS, LLC'S OPPOSITION TO
CARDINALS PREFERRED, LLC'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Cardinals Preferred, LLC's ("**Cardinals**") has filed a baseless motion for temporary restraining order and preliminary injunction ("*Motion*").  The Court should deny it.

Through the present Motion, Cardinals is attempting is an improper end-around the existing TRO and consent injunction in favor of Power (Doc. 22).  Mr. Disque and Mr. Dupont do not like how Mason Miller, Ashley Energy, LLC's longtime and sole President and CEO, is running the company, and they want him gone so that they can manipulate the company to benefit Cardinals' equity position should the Court rule in Cardinals' favor on the key substantive issue in this case, which concerns ownership of the company.  Mr. Disque and Mr. Dupont want 100% control. Knowing that they cannot remove Mr. Miller as a manager/board member or officer of Ashley Energy without violating the existing injunction (Doc. 22), Mr. Disque and Mr. Dupont (through Cardinals) are now asking the Court to remove Mr. Miller from these roles by enjoining Mr. Miller from doing anything in those roles that they might disagree with.  Despite framing their request as seeking prohibitory injunctive relief, in reality they are asking this Court for mandatory injunctive

relief in the form of blessing how they want the company to be run.

The first problem with that request is that the parties to this ligation are simply shareholders and have no role in running the company; as Cardinals acknowledges, the Board of Managers runs Ashley Energy.  Part of those operations was expressly delegated to Mason Miller, its CEO and President.  Thus, to the extent there are complaints with how Mr. Miller is running the company, those complaints are properly against Mr. Miller, not a party to this litigation.  Such complaints lack any merit, but to the extent they are going to be addressed, they must be addressed separately, and not through the present unrelated lawsuit, which solely concerns ownership of the company.  Therefore, the requested relief—the Court's blessing that Mr. Disque and Mr. Dupont can seize control of Ashley Energy's affairs—is not actually before the Court, nor does this lawsuit have the proper parties before it to grant that relief.

The second problem is that Cardinals' requested relief and the complained-of conduct have nothing to do with Cardinals' actual Counterclaims.  Cardinals' Counterclaims ask the Court to find that its conversion rights trump Power's call option rights.  The allegations concerning Mr. Miller's running of the company are unrelated to these claims.  The request must be denied for that reason as well.

The third problem is that Cardinals has failed to satisfy the *Dataphase* factors and meet its heavy burden necessary to obtain the drastic and extreme remedy of injunctive relief.

The fourth reason to deny this Motion is that, as set forth in Mr. Miller's affidavit and attached exhibits, the complaints lodged by Mr. Disque and Mr. Dupont are baseless and wholly manufactured after the Call option.  There is specific documentary evidence that shows they (1) granted Mr. Miller authority to enter into amendments to loan documents and were kept apprised of that process; and (2) approved of the hiring of Armstrong Teasdale to represent Ashley Energy

and have been kept apprised of developments in that case (which has gone exceedingly well for Ashley Energy).  Their false claims to the contrary must be disregarded.

## LEGAL STANDARD

"A temporary restraining order is an extraordinary and drastic remedy." *King v. Blake*, 2009 WL 73678, at *1 (E.D. Mo. Jan. 9, 2009).  The burden of proving that the relief should be awarded lies entirely with the movant.  *Id.*  "A Court issues injunctive relief in a lawsuit to preserve the status quo and prevent *irreparable harm* until the Court has an opportunity to rule on the lawsuit's *merits*."  *Washington v. Ladue Sch. Dist. Bd. of Ed.*, 564 F. Supp. 2d 1054, 1057 (E.D. Mo. 2008) (emphasis added).  Preliminary injunctive relief preserves the status quo until the Court is able to finally decide the merits of the movant's underlying legal claims.  *Id.*

Whether the Court should issue the requested injunctive relief depends on its resolution of four factors: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the harm that granting the injunction will inflict on other parties; (3) the probability that the movant will prevail on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *City of Berkeley v. Ferguson-Florissant Sch. Dist.*, 2019 WL 1558487, at *2 (E.D. Mo. Apr. 10, 2019).  "While 'no single factor is determinative,' the probability of success factor is the most significant."  *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase*, 640 F.2d at 113) (internal citations omitted)).  Further, the moving party ***must*** show the threat of irreparable harm.  *Modern Comp. Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir. 1989) (superseded by statute on other grounds).  "In fact, absence of a finding of irreparable injury is sufficient grounds for vacating a preliminary injunction."  *Id.*

"The dramatic and drastic power of injunctive force may be unleashed only against

conditions generating a presently-existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Washington*, 564 F. Supp. 2d at 1057 (quotation marks omitted).  "Thus, the inquiry is 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" *Id.* (quoting *Dataphase*, 640 F.2d at 113).

Finally, movants seeking mandatory, affirmative injunctive relief that disrupts the status quo bear an even higher burden of persuasion.  They must prove not only that the four requirements for injunctive relief are met, but also that the four elements weigh *heavily and compellingly* in their favor.  *Real Time Pharmacy Servs., Inc. v. Express Scripts, Inc.*, 2017 WL 1196485, at *2 (E.D. Mo. Mar. 31, 2017).

## ARGUMENT

### I.      AS A MATTER OF LAW, CARDINALS CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS

#### A.      Neither Cardinals nor Power is a proper party to this Motion.

Cardinals is not a proper party to the Motion.  Shareholders are not the board of managers, shareholders do not have the authority to run the company or take over the duties of corporate management, and shareholders have a separate available remedy through which they can try to redress improper conduct by an officer or director.

The LLC Agreement at issue in this case is governed by Missouri law.  (Doc. 1-1, § 15.8.)  Missouri Revised Statutes § 351.310 provides that management and control of the company is vested in the board of directors.  Missouri Revised Statutes § 347.079, governing LLCs specifically, is of accord and provides that management and control of an LLC is generally through a manager or group of managers, subject to any other provisions in the articles of organization or operating agreement regarding who shall manage.  While directors and officers

4

do have a fiduciary duty to the corporation's shareholders, no individual shareholder has the authority to take over the duties of corporate management.  *Saigh ex rel. Anheuser-Busch v. Busch*, 396 S.W.2d 9, 16-17 (Mo. App. 1965).  If an officer or director fails to perform properly, shareholders may bring an action against that officer or director.  *Id.*; *see also Wolgin v. Simon*, 722 F.2d 389, 392 (8th Cir. 1983).

The LLC Agreement in this case is consistent with the governing law, providing that the board of managers and the officers run the company—shareholders do not.  (Doc. 1-1, §§ 6.1, 6.3, 6.4, 7.2.)  Section 7.2 of the LLC Agreement specifically states that "[n]o Unitholder or Member in his, her or its capacity as such has the authority or power to act for or on behalf of the LLC in any manner, to do any act that would be (or could be construed as) binding on the LLC or to make any expenditures on behalf of the LLC."  (*Id.* § 7.2.)  Cardinals agrees emphatically with the proposition that the board and the officers, and not the shareholders, run the company.  *E.g.*, *Motion* at 4-5.

Cardinals is solely a shareholder of Ashley (currently under contract to sell its Preferred Units to Power), which had an ownership interest in Ashley and nothing more.  The Motion solely concerns the running of Ashley Energy and Mr. Miller's alleged conduct in connection with the management of the company as President and CEO—specifically, a) Mr. Miller's allegedly improper execution/amendment of agreements with the company's bank; and b) Mr. Miller's conduct in connection with the purported conflict of interest of Armstrong Teasdale LLP.  These new allegations have nothing to do with ownership of Ashley or any shareholder of Ashley, including Cardinals, or any of the claims raised by either party.  As the above authorities show, Cardinals as shareholder does not have, and never had, the authority to run Ashley, take over the duties of Ashley's corporate management, or influence these matters.  Accordingly,

Cardinals—solely a shareholder with no authority to influence or direct the management of Ashley—has no standing to seek the injunctive relief sought in its Motion.  Likewise, even if Cardinals did have such authority, such injunctive relief would need to be sought against Mr. Miller, not Power, which has not engaged in any of the complained-of conduct.

To the extent Cardinals could have any remedy against Mr. Miller for alleged improper conduct as set forth in its Motion, the remedy would be through a separate claim against Mr. Miller.  *Saigh*, 396 S.W.2d at 16-17.  But under no circumstance can Cardinals do what it is attempting to do here—get injunctive relief purely as a shareholder against alleged conduct by a director/officer (who is not a named defendant) through a TRO proceeding in an unrelated lawsuit concerning a call option right and a conversion right.

Power is also not a proper party to this Motion.  The Motion solely concerns the running of Ashley Energy and Mr. Miller's alleged conduct in connection with the management of the company.  Under the governing law and the LLC Agreement, Power is solely an owner of Ashley with no authority to run the company or dictate to the board or officers how it is to be run.  Despite several cursory attempts to do so in its brief, Cardinals does not come close to meeting its burden to show that *Power*'s conduct should be enjoined and compelled because of *Mr. Miller*'s alleged conduct in running Ashley.  Assuming for the sake of argument that Mr. Miller is guilty of the improprieties alleged in the Motion concerning his conduct as Ashley board member, CEO and President (he is not), it does not follow that Power should be enjoined because of this—the only link between Mr. Miller and Power being that Mr. Miller is a member of Power.  Cardinals has set forth zero evidence showing that any of the alleged conduct was done on behalf of, at the behest of, or for the benefit of Power; in fact, the evidence Cardinals attaches to its Motion shows Mr. Miller acting solely in his capacity as Ashley President, CEO,

and manager/board member.  Cardinals claims that the conduct at issue is "Power's actions," *e.g.*, *Motion* at 25, but backs this up with no evidence or analysis.  Cardinals asserts that "Power…doubled down on its claim that Cardinals was no longer an owner of Ashley."  *Id.* at 20.  In reality, all Power did was ask Cardinals to stop violating this Court's existing injunction (Doc. 22) and that Messrs. Disque and Dupont should stop any conduct that would interfere with Power's equitable ownership interest in the Preferred Units.  (Doc. 47-2, Ex. 21.)

 **B.**  **The Motion improperly seeks to enjoin and compel the conduct of Mr. Miller, a non-party.**

 The Motion should also be denied because it improperly seeks to enjoin and compel the conduct of Mr. Miller—a non-party whose alleged conduct is wholly separate from the alleged conduct of Power in this case, and which has nothing to do with Power.  Temporary restraining orders and preliminary injunctions only bind parties, their agents and employees, and those acting in active concert or participation with them. Fed. R. Civ. P. 65(d)(2).  Accordingly, a non-party "may be enjoined under Rule 65(d) only when its interests closely identify with those of the defendant, when the nonparty and defendant stand in privity, or when the defendant represents or controls the nonparty." *Titan Partners, LLC v. USA Tax & Ins. Services, Inc.*, 2011 WL 940723, at *2 (E.D. Mo. Mar. 16, 2011) (internal quotation marks omitted).

 Cardinals has not shown that any of the exceptions identified in *Titan Partners* to the normal rule against enjoining or compelling the conduct of non-parties has been met.  The Motion is replete with references to Mr. Miller and his alleged conduct, but Cardinals fails to prove how this conduct relates to, or is at the behest or under the control of, Power—and not conduct by Mr. Miller acting in his capacity as Ashley Energy CEO and President.  Mr. Miller is a non-party, he is not bound by the existing injunction in favor of Power, and there is no justification for enjoining and compelling his conduct through the present Motion.  Further,

Cardinals cannot avoid this problem through its occasional passing references—hardly present at all in the fact section of Cardinals' brief, then suddenly appearing in Cardinals' argument about the TRO factors—to "Power" or "Power…through Mr. Miller," *e.g.*, *Motion* at 23.  These cursory references contain no meaningful analysis of how Power has breached Section 6, or committed improprieties in connection with executing/amending Ashley Energy's bank agreements or the purported conflict of interest of Armstrong Teasdale LLP—the entire subject matter of Cardinals' TRO Motion.

### C.   Cardinals' Motion fails as a matter of law because it is untethered to any actual claims in this case.

Another fundamental, unfixable problem with Cardinals' Motion and the injunctive relief they seek is that the Motion and its contents are completely untethered to Cardinals' actual legal claims in this lawsuit.  As a matter of law, this means Cardinals fails the likelihood of success factor, which requires proving likelihood of success *on the merits* of the movant's case.  In other words, there must be a "merits"—an underlying legal claim or claims by the movant—that is directly tied to the preliminary injunctive relief the movant seeks.

This is supported by ample case law.  Injunctive relief cannot be brought as a separate cause of action.  *Mikhlin v. Johnson & Johnson*, 4:14-CV-881 RLW, 2014 WL 6084004, at *4 (E.D. Mo. Nov. 13, 2014) (dismissing injunctive relief claim brought as a separate cause of action) (citing *Fletcher v. Conoco Pipe Line Co.,* 129 F.Supp.2d 1255, 1264 (W.D.Mo.2001) ("The Court agrees that there is no 'injunctive' cause of action under Missouri or federal law. Instead, Plaintiffs must allege some wrongful conduct on the part of Defendant for which their requested injunction is an appropriate remedy.")).

Specifically, the injunctive relief sought must be related to the allegations in the underlying pleading.  *Owens v. Severin*, 293 Fed. Appx. 425 (8th Cir. 2008) (affirming district

court's denial of motions for a preliminary injunction because relief sought was unrelated to the allegations in his complaint) (citing *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir.1994) (party moving for preliminary injunction must establish relationship between injury claimed in motion and conduct asserted in complaint because purpose of preliminary injunction is to preserve status quo until court rules on merits; upholding district court's denial of motion for preliminary injunction where motion was based on new assertions of misconduct that were different from claim raised)).  *See also Howard v. Precythe*, 4:21-CV-233 HEA, 2021 WL 2156364, at *7 (E.D. Mo. May 27, 2021) ("The Court is unable to grant a motion for injunctive relief that is unrelated to the substance of the claims in plaintiff's complaint") (citing *Devose*, 42 F.3d at 471 (explaining that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); *Cook v. Lockhart*, 2:20-CV-00024-SRC, 2021 WL 106460, at *2 (E.D. Mo. Jan. 11, 2021) ("plaintiff's motion for injunctive relief fails because the substance of the motion is not related to the claims in his complaint"); *Hale v. Wood*, 89 F.3d 840, 1996 WL 341206, at *1 (8th Cir. 1996) (unpublished opinion) (rejecting plaintiff's request for injunctive relief because he "failed to establish a connection between these injuries and the conduct he challenged in his complaint")).

Here, Cardinals' Motion concerns Mr. Miller's allegedly improper conduct as Ashley Energy manager/board member and officer, which does not even concern Power.  The Motion complains—at great length—about what Cardinals claims is Mr. Miller's mismanagement of Ashley Energy and improprieties as manager/board member, specifically with regard to: a) Mr. Miller's allegedly improper execution/amendment of agreements with the company's bank; and b) Mr. Miller's conduct in connection with the purported conflict of interest of Armstrong

Teasdale LLP.  Because of this, Cardinals now claims—for the first time—that Mr. Miller has

breached various parts of Section 6 of the LLC Agreement.  *E.g.*, *Motion* at 2, 22-23.

But Cardinals' actual legal claims in this case are completely unrelated to these new

allegations of breaches by Mr. Miller allegedly justifying imposition of injunctive relief against

Power.  In its Counterclaim, ***Cardinals has sued solely on Sections 4.1 and 10.5 of the LLC***

***Agreement, which concern the ownership of Ashley Energy and are the provisions relevant to***

***the actual substantive issue in this case***—which is solely about an ownership dispute between

Power and Cardinals over Ashley Energy.  (Doc. 30 at 54-58.)  Cardinals' Counterclaim sets

forth its version of the conversion/call ownership issue and asks the Court to grant Cardinals

specific performance and ultimate injunctive relief on that narrow issue.  (*Id.* at 54-48, id. at 59.)

The provisions of Section 6 of the LLC Agreement—which deals solely with the "Management"

of Ashley Energy and is what Cardinals now claims Mr. Miller has violated through his

conduct—have nothing to do with Sections 4.1 or 10.5, the provisions Cardinals has sued under.

**Cardinals never sued on any Section 6 provision and has no allegations in its Counterclaim**

**concerning Section 6 or Mr. Miller's alleged improprieties as Ashley Energy board**

**member or officer concerning the company's banking agreements or the purported conflict**

**of interest of Armstrong Teasdale LLP.  Nor does the Counterclaim allege that Power**

**violated Section 6 or committed any of the improprieties alleged in the present Motion.**

Cardinals' Motion is thus unrelated and untethered to any actual claims in this lawsuit.

Cardinals' new "claims" asserted for the first time in their TRO Motion have zero chance of

success because they are unasserted in this lawsuit.  There is no underlying "merits" that could

possibly allow this factor to be met here.

Cardinals restates its position on the lone substantive merits issue in this case—the

conversion/call dispute concerning Sections 4.1 and 10.5, *e.g.*, *Motion* at 8, 21-22—but this position has nothing to do with the facts argued in the Motion or the injunctive relief Cardinals is seeking.  Notably, Cardinals once again claims it is likely to prevail on the merits of the substantive issue in this case, months after having told this Court that it cannot respond to Power's narrow motion for summary judgment on this purely legal issue because it needs to find out what discovery will reveal.  If Cardinals is so sure that it is going to prevail on the merits of the substantive issue, then Cardinals never needed more time to respond to the summary judgment.  Thus, Cardinals' claim that the likelihood of success factor is met because Cardinals is likely to succeed on the conversion/call issue not only fails because the TRO Motion has nothing to do with the conversion/call issue, it is also belied by their previous insistence that they require more time to respond to the summary judgment.

## II.      THE HARM FACTORS WEIGH FIRMLY AGAINST CARDINALS

Cardinals has not come close to showing irreparable harm.  First, as alluded to above, to the extent there is even any harm on account of Mr. Miller's alleged conduct (there is not), Cardinals can pursue that as a separate claim against Mr. Miller.  *See supra* at 5.  At best, even if the allegations are true, Mr. Miller (a non-party) is interfering with the operations of Ashley Energy (also a non-party) and its Board of Managers (an additional non-party).

Second, there is no showing by Cardinals that the alleged harm is *irreparable*.  As set forth in Mr. Miller's affidavit, Mr. Miller has been handling hiring legal counsel and negotiating loan agreements with Regions Bank for years.  The Board—and in turn Cardinals—has authorized and been kept apprised of those activities by Mr. Miller at every turn.  Only after Power Investments gave notice of its intent to exercise the Call did Mr. Disque and Mr. Dupont suddenly claim they (or is it Cardinals?) were being harmed.  Cardinals has not proven, much

11

less even articulated, how it is that Mr. Miller's handling of these two sets of responsibilities has harmed Cardinals.

Further, the alleged harm is not irreparable because the consummation of both the call and conversion are still possible once the Court has decided the key substantive issue in this case.  Cardinals has not showed how any of the alleged conduct by Mr. Miller means that only the purchase of the Preferred Units through the call can be fulfilled, or that the conversion of the Preferred Units to Common Units cannot still happen.  Assuming that Cardinals' allegations of Mr. Miller's conduct are true—they are not—Cardinals has at most shown a possible effect on the value of Ashley Energy and/or the purchase price of the Preferred Units.  This is not enough to justify the drastic imposition of injunctive relief here.  The alleged harm is purely economic harm regarding management of Ashley Energy's money, assets, and/or value.  That alleged harm is not irreparable, and injunctive relief is therefore inappropriate, because there are other causes of action available to Cardinals—"other causes of action under which money damages are a potential form of relief."  *Real Time Pharmacy*, 2017 WL 1196485, at *3.

Granting the injunctive relief sought here will inflict severe damage on Power, whereas denying it will not damage Cardinals at all.  Granting the relief sought here will mean having the Court bless the running of Ashley Energy exclusively by Messrs. Disque and Dupont, with Mr. Miller having no role, or having to do everything at the sole discretion of the other board members and with no authority of his own.  The status quo is that both Mr. Miller and Messrs. Disque and Dupont have a say in the running of Ashley Energy, and all of these individuals have contributed to the running of the company both before and after the call, with all necessary corporate formalities followed at every turn.  Granting Cardinals injunctive relief will destroy this status quo in which Mr. Miller and the other two individuals all have a say in how the

company is run.  It will eliminate Mr. Miller's day-to-day control over the business and affairs of the company, which would place the company in breach of its loan agreement.  Conversely, denying the injunction will not damage Cardinals because, as explained above, Mr. Miller is running the company as he always has (and how Messrs. Disque and Dupont have always agreed to have him run it), and the fulfillment of the conversion of Power's Preferred Units to Common Units is still possible should the Court ultimately rule in Power's favor on that issue.  No irreparable harm will be done to Cardinals, and at most they will have an unfounded claim of economic harm addressable through other means, not through injunctive relief here.

## III.    THE PUBLIC INTEREST FACTOR IS NOT MET

For its public interest analysis, Cardinals relies on two considerations: (1) the importance of enforcing valid contracts; and (2) the importance of "proper oversight of Ashley's operations." *Motion* at 3, 27.  This argument fails.

First, enforcement of contracts does nothing to aid Cardinals on this issue because, as explained above, ***Cardinals has not sued on the contractual provisions they are now trying to enforce through their Motion***.  In their Counterclaim, Cardinals is suing to enforce their interpretation of Sections 4.1 and 10.5 of the LLC Agreement—provisions that concern ownership of Ashley Energy.  (Doc. 30 at 54-58.)  Cardinals' present Motion is predicated entirely on their allegations that Mr. Miller has committed wrongdoing as manager/board member and officer of Ashley Energy, and that Mr. Miller accordingly has breached entirely different provisions of the LLC Agreement—namely, various provisions of Section 6, which governs "Management" of Ashley Energy.  *Motion* at 22-23; *id. passim.* There is a fundamental, irreconcilable mismatch between the content of Cardinals' Motion and their requested injunctive relief, on the one hand, and Cardinals' actual legal claims, on the other.  There is no public value

in enforcing contractual provisions Cardinals has not even sued under, and that have nothing to do with the actual issues in this case.

Second, the "oversight" point fails because here, Cardinals is unjustifiably asking the Court to issue *mandatory injunctive relief in the form of blessing and approving what Cardinals views as necessary "oversight" of the running of Ashley Energy—a privately held company— and its day-to-day affairs*.  *Motion* at 3 ("[O]versight is necessary to ensure that Mr. Miller is managing the 'day-to-day' affairs of the Company, which owns and operates a Power Plant, properly."), 27.  Cardinals claims that "Ashley has been suffering with Mr. Miller as its CEO" and so it needs the Court's affirmative blessing on the manner in which Cardinals, Mr. Disque, and Mr. Dupont believe Ashley Energy should be run.  *Id.* at 27; Cardinals' Proposed TRO (Doc. 46-1) at 2.  But Cardinals has not come close to proving that the four injunctive relief factors weigh in their favor, much less that they weigh in their favor "heavily and compellingly," as they must in order to obtain the mandatory relief they are seeking in the form of the Court's blessing of their desired "oversight" of Ashley Energy.

## IV.    CARDINALS' RENDITION OF THE FACTS IS INACCURATE AND MISLEADING

To the extent the Court determines it should assess the likelihood of success on the merits of unfiled claims involving non-parties to this litigation, Cardinals' version of the facts is misleading.  Indeed, beyond being inaccurate, Cardinals appears to have delayed responding to Power's summary judgment on the only disputed issue in this case (whether Cardinals' conversion right trumps Power's exercise of its call rights) under the guise of needing additional discovery, but the true purpose of this delay appears to manufacture this dispute.

### A.    Mason Miller—as President and CEO of Ashley—was expressly vested by the Ashley Energy board with the authority to negotiate and enter into loan documents with Regions Bank.

Cardinals complains (apparently on behalf of Ashley's board members) that Mr. Miller was not authorized to enter into Amendment Nos. 6 and 7 to the Regions Loan and Security Agreement, and did so with consulting with or obtaining approval of the Board.  (Doc. 47 at p. 15-16.)  That claim is false.

As noted by Cardinals, Section 6.4 of the Operating Agreement provides that the Board may appoint officers of Ashely Energy and "the assignment of such title shall constitute the delegation to such Officer of the authority and duties that are normally associated with that office, and any specific delegation of authority and duties made to such Officer by the Board.  (Doc. 1-1, § 6.4.)  First, Mr. Miller was duly appointed CEO and President by the Board.  As many Courts have found, the authority normally associated with those positions include control over day-to-day operations, sufficient authority to discharge his or her duties, and include the authority to defend and prosecute lawsuits in the name of the entity and retain legal counsel.  *See Smaha v. Landy*, 162 Pa. Cmwlth. 136, 150 (Commonwealth Ct. of PA 1994) (finding that provision bestowed the "presumptive authority to the discharge of his duties as president to engage counsel on behalf of [the company] in order to protect [the company's] interests in the underlying suit"); *Lasker v. Moreida*, 38 Misc.2d 348, 355 (Sup. Ct. NY 1963) (finding that a president as the presumptive authority to discharge his duties including defending the prosecution of suits in the name of the company); *In re Litestream Tech.*, 2006 WL 2473575 (M.D. Fl. Bank. 2006) (finding that a similar provision of an operating agreement must be read to give the CEO full authority to perform all acts customary or incidental to managing the company).

In fact, until Power exercised its Call, this is exactly how Ashley Energy operated, with Mr. Miller running day-to-day operations while the Board was regularly updated and voted on

events that did not constitute day-to-day operations.[1]

Second, with respect to the Regions loan, in February 2018, the Board passed a resolution that (1) unanimously approved the credit agreement with Regions; (2) designated Mr. Miller an Authorized Person authorized and empowered to executed the Regions loan documents, including changes to the terms and conditions therein; and (3) authorized Mr. Miller to enter into "any and all such other business with [Regions] as at any time may be deemed appropriate or advisable by each Authorized Person."  Mason Miller Decl., Ex. B, at 1-2.  Moreover, the Board further resolved that Regions could "rely on these Resolutions until it receives notice from an Authorized Person that these resolutions have been revoked or modified until written notice of revocation, in the form of a certificate signed by and on behalf of the Company by an Authorized Person has been given to the Lender and its receipt obtained therefor."  *Id.* at 3.  These resolutions—prior to Mr. Dupont and Mr. Disque's execution—were reviewed and approved by Cardinals' attorneys at Dentons.

Consistent with this resolution, between February 2018 and November 2021, seven amendments to the Regions loan agreement were executed.  In every case, the language of the amendments was negotiated on behalf of Ashley Energy solely by Mr. Miller working directly with Regions Bank, without any involvement of the Board.  At no point prior to the exercise of the Call Option by Power Investments on August 9, 2021, did either Mr. Dupont or Mr. Disque express any interest in being involved in the substantive discussions with Regions Bank concerning those amendments.

---

[1] Historically, the company held bi-annual board meetings only, and that those meetings, the minutes reflect that the board only took 2-3 formal actions per meeting at most.  All other decisions concerning the operation of the company were made by Mr. Miller and other members of management without board involvement.

On September 23, 2021, consistent with the resolution, Mr. Miller executed Amendment
No. 6 on behalf of Ashley Energy.  Amendment No. 6 did three things: (a) it extended the bank
loan to November 30, 2021; (b) it secured the bank's permission to use restricted cash that the
bank was previously holding as collateral to pay off the line of credit, thus increasing Ashley
Energy's available unrestricted cash; and (c) it secured the bank's permission to use restricted
cash that the bank was previously holding as collateral to pay off approximately $1.6 million of
high-interest debt owed to Caterpillar Finance.  If there were any remaining restricted funds
available after completing the plant reconstruction, those funds would be used to pay off some of
the existing Regions loan.

After Mr. Miller executed Amendment No. 6 on behalf of Ashley Energy, on September
29, 2021, Mr. Disque for the first time demanded to be provided updates concerning the status of
discussions concerning the Regions Bank loan. A week later, on October 7, 2021,  Mr. Miller
briefed the Board on the status of the Regions Bank loan and upcoming plans for potential
additional changes.  The meeting was recorded with the knowledge and consent of all
present.  Mr. Miller advised the Board that the reason for the changes described above was to
improve Ashley Energy's balance sheet which would allow it to get the best terms for a
refinancing from Regions Bank or other competing banks, as well as reduce our insurance costs,
all of which would increase the ultimate amount of cash available for distribution.  Mr. Disque
and Mr. Dupont did not express any objection to any of the above changes to the Regions Bank
loan agreement or uses of cash.  In fact, Mr. Disque nodded affirmatively as each item was
discussed and stated verbally, "right, right."  Not only did Mr. Dupont not express any concern
or objection to Mr. Miller handling the negotiations with Regions Bank and others, or the
execution of Amendment No. 6, he affirmatively stated that he wanted Mr. Miller to simply

"make sure that we have the, if there was a term sheet going back and forth, and if there was an extension or an amendment to effectuate the extension, that we have those documents just for our records."  Mr. Dupont also acknowledged that the above use of proceeds would allow the company to do a "recap[italization] from the new debt [i.e., refinancing] that will allow us to take a dividend," then stated that he "got it, got it, got it" and stated that he understood that "the notion would be that we show a better balance sheet to prospective lenders and insurers, lock in our better insurance, divided recap[iptalization] with presumably, hopefully….better terms from maybe a different bank, maybe Regions."  At the close of the October 7 board meeting, Mr. Disque simply stated that "in between meetings, we would appreciate…. updates on anything that is significant, like the Regions extension for example."  Following the October 7, 2021 board meeting, Mr., Miller did not receive any communications from Mr. Disque or Dupont objecting to Amendment No. 6 or the planned use of proceeds that was outlined above.

As a result of the 2018 Board resolution and the October 7 board meeting, on November 22, 2021, Mr. Miller executed Amendment No. 7 to the Regions Bank loan.  Once again, Regions Bank did not request any resolutions be signed by the Board because Mr. Miller had already been vested with that authority to amend the loan agreement as reflected in the February 2018 board resolutions.  Amendment No. 7 made two minor revisions to the loan agreement: (a) it extended the term of the Regions Bank loan to January 31, 2022; and (b) secured the bank's permission to use the restricted funds previously held by the bank as cash collateral (and unavailable for use by Ashley Energy) for working capital needs.  On December 3, Jeff Ferris, who is an employee of Cardinals/Arena emailed and asked Mr. Miller if the Regions Bank loan had been extended "another two months", to which Mr. Miller immediately responded "yes, it was extended to 1/31 to tie well to a potential refinancing," consistent with the plan discussed at

the October 7, 2021 meeting, and once a fully executed copy of amendment was obtained, it was provided to the Board in advance of the most recent board meeting in early December.

Despite being kept fully up to speed, at that December 8 board meeting, Disque accused me of engaging in improper communications with Regions Bank and others without board approval and the next day threatened to take action along with Mr. Dupont.  Mr. Miller promptly responded with a detailed, fact-based email, and I asked him a number of questions on behalf of Ashley Energy, including requesting he identify any provision of the operating agreement or board resolution that prohibited me from discussing matters with Regions Bank and others, and executing Amendments Nos. 6 and 7, in light of the provisions of the Regions loan agreement and the actions taken by the board in February 2018.  To this date, Mr. Miller has never received a response from Mr. Disque or any of the requested information.

### B.    Cardinals' manufactured conflict issue has been presented in a misleading manner and with an improper procedure.

Leaving aside that Armstrong Teasdale has never represented Cardinals, if Cardinals believes it has a basis to disqualify Armstrong Teasdale from this lawsuit because of some perceived conflict, the proper procedure for raising that issue is a motion to disqualify.  *Mongler v. Knight*, Cause No. 17-cv-6 (CDP), 2017 WL 2931369 at *7 (E.D. Mo. 2017) (finding naked accusations of conflicts against the other side's attorneys to be "extremely distasteful").  Instead, in an apparent effort to muddy a straightforward case, Cardinals has instead chosen to raise this issue informally at the Rule 16 conference (back on 10/15/21) and as part of this motion for a temporary restraining order.  Moreover, Cardinals has failed to explain how it—never a client of Armstrong Teasdale—can assert that Armstrong Teasdale has a conflict.  Indeed, the two cases cited by Cardinals (a New York opinion and an unpublished California opinion) clearly have different facts—in both cases the attorneys were literally adverse to their former client.  Again,

Cardinals has never been a client of Armstrong Teasdale.

Beyond Cardinals' procedural improprieties on this issue, it once again misrepresents the record. Again, Mr. Miller is and has always been in charge of the day-to-day operations of Ashley Energy. Since he was appointed CEO and President in 2018, he has always been in charge of hiring legal counsel for Ashley Energy, and has hired legal counsel from various law firms for Ashley Energy on at least a half dozen occasions with no input from the Board. Specifically with respect to the SL EC litigation before Judge Ross, the Board was advised that Mr. Miller was hiring Armstrong Teasdale to represent Ashley Energy and specifically authorized retaining Armstrong Teasdale. Mason Miller Decl. They have been kept informed along the way by Mr. Miller, participated in the litigation, and were made aware of expenses incurred by Ashley Energy. Mr. Dupont and Mr. Disque suddenly became "concerned" about the SLEC Litigation after Power Investments exercised its Call.

Mr. Disque and Mr. Dupont—purporting to act as members of the Board versus in their personal capacity as employees of Cardinals/Arena—made requests on Ashley Energy and Armstrong Teasdale for Armstrong Teasdale's legal file. Both Ashley Energy and Armstrong Teasdale responded that the legal file would be made available to them so long as Mr. Dupont and Mr. Disque provided written assurance that they would use the file as Board members and not share privileged communications with counsel for Cardinals and potentially waive privileges. Mr. Dupont and Mr. Disque failed to respond to either letter; the conclusion can be drawn is that they were intending to use the legal file in this litigation and not for any Ashley Energy purpose.

Mr. Dupont and Mr. Disque's next move was to hire "independent" legal counsel to evaluate Armstrong Teasdale's potential conflicts. It is unclear whether this retention was to

evaluate Armstrong Teasdale's conflicts vis a vis Ashley Energy or Cardinals.  The Board

members agreed to circulate possible candidates to serve in that role.  While Mr. Miller

circulated the names of three candidates from the law firms Bryan Cave, Stinson and Thompson

Coburn, Mr. Disque and Mr. Dupont unilaterally passed a resolution without consulting Mr.

Miller and unilaterally purported to hire Sandberg Phoenix.  Mr. Disque and Mr. Dupont reached

out to Sandberg Phoenix directly, so as to eliminate any possibility for Mr. Miller (the CEO,

President and other Board member) to assess their qualifications and independence from

Cardinals.

WHEREFORE, for the reasons stated herein, Plaintiff/Counterclaim Defendant Power

Investments, LLC requests the Court to deny Defendant/Counterclaim Plaintiff Cardinals

Preferred, LLC's Motion for a Temporary Restraining Order and Preliminary Injunction and

deny all injunctive relief sought therein, and such other and further relief as the Court deems just

and proper.


Dated:  December 21, 2021                    ARMSTRONG TEASDALE LLP


                                             By: /s/ Christopher R. LaRose
                                                 Christopher R. LaRose          #59612MO
                                                 Daniel R. O'Brien              #69258MO
                                                 Armstrong Teasdale LLP
                                                 7700 Forsyth Blvd., Suite 1800
                                                 St. Louis, Missouri 63105
                                                 Telephone:  314.621.5070
                                                 Fax:  314.621.5065
                                                 clarose@atllp.com
                                                 dobrien@atllp.com

                                                 ATTORNEYS FOR PLAINTIFF POWER
                                                 INVESTMENTS, LLC

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on this 21st day of December, 2021, the foregoing and all

attachments were electronically filed with the Clerk of the Court using the CM/ECF system,

which will send notification of the same to all counsel of record.

*/s/ Christopher R. LaRose*