**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| POWER INVESTMENTS, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cv-01022 |
| | ) | |
| CARDINALS PREFERRED, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**
**TO DISQUALIFY ARMSTRONG TEASDALE LLP**
**AS COUNSEL FOR PLAINTIFF AND TO STAY PROCEEDINGS**

Stephen J. O'Brien
DENTONS US LLP
One Metropolitan Square, Suite 3000
St. Louis, Missouri 63102
Telephone: (314) 241-1800
Fax: (314) 259-5959
stephen.obrien@dentons.com

*Attorneys for Defendant/Counterclaim*
*Plaintiff Cardinals Preferred, LLC*

Defendant/Counterclaim Plaintiff Cardinals Preferred, LLC ("Cardinals") hereby moves the Court to disqualify the law firm of Armstrong Teasdale LLP ("Armstrong Teasdale") from continuing to represent Plaintiff/Counterclaim Defendant Power Investments, LLC ("Power") in the above-captioned litigation because Armstrong Teasdale's representation of Power is in violation of Missouri Supreme Court Rule 4-1.7.[1]  Additionally, Cardinals requests that the Court stay all proceedings in this matter pending resolution of the instant motion.  In support of this Motion, Cardinals states as follows:

<div align="center">

**PRELIMINARY STATEMENT**

</div>

Since December 2017, Armstrong Teasdale has served as Ashley's counsel in a variety of different legal matters including providing corporate, transactional, and government affairs advice as well as representing Ashley as its outside counsel in litigation.  Most significantly, Armstrong Teasdale is <u>currently</u> representing Ashley in defense of claims asserted by Ashley's former owners who seek to impose a constructive trust over Ashley as a result of alleged wrongful acts taken by Mason Miller ("Miller") in connection with the transaction immediately preceding Cardinals and Power becoming co-owners of Ashley (the "*Ashley* Litigation").[2]

It is for this reason that Armstrong Teasdale's decision to represent Power – and take positions adverse to Ashley – in this dispute is so troubling.  Notwithstanding the well-established ethical rule that attorneys who serve as counsel for a company may not represent individual unitholders in a case in which their interests are adverse to other unitholders, Armstrong Teasdale secretly began to advise Power and Miller how to wrongfully attempt to oust Ashley's majority owner at least as early as April 2021.  In conjunction with that representation, Armstrong Teasdale

---

[1] Under Local Rule 12.02, this Court has adopted the Missouri Supreme Court Rules of Professional Conduct as the ethics rules for this Court.
[2] The *Ashley* Litigation is currently pending in this Court before Judge Ross in the action styled *SL EL, LLC v. Ashley Energy, LLC*, Case No. 4:18-CV-01377-JAR (E.D. Mo.)

<div align="center">1</div>

then filed the instant litigation against Cardinals (the majority owner of Ashley) on behalf of Power (the minority owner) even though Armstrong Teasdale owed at all times a duty of undivided loyalty to Ashley and its Members.[3]

Appreciating the seriousness of the conflict of interest issues presented, Ashley's Board of Managers unanimously approved engaging independent counsel in November 2021 to investigate whether Armstrong Teasdale's representation of Power in this action, while concurrently representing Ashley, Power, and Miller, individually, in other matters, creates an unwaivable conflict of interest.[4]   However, due to Miller's obstructionist behavior and delays in engaging independent counsel as well as Armstrong Teasdale's refusal to promptly or adequately respond to independent counsel's several inquiries, independent counsel was prevented from completing its investigation and analysis until February 17, 2022.  Nevertheless, in its final report, independent counsel firmly concluded that Armstrong Teasdale's representation of Ashley in the *Ashley* Litigation while representing Power in this litigation created an unwaivable conflict of interest because, *inter alia*, Armstrong Teasdale could not provide "competent and diligent representation to each affected client," as required by Missouri Rule of Professional Conduct 4-1.7(b)(1).

Given the results of independent counsel's investigation, counsel for Cardinals immediately asked Armstrong Teasdale whether it would voluntarily withdraw from the case, which Armstrong Teasdale steadfastly refused.  Accordingly, the instant motion is necessary to compel Armstrong Teasdale to comply with the Missouri Rules of Professional Ethics.  For the

---

[3] In what can only be characterized as a continued effort to mask its actions from the Board of Ashley, its majority owner (Cardinals), and the Court in both actions, Armstrong Teasdale failed to mark this matter as related to the *Ashley* Litigation even though the matters concern the same underlying transaction and the Plaintiffs in the *Ashley* Litigation seek a constructive trust over Ashley such that, if the Plaintiffs prevail, this matter would be moot.
[4] Ashley's Board of Managers was unaware that Ashley was still a party to the *Ashley* Litigation until October 2021 because Miller, among other things, falsely represented that Ashley had been dismissed.

reasons discussed below, Armstrong Teasdale must be disqualified from continuing to represent Power in this matter.

## RELEVANT BACKGROUND

**A.     Armstrong Teasdale LLP Was Actively Representing Ashley When It Began Advising Power With Respect to the Call and When It Filed the Instant Action.**

Ashley is a manager-managed Missouri limited liability company with two owners: majority owner Cardinals (who owns 54%) and a minority owner, Power (who owns 46%).  *See* Compl. ¶¶ 20-21.  The owners manage Ashley through a three-member Board of Managers, who exclusively appoint the Company's corporate officers, including its Chief Executive Officer.  *See* Compl., Ex. 1 (hereinafter "LLC Agreement") § 6.2(a), 6.4(a).  One Manager is designated by Power, one Manager is designated by Cardinals, and the third is designated by the majority of the Common Units and Preferred Units voting together.  *Id.* § 6.2(b).  At present, the three (3) Managers of Ashley are:  (i) Miller, (ii) Victor DuPont ("DuPont"), and (iii) David Disque ("Disque").  *See* Declaration of David Disque ("Disque Decl.") ¶ 4.  Miller is also the one-time sole owner and remains the controlling owner of Ashley's minority owner, Power.  *Id.* ¶ 5.  At all relevant times, Miller has also served as the Chief Executive Officer of Ashley.  *Id.*

On or about July 30, 2018, Plaintiffs SL EC LLC, one of its owners (Michael Becker), and SL EC LLC's outside counsel (Davis & Garvin, LLC) (collectively, the "SL EC Plaintiffs") brought an action in state court against Ashley, Power, Miller, and Miller's law firm asserting claims for breach of contract, fraudulent conveyance, piercing the corporate veil, and for the imposition of a constructive trust. *Id.* ¶ 6. The SL EC Plaintiffs allege that Power, Miller, and his

law firm improperly deprived the SL EC Plaintiffs of approximately $1,000,000 related to Power's acquisition of SL EC, LLC/Becker's equity interest in Ashley.[5]  *Id.*

Shortly thereafter, in August 2018, Armstrong Teasdale entered its appearance for Ashley, Power, Miller, and Miller's law firm and removed the litigation to this Court in the action which is captioned:  *SL EL, LLC, et al. v. Ashley Energy, LLC*, *et al*. Case No. 4:18-CV-01377-JAR (E.D. Mo.) (*i.e.*, the "*Ashley* Litigation").  Armstrong Teasdale has been representing Ashley, Power, and Miller in the *Ashley* Litigation since that time, and Christopher LaRose is the lead Armstrong Teasdale attorney representing Ashley, Power, and Miller in the *Ashley* Litigation.  Disque Decl. ¶ 7.

In addition to the *Ashley* Litigation, Armstrong Teasdale has served as counsel for Ashley in a variety of other capacities.  These include representing Ashley as its counsel for purposes of the Company's refinancing with Regions Bank in 2018 and providing advisory services and corporate advice related to corporate and government affairs in 2020 and 2021.  *Id.* ¶ 9.

Despite serving as counsel for Ashley in multiple capacities, however, Armstrong Teasdale also began secretly advising Power and Miller, individually, regarding ousting Ashley's majority unitholder by taking the position that the Call Option contained the Company's LLC Agreement could be used in an attempt to force an involuntary buyout of Cardinals' Preferred Units.  Specifically, on or about April 1, 2021, Miller contacted three Armstrong Teasdale attorneys, David Braswell, Esq., Christopher LaRose, Esq., and John Sten, Esq. about exercising the Call Option and buying out Ashley's majority unitholder.  Ex. A (privilege log).  Despite the ethical rules clearly prohibiting it, Armstrong Teasdale began advising (and continued to advise) Power and Miller (at his @ashleyenergy.com email address, no less) for months about how to try to

---

[5] The *Ashley* Litigation concerns the transaction referenced in Power's Complaint in this Action in Paragraphs 17 and 18.  *See* Compl. Dkt. 1 ¶¶ 17-18.

exercise the Call Option in a manner directly adverse to Cardinals while, at the same time, representing Ashley.  Put another way, Armstrong Teasdale, while representing Ashley the entire time, was advising and conspiring with Miller (Ashley's CEO) and Power (Ashley's minority unitholder) on purported ways to orchestrate a coup and oust Cardinals (Ashley's majority owner).

In conjunction with the legal advice Power/Miller were receiving from Armstrong Teasdale, Miller (on behalf of Power) sent Cardinals a notice on August 9, 2021 expressing Power's intent to call Cardinals' Preferred Units (the "Call Notice").  Dkt. 1-2.  After Cardinals converted its Preferred Units into Class A Common Units effective August 16, 2021, Armstrong Teasdale filed this litigation on behalf of Power against Cardinals:  (i) arguing that Cardinals' Conversion Right should be ignored; (ii) seeking to remove Cardinals as an owner of Ashley; and (iii) attempting to make Power the sole (100%) owner of Ashley.[6]  *See generally* Compl. Dkt. 1; Dkt. 1-3.  Mr. LaRose is serving as the lead attorney representing Power in the present litigation as well as the *Ashley* Litigation.  Disque Decl. ¶ 7.

Apparently realizing that representing Power in this action created an unwaivable conflict of interest, at no time has Mr. LaRose and/or Armstrong Teasdale requested a conflict waiver to allow Armstrong Teasdale to represent both Ashley and its minority unitholder in the *Ashley* Litigation (or in any other capacity for that matter), while simultaneously representing Power against the majority owner of Ashley, Cardinals, in this action seeking to remove Cardinals as an owner of Ashley.  *Id.* ¶ 10.  In fact, Armstrong Teasdale apparently did not even perform a conflicts analysis or advise Ashley that its interests were or could be directly adverse to that of Power and/or Miller.  Ex. B (Sandberg Phoenix Letter).

---

[6] Based on a review of Power's privilege log, Armstrong Teasdale, Power, and Miller knew that Power's attempt to call Cardinals' Preferred Units would likely result in litigation.  For example, days before Miller even sent his Call Notice to Cardinals, Mr. LaRose sent Miller a draft complaint, the contents of which Power has asserted work product protections over. *See* Ex. A.

**B.**     **Cardinals Raises the Conflicts Issue with Power and the Parties Agree to Independent Counsel.**

Cardinals, Disque, and DuPont were initially aware that the SL EC Plaintiffs had filed the *Ashley* Litigation against Ashley, Power, Miller, and Miller's law firm.  However, Miller falsely reported to the Board that Ashley was no longer involved in that case, including as recently as Ashley's October 2021 Board meeting.  Disque Decl. ¶ 8.  Therefore, Disque and DuPont believed that Ashley was no longer a party to the *Ashley* Litigation.  *Id.*  In October 2021, however, Messrs. Disque and DuPont discovered that Miller (aided by the Armstrong Teasdale who never advised them otherwise) had misled them; that Ashley was still a party to the *Ashley* Litigation and that SL EC's claim seeking monetary damages and a constructive trust over Ashley's assets had survived summary judgment and the matter was proceeding to trial.  *Id.*

Promptly after learning this new information, Cardinals raised the issue with Power, *i.e.*, that Armstrong Teasdale was, on the one hand, representing Ashley (a company of which Cardinals is the majority and controlling unitholder), Power, and Miller in the *Ashley* Litigation, while simultaneously representing Power (controlled by Miller) against Cardinals.  Dkt. 50 ¶ 9. Ashley also had serious concerns about the conflict of interest.  *Id.* at 11, 14.

Accordingly, in October 2021, Cardinals and the majority of Ashley's Board (Disque and DuPont) sought books and records from the Company about the Armstrong Teasdale conflict and sought client files from Armstrong Teasdale. *Id.* at 10.  Rather than providing the information requested, both Armstrong Teasdale and Miller (purportedly acting on behalf of Ashley) largely refused, arguing—without citing any legal authority—that the information could not be shared with Cardinals.  *Id.*  Incredibly, however, Armstrong Teasdale expressly stated that it was obligated to "comply with Rule 4-1.13, which **requires this law firm to act in the best interest of Ashley**

**Energy, as opposed to any individual managers or unitholders of Ashley Energy**."   Ex. C
(Letter From LaRose Dated October 22) (emphasis added).

Disque and DuPont then called a special board meeting on November 17, 2021, at which
the Board, including Miller himself, voted unanimously to retain independent counsel to
investigate Armstrong Teasdale's conflict of interest.  *See* Dkt. 50 ¶ 14.  The appointment was
memorialized in the Board's meeting minutes and formally memorialized into a written resolution
which set forth the specific scope of the work to be completed by independent counsel.  *See* Ex D.
Those resolutions reflecting the appointment of independent counsel were sent to Miller on
December 2, 2021, and, at the same time, Disque and DuPont proposed using Sandberg Phoenix
& Von Gontard P.C. ("Sandberg Phoenix"), with whom neither Ashley nor Cardinals or its
affiliates had any previous relationship, to serve as independent counsel (hereinafter "Independent
Counsel").  *See* Ex. E.  Because of Miller's obstructionist behavior, however, Ashley was unable
to formally engage Sandberg Phoenix until December 17, 2021.[7]  *See* Disque Decl. ¶ 12.

**C.    Independent Counsel Seeks Information From Armstrong Teasdale.**

On January 21, 2022, Sandberg Phoenix sent a letter to the Ashley Board, stating that
Sandberg Phoenix had requested Armstrong Teasdale to provide its position on the conflict issue
as well as other information.  Sandberg Phoenix indicated that it expected to be able to provide its
final analysis within a week of receiving Armstrong Teasdale's position and recommended that
the above-captioned litigation be placed on hold pending the outcome of Sandberg Phoenix's
investigation.  Ex. F.

---

[7] Miller's behavior included contacting other lawyers (who appear to have been selected by Armstrong
Teasdale) to serve as "Independent Counsel" even though the majority of the Board had already resolved
to engage Sandberg Phoenix, refusing to wire retainers to Sandberg Phoenix, and refusing to meet with
Sandberg Phoenix claiming conflicts.  Disque Decl. ¶ 12.

Earlier that same day, Cardinals had already filed a Motion to Amend the CMO in this case (Dkt. 65) due to Power's and Miller's discovery delays.  Sandberg Phoenix's letter further reinforced the need for an extension of the interim dates in the case schedule until these issues could be resolved.  Thus, on January 23, 2022, Cardinals filed a Supplement with the Court advising it of Sandberg Phoenix's recommendation, informing the Court that it would be adhering to that recommendation, and explaining how Sandberg Phoenix's letter further reinforced the need for an extension of the case schedule.  Dkt. 66.

On January 26, 2022, Power filed its Opposition to Cardinals' Motion to Amend the CMO (Dkt. 69).  In its Opposition, Power and its counsel Armstrong Teasdale took the opportunity to preemptively argue the motion to disqualify Power anticipated Cardinals would file, disingenuously alleging that Cardinals only raised the conflicts issue "as a last-ditch attempt" at "delay."  Power argued that there could be no conflict of interest because Armstrong Teasdale has never directly represented Cardinals.

In its January 28, 2022 Reply in Further Support of the Motion to Amend (Dkt. 73), Cardinals pointed out that, among other things, Power's and Armstrong Teasdale's argument that Armstrong Teasdale had no conflict of interest because Armstrong Teasdale has never directly represented Cardinals is irrelevant since it is well-established that one who has served as an attorney for a company, including as its outside counsel, may not represent an individual unitholder of that company in a case in which the unitholder's interests are adverse to the other unitholders of the company.  (*See infra* Part III).

On January 31, 2022, Armstrong Teasdale finally provided an email response to Sandberg Phoenix's January 21 letter.  Despite the ten-day delay, Armstrong Teasdale merely reiterated its

arguments that Armstrong Teasdale did "not see any such adversity here" because "Cardinals is neither a present nor former client of [Armstrong Teasdale]."  Ex. G.

On February 2, 2022, Sandberg Phoenix sent another letter to Armstrong Teasdale, noting that the January 31st letter was mostly non-responsive and there were still "unanswered questions." Ex. H.  Specifically, Sandberg Phoenix pointed to two areas in which it had requested, but not received, any information from Armstrong Teasdale:  (i) "whether Armstrong ever assessed the multiple representations [in the *Ashley* Litigation and the instant litigation] from a conflict-of-interest perspective"; and (ii) if Armstrong Teasdale ever provided Ashley Energy advice on a potential adversarial position to Mr. Miller/Power Investments in [the *Ashley* Litigation]." *Id.*

Sandberg Phoenix also reminded Armstrong Teasdale of certain documentation that Sandberg Phoenix had requested, but not yet received, regarding these two topics including but not limited to:  "engagement agreements, billing arrangements, conflict waivers, directions on who retained you and who you report to" and copies of any written advice to Ashley on a potential adversarial position to Miller/Power.  Sandberg Phoenix also reminded Power that "cases cited by Cardinals Preferred are not the focus of our inquiry" and that Sandberg Phoenix's role is independently "analyze whether a conflict of interest exists." *Id.*

Eight days later, on February 10th, Armstrong Teasdale finally responded to Sandberg Phoenix's letter.  Rather than providing the information or the documents requested, Armstrong Teasdale continued to repeat the same arguments it had previously made in response to Sandberg Phoenix's initial letter and failed to articulate any legitimate basis why its continued representations of Power and Ashley should be allowed under the ethical rules.  Ex. I.

**D.     Independent Counsel Issues its Final Report Finding Armstrong Teasdale has an Unwaivable Conflict.**

On February 17, 2022, Sandberg Phoenix issued its final report (the "Conflict Report").  In the Conflict Report, Sandberg Phoenix found that it was a clear conflict of interest for Armstrong Teasdale to represent Ashley in the *Ashley* Litigation while representing Power in this litigation. Sandberg Phoenix's Conflict Report also concluded that the conflict is not waivable because Armstrong Teasdale could not provide "competent and diligent representation to each affected client," as required by Missouri Rule of Professional Conduct 4-1.7(b)(1).  Ex. B.

In response to the Conflict Report, Cardinals contacted Armstrong Teasdale and Power, and asked whether Armstrong Teasdale would withdraw and Power voluntarily seek new counsel. *See* Disque Decl. ¶ 13.  Cardinals offered to accommodate any reasonable need that Power may have in securing new counsel, including agreeing to a stay so that Power could secure new counsel. *See Id.*

Despite Sandberg Phoenix's recommendation, Armstrong Teasdale refuses to withdraw, and Power refuses to seek new counsel.  Cardinals therefore files this Motion to Disqualify.

**E.     Cardinals and Ashley Have Never Consented to Armstrong Teasdale's Dual Representation of Ashley and Power.**

When Power and its counsel Armstrong Teasdale filed this litigation, Ashley was already a client of Armstrong Teasdale.  Armstrong Teasdale therefore owed Ashley ethical and fiduciary obligations not to represent a (minority) owner of Ashley in seeking to evict another (and the majority) owner of Ashley.  *See infra* Part III.  Nonetheless, Armstrong Teasdale has taken on the representation of Power in the current action, an action where Power is directly adverse to Cardinals.  Armstrong Teasdale never sought a waiver of this conflict, and neither Ashley nor Cardinals has ever consented to any waiver of this conflict.  *See* Disque Decl. ¶ 10.

Further, Cardinals has never acted in any way as to suggest consent.  To the contrary, promptly upon learning Power and Miller – and possibly Armstrong Teasdale itself – had misled Ashley's non-Miller Managers and Cardinals about Ashley's continued role as a defendant in the *Ashley* Litigation, Cardinals raised the conflicts issue and made clear Cardinals' position that the representation in this case is improper.  Since initially raising the issue, Cardinals has objected repeatedly, both verbally and in writing.  *See* Dkt. 47-2 (Minutes of Ashley's Board Meeting on November 17, 2021).

## ARGUMENT

### I.    Cardinals Has Standing to Raise the Present Conflict.

Cardinals has standing to raise the present conflict of interest.  As an initial matter, courts regularly recognize that lawyers owe ethical and fiduciary duties to owners of a close corporation client. *See, e.g.*, *TransPerfect Global, Inc. v. MotionPoint Corp.*, 2012 U.S. Dist. LEXIS 129402 (N.D. Cal. Sept. 11, 2012); *Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.*, 541 N.E.2d 997 (Mass. 1989).  Further, the only remedy in this Litigation is for Cardinals to request, and for this Court to grant, the instant motion disqualifying Armstrong Teasdale.  In accordance with Sandberg Phoenix's recommendation, Ashley has terminated Armstrong Teasdale's representation in the *Ashley* Litigation.  However, Ashley is now in a position where it needs to retain new counsel years into litigation because of Armstrong Teasdale's breaches of loyalty and violations of the ethical rules.  If the Court were to allow Armstrong Teasdale to remain as counsel for Power in this Action, it would not only be condoning Armstrong Teasdale's ethics misconduct and disloyalty, but also rewarding Power at the same time since Armstrong Teasdale has access to privileged information it garnered from the *Ashley* Litigation that it can use against Cardinals (not to mention the privileged information that Armstrong Teasdale possesses that could

11

harm Ashley, and therefore Cardinal's interests, in the related *Ashley* Litigation).  This Court should not countenance such wrongdoing.  Rather, the Court should, under the applicable law and precedent (including as cited herein), disqualify Armstrong Teasdale from continuing to represent Power in this case.

## II.   Armstrong Teasdale's Representation of Power in this Litigation Violates the Missouri Ethical Rules.

The Eastern District of Missouri has adopted the Rules of Professional Conduct set forth by the Supreme Court of Missouri (the "Professional Rules").  *See* E.D. Mo. L.R. 12.02. Professional Rule 4-1.7 governs conflicts of interest among current clients.  Rule 4-1.7(a) provides that "a lawyer ***shall not represent a client if the representation involves a concurrent conflict of interest***." (Emphasis added.)  Rule 4-1.7(a) then specifies two circumstances when a concurrent conflict of interest exists:  "A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer."  In its January 31 email response, Armstrong Teasdale has agreed that Professional Rule 4-1.7 governs the present situation.

Conflicts of interest in simultaneous concurrent representations – also referred to as "dual representations" – are subject to enhanced scrutiny.  "Purported conflicts in dual representation cases are subject to stricter scrutiny than cases where an attorney seeks to represent the adversary of a former client…. [I]n all but a few cases, a per se rule of disqualification exists." *Commonwealth Land Title Ins. Co. v. St. Johns Bank & Trust Co.*, 2009 WL 3069101, at *5 (E.D. Mo. Sept. 22, 2009) (citations omitted); *see also Flatt v. Superior Court*, 9 Cal. 4th 275, 286 (Cal. 1994) (explaining that "[t]he mandatory rule of disqualification in cases of dual representations

involving unrelated matters—analogous to the biblical injunction against 'serving two masters' (Matthew 6:24)—is [] self-evident").

Rule 4-1.7(a) requires disqualification when a firm has undertaken directly adverse representations of two parties, and irrespective of the risk that client confidences will be violated: "Even though the simultaneous representations may have nothing in common, and there is no risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be required." *Commonwealth*, 2009 BL 202035, at *5; *see also Goss Graphics Sys. v. MAN Roland Druckmaschinen Aktiengesellschaft*, 2000 U.S. Dist. LEXIS 18100, at *18 (N.D. Iowa May 25, 2000); ABA Formal Ethics Opinion 91-361 (1991) (simultaneous representations of corporation and its owners, even on unrelated matters, may result in the lawyer possessing confidences of one client that may not be revealed to another). The reason is the attorney's duty of loyalty to his client: "The propriety of an attorney's conduct in concurrently representing adverse clients is measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." *Commonwealth*, 2009 WL 3069101, at *5.

The only potential exception is where the attorney has "explain[ed] fully to each client the implications of the common representation," each client has had "the opportunity to evaluate the need for representation free of any potential conflict and to obtain other counsel if desired," and the attorney has obtained a waiver from each client. *Goss Graphics*, 2000 U.S. Dist. LEXIS 18100, at *22. Even then, "[a] lawyer should resolve all doubts against the propriety of representing multiple clients having potentially differing interests." *Id*. Further, ABA Formal Ethics Opinion 91-361 provides, "it is also clear that, under Rule 1.7(a), the [corporation's] attorney could not, without the informed consent of both the [corporation] and all adverse [owners], represent the

interests of one [owner] against other [owners] with respect to a matter involving the [corporation's] affairs."  *See* ABA Formal Ethics Opinion 91-361 (1991).

### III.   Armstrong Teasdale Must be Disqualified Because it Cannot Represent Power in this Action Against Cardinals.

Simultaneous representation of a company, on the one hand, and one of its shareholders in a dispute against other shareholders, on the other, implicates the rule against conflicts in concurrent representation.  "It is accepted that one who has served as an attorney for a corporation may not represent an individual shareholder in a case in which his interests are adverse to other shareholders." *Barmash v. Perlman*, 2013 N.Y. Misc. LEXIS 4626, at *3 (Oct. 3, 2013 N.Y. Supr. Ct.) (internal quotation, citation omitted).  "Where a law firm has served as corporate counsel to an entity, it cannot then represent one shareholder against another with regard to underlying corporate transactions concerning that self-same corporate entity." *Id*.; *Fincanna Capital Corp. v. Cultivation Techs., Inc.*, 2021 Cal. App. Unpub. LEXIS 4234, at *30 (Cal. Ct. App. 4th Dist. June 28, 2021) (explaining that "once a conflict has arisen between a corporation and one or more of its officers, directors or shareholders, corporate counsel may not simultaneously represent the corporation and the adverse officer, director or shareholder") (citation omitted); *see also Matter of Greenberg*, 614 N.Y.S.2d 825 (App. Div. 1994); *Morris v. Morris*, 306 A.D.2d 449, 763 N.Y.S. 2d 622 (2d Dept 2003); *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal. App. 4th 1832 (1995); *Woods v. Superior Court*, 149 Cal.App.3d 931 (1983).  Further, any doubts are to be resolved against the dual representation, and "the mere appearance" of a conflict "is sufficient to warrant disqualification." *Barmash*, 2013 N.Y. Misc. LEXIS 4626, at *3.

In *Barmash*, the plaintiff and defendant were cofounders of the Company at issue.  The Company had two shareholders: the plaintiff (who was the minority shareholder), and another entity, BP (which was the majority shareholder and was itself mostly owned by the defendant).

14

The plaintiff and defendant were the sole members of the board.  In addition, the defendant served as the Company's President, Treasurer, and Secretary.  The plaintiff had served as chief technology officer, but had resigned by the time of the suit.  The plaintiff brought suit alleging that the defendant had looted the Company and misappropriated intellectual property—an action that was "in relevant part a dispute between two shareholders … concerning [the Company's] corporate governance." *Id*. at *4.  It was undisputed that the outside law firm representing the defendant and BP in this litigation was also concurrently representing the Company.  The Court found disqualification warranted, explaining that the law firm "cannot represent the majority shareholder, BP, a director in the corporation, Perlman, and the corporation itself, ESC, as it owes separate duties of loyalty and confidentiality to each." *Id*. at *5-6.

Like in *Barmash*, the instant action presents a fight between two equity holders in a closely-held entity over the control of Ashley.  Both sides have alleged breaches of the LLC Agreement governing Ashley and related bad faith conduct.  This action will decide who controls Ashley going forward—whether Power and Miller are permitted to divest Cardinals of its interests in the entity or whether Cardinals' right to convert its shares to common and stay a unitholder is upheld.  In the meantime, the *Ashley* Litigation involves substantive rights of the entity Ashley, in which Cardinals has an interest as a unitholder, and concerns more allegations of misconduct against Power and its affiliates.

In its January 31st email, Armstrong Teasdale argued that cases like *Barmash* are inapposite because here Armstrong Teasdale is not representing Ashley *in the very same litigation*.  But it is well-established that a conflict does not require the two representations to be in the context of the same litigation.  *See Commonwealth*, 2009 BL 202035, at *5; *Flatt*, 9 Cal. 4th at 286; *Greenberg*, 614 N.Y.S.2d at 827.  In *Greenberg*, one shareholder sued the other shareholder and

15

the second shareholder's new cabinet company for breach of fiduciary duty and unilaterally seizing corporate assets and transferring them to his new company. The Court found a conflict of interest where the law firm that had previously served as counsel to the old company went on to serve as the incorporator of the new company and was now representing the second shareholder in seeking dissolution of the old company and defending against the breach of fiduciary duty claims. The Court explained that "in all instances, [the second shareholder's] interests were clearly adverse to those of the other shareholders" and the law firm should have been disqualified. *Id*.

*Barmash* and *Greenberg* establish that a law firm representing the company has a duty of loyalty to the company's stockholders. So too does *Applebaum v. Verndale Corp.*, 15 Mass. L. Rep. 113 (2002), which expressly held that "in a close corporation where the number of shareholders is small, corporate attorneys, due to their close interaction with all participants, stand in a confidential relation with respect to both the corporation and its individual shareholders and, thus, owe a duty of equal loyalty and impartiality to shareholders." Thus, the "mandatory rule of disqualification in cases of dual representations involving unrelated matters—analogous to the biblical injunction against 'serving two masters'" (*Flatt*, 9 Cal. 4th at 286), applies equally when one of the representations is of the company and the other is against a segment of the company's shareholders. Regardless, given the strong presumption of disqualification in the case of potentially conflicting concurrent representations, "any doubts as to the sufficiency of the showing of an asserted conflict of interest are to be resolved in favor of disqualification." *Barmash*, 2013 N.Y. Misc. LEXIS 4626, at *3.[8]

---

[8] Power has most recently attempted to argue that Cardinals waived the ability to move to disqualify Armstrong Teasdale because it did not move to disqualify Armstrong Teasdale sooner. This argument is absurd as it ignores the fact that the only reason Independent Counsel's analysis took as long as it did was because Miller and Armstrong Teasdale's attempted to hinder the investigation and they refused to promptly and adequately respond to Ashley's Board's and Independent Counsel's requests.

## IV.    The Court Should Stay All Other Proceedings Pending Resolution of this Disqualification Motion.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936).  In deciding a motion to stay, the Court must weigh any potential prejudice against the Court's interest in judicial economy. *Allied Prop. & Cas. Ins. Co. v. Grich*, 2016 U.S. Dist. LEXIS 126238, at *5 (E.D. Mo. Sept. 16, 2016); *Asarco LLC v. NL Indus., Inc.*, 2013 U.S. Dist. LEXIS 43013, at *10 (E.D. Mo. Mar. 11, 2013).  Courts in the Eighth Circuit routinely grant motions to stay proceedings to promote "judicial economy" and where a stay would permit a case to be "resolved more efficiently and with fewer judicial resources." *Id*.; *Asarco*, 2013 U.S. Dist. LEXIS 43013, at *3.  This includes staying proceedings during the pendency of a motion to disqualify.  *See, e.g.*, *Fant v. City of Ferguson*, 2017 U.S. Dist. LEXIS 124045, at *6 (E.D. Mo. Aug. 7, 2017); *Martinez v. County of Antelope*, 2016 U.S. Dist. LEXIS 76549, at *1 (D. Neb. June 13, 2016).

Cardinals is requesting a limited stay of all proceedings, including the upcoming mediation deadline,[9] pending the resolution of the motion to disqualify.  In the absence of stay, the potential for prejudice to Cardinals and waste of judicial resources is clear.  Cardinals has articulated serious concerns about how Armstrong Teasdale's continued representation of Power could prejudice Cardinals.  The potential for prejudice includes the material possibility that Armstrong Teasdale could, intentionally or unintentionally, use privileged information (garnered from its representation of Ashley in the *Ashley* Litigation) against Cardinals.  *See, e.g.*, ABA Formal Ethics

---

[9] Under the Court's most recent order, the Parties were scheduled to mediate before former-Chancellor Andre G. Bouchard of the Delaware Court of Chancery by March 1, 2022.  (Dkt. No. 64).  However, given Independent Counsel's conclusion and the instant Motion, counsel for Cardinals has postponed the mediation that was scheduled for February 28, 2022 so that neither party would be prejudiced if the instant Motion were granted.

Opinion 91-361 ("simultaneous representations of partnerships and of individual partners, even on basically unrelated matters, may result in the lawyer possessing confidences of one client that may not be revealed to another"); ABA Formal Ethics Opinion 92-367 ("A lawyer who in the course of representing a client examines another client as an adverse witness in a matter unrelated to the lawyer's representation of the other client, or conducts third party discovery of the client in such a matter, will likely face a conflict that is disqualifying in the absence of appropriate client consent."). Such harms from even inadvertent disclosure could be not only prejudicial to Cardinals, but irreparably so.

By contrast, there is no countervailing prejudice to Power from a limited stay. *See, e.g.*, *Toppins v. 3M Co.*, 2006 U.S. Dist. LEXIS 36, at *4 (E.D. Mo. Jan. 3, 2006) (ordering stay and declining to find prejudice where the stay "is temporary and for a relatively short duration of time" even if plaintiff's discovery may be "subjected to some delay"). Cardinals has already requested that the fact discovery deadline be extended and this case is still eight (8) months from trial. As detailed in Cardinals' Motion to Amend Case Management Order (Dkt. No. 65), a short extension to the case management order is already necessary to address discovery abuses by Power and Miller. Subject to the Court's availability, Cardinals believes that the Motion to Disqualify could similarly be resolved such that an extension of the trial date would not be necessary. In any event, any inconvenience and prejudice to both parties would be magnified a hundredfold if Armstrong Teasdale were permitted to further participate in these proceedings, including in depositions, and then be subsequently disqualified.

WHEREFORE, Cardinals respectfully requests that this Court disqualify Power's counsel, Armstrong Teasdale, in light of its conflict of interest; stay all proceedings pending resolution of

this Motion; award Cardinals its attorney's fees and costs incurred in having to bring this Motion;

and award Cardinals any other or further relief this Court deems just and proper.

Dated: February 21, 2022

<div style="margin-left:40%">

Respectfully submitted,

DENTONS US LLP

By: */s/ Stephen J. O'Brien*____
Stephen J. O'Brien, #43977MO
One Metropolitan Square, Suite 3000
St. Louis, Missouri 63102
Telephone: (314) 241-1800
Fax: (314) 259-5959
stephen.obrien@dentons.com

REED SMITH LLP

By: */s/ Wayne C. Stansfield*___
Joseph J. Tuso
Wayne C. Stansfield
Nicholas R. Rodriguez
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
215-851-8100
jtuso@reedsmith.com
wstansfield@reedsmith.com
nrodriguez@reedsmith.com
(*admitted pro hac vice*)

*Attorneys for Defendant/Counterclaim
Plaintiff Cardinals Preferred, LLC*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was electronically

filed on February 21, 2022 with the United States District Court for the Eastern District of Missouri

using the CM/ECF system which will send notification of such filing to all parties requesting

electronic notice.

_/s/ Wayne C. Stansfield_
Wayne C. Stansfield