# EXHIBIT B



**Andrew C. Ruben**
*Shareholder*

120 S. Central Avenue, Suite 1600
St. Louis, MO 63105
Tel: 314.425.4909
Fax: 314.725.5754
aruben@sandbergphoenix.com
www.sandbergphoenix.com

February 17, 2022

*VIA E-MAIL ONLY*　　　David Disque, *ddisque@arenco.com*
　　　　　　　　　　　Mason Miller, *mason.miller@ashleyenergy.com*
　　　　　　　　　　　Victor Dupont, *vdupont@arenco.com*

Ashley Energy, LLC
Attn: Board of Directors
1 Ashley Street
St. Louis, MO 63102

　　　　　　**Re:　　Ashley Energy LLC – Conflict of Interest Analysis**

Gentlemen:

　　　　You retained us to review Armstrong Teasdale's representation of Ashley Energy, LLC ("Ashley Energy") and one of its members, Power Investments, LLC ("Power Investments"), in two lawsuits and to provide an analysis of any conflict of interest. Our analysis is below.

　　　　Please note that this analysis was completed for Ashley Energy's information and use only; the analysis was not completed for use by any party in the various lawsuits at issue.

<u>**Background**</u>

<u>*Ashley Energy*</u>

　　　　Ashley Energy was formed on November 23, 2016, as a Missouri limited liability company to own and operate a power plant. SL EC, LLC originally owned Ashley Energy but sold the company to Power Investments on or around August 9, 2017 (the "Ashley Energy Sale"). Power Investments subsequently transferred partial membership of Ashley Energy to Cardinals Preferred, LLC ("Cardinals Preferred") (the "Membership Sale").

　　　　Under Ashley Energy's Amended Limited Liability Company Agreement, the Board of Directors has full control of the company and can delegate duties to officers. There are three members of the Board of Directors—one elected by Power Investments (Mason Miller), one elected by Cardinals Preferred (Victor Dupont), and one elected by a combination (David Disque).

Ashley Energy, LLC
Board of Directors
February 17, 2022
Page 2

<u>*The SLEC Lawsuit*</u>

On November 7, 2017, Ashley Energy, through Mr. Miller, signed an engagement letter for Armstrong Teasdale's legal services for "litigation." We do not know what "litigation" was referenced, but because the SLEC Lawsuit was filed against Ashley Energy shortly thereafter on November 22, 2017, we presume the engagement was for that lawsuit.

SL EC, LLC, Michael Becker, and Davis & Garvin, LLC filed suit against Ashley Energy, Mr. Miller, Power Investments, and Miller Wells, PLLC (which we understand to be Mr. Miller's law firm) (4:17-cv-02751). The plaintiffs dismissed the lawsuit on May 14, 2018, but refiled on August 20, 2018, which lawsuit is still pending (4:18-cv-01377) (globally the "SLEC Lawsuit").[1]

The Second Amended Complaint in the SLEC Lawsuit asserts claims against Ashley Energy for breach of contract (Count I) and equitable estoppel (Count II) by Davis & Garvin for payment of attorneys' fees in conjunction with the Ashley Energy Sale, which Davis & Garvin maintains Mr. Miller and Power Investments bound Ashley Energy to pay. (Second Amended Complaint, ¶¶ 56, 57, 64, 65, 66). The Second Amended Complaint also included counts against Ashley Energy for fraudulent conveyance (Count III) for alleged cash transfers by Ashley Energy to Mr. Miller and Miller Wells, PLLC at the direction of Mr. Miller. (Second Amended Complaint, ¶¶ 86-94). The Second Amended Complaint further asserts a claim against Ashley Energy for a constructive trust (Count IV and Count VIII) for the amounts Ashley Energy allegedly transferred to Mr. Miller and Miller Wells, PLLC but that plaintiffs claim should have been transferred to them. The plaintiffs also sought to pierce the corporate veil of Ashley Energy (Count V) to make Mr. Miller directly liable. The Second Amended Complaint further asserted a claim against Ashley Energy for tortious interference (Count IX) involving a PACE Funding Application. Plaintiffs also asserted various claims against Mr. Miller, Power Investments, and Miller Wells, PLLC, including breach of contract for the alleged failure to perform under the Ashley Energy Sale agreement.

We understand all defendants counterclaimed against all plaintiffs. We also understand the Court dismissed the breach of contract and equitable estoppel claims against Ashley Energy (Counts I and II) as a sanction for discovery breaches by Davis & Garvin. The Court also granted the defendants summary judgment on all counts except breach of contract claims against Power Investments and for a constructive trust against Ashley Energy (Count VIII), which the Court described as an "associated remedy" for the surviving breach of contract claims against Power Investments.

Armstrong Teasdale is counsel for Ashley Energy, Mr. Miller, Power Investments, and Miller Wells, PLLC in the SLEC Lawsuit. We have seen no Board resolution or meeting minutes

---

[1] Power Investments filed a lawsuit against SL EC, LLC and Michael Becker in Kentucky. The case eventually consolidated with the pending SLEC Lawsuit.

Ashley Energy, LLC
Board of Directors
February 17, 2022
Page 3

regarding retention of Armstrong Teasdale or its continued representation of Ashley Energy.[2] We also have seen no written informed waiver of conflict of interest regarding the SLEC Lawsuit.

### *The Loan Closing*

On January 3, 2018, Ashley Energy engaged Armstrong Teasdale to represent it in a loan closing with Regions Bank. While we have a copy of the engagement letter, our version is not signed. We understand that engagement ended in February 2018.[3]

### *The Membership Lawsuit*

On August 16, 2021, Power Investments filed a lawsuit against Cardinals Preferred (4:21-cv-01022) (the "Membership Lawsuit") alleging it has exercised its right to call and purchase Cardinals Preferred's membership units of Ashley Energy. Power Investments further alleged Cardinals Preferred refused to acknowledge the call and attempted to convert its units to a different class to prevent the sale. Power Investments asserted counts for declaratory relief, specific performance, and breach of contract and covenant of good faith and fair dealing.

Power Investments obtained a TRO on August 20, 2021 enjoining Cardinals Preferred from (1) exercising or otherwise advancing or acting upon any purported conversion of its Preferred Units to Class A Common Units and (2) taking or attempting to take action that would frustrate, nullify, prevent, subvert, interfere with, or undermine the consummation of Power's August 9, 2021 Call. By consent, the parties extended the order through resolution of the case. Cardinals Preferred filed a counterclaim against Power Investments for declaratory relief, specific performance, breach of contract and the covenant of good faith and fair dealing.

On December 20, 2021, Preferred Cardinals filed for a TRO against Power Investments accusing Mr. Miller of exceeding his authority regarding the Regions loan agreement and failing to cooperate regarding our retention. The Court denied the TRO.

We understand Power Investments noticed Mr. Dupont and Mr. Disque for depositions, which were scheduled but postponed consistent with our suggestion. On January 28, 2022, Power Investments filed a motion seeking sanctions against Cardinals Preferred related to the depositions. We also understand Cardinals Preferred served a subpoena on Ashley Energy

---

[2] Notably, some meeting minutes of the Board of Directors were provided to us. Most of these notes are handwritten and thus, difficult to read. They are also very cryptic and the content of them is difficult to understand. There does appear to be references to the SLEC Lawsuit and "AT" in some minutes, but that is all that can be understood from them.

[3] We note this representation, but do not discuss it in our analysis because the rules relating to a concurrent conflict of interest are more exacting than the rules relating to a former client.

Ashley Energy, LLC
Board of Directors
February 17, 2022
Page 4

requesting the production of documents, which Ashley Energy did not produce. Cardinals Preferred also served a subpoena upon Ashley Energy's accountant. Mr. Dupont and Mr. Disque agreed to waive Ashley Energy's accountant privilege, but Mr. Miller did not.

Armstrong Teasdale is counsel of record for Power Investments. There has been discussion with the Court relating to Armstrong Teasdale's representation but no motion to disqualify has been filed.

## Analysis

### *SLEC Lawsuit*

The allegations in the SLEC Lawsuit involve claims Mr. Miller made misrepresentations relating to the purchase of Ashley Energy and misappropriated Ashley Energy's assets to pay himself and his law firm rather than SL EC, LLC.[4] Through the surviving constructive trust claim, Ashley Energy faces potential liability if it is found Power Investments failed to perform under the Ashley Energy Sale agreement. These allegations and claims present potential adversarial positions between Ashley Energy and Mr. Miller/Power Investments because Ashley Energy may wish to defend itself from such claims in a manner that is not consistent with Mr. Miller/Power Investments' interests. Armstrong Teasdale represents both Ashley Energy and Mr. Miller/Power Investments in the SLEC Lawsuit.

Missouri Rule of Professional Conduct 4-1.13(e)[5] allows for representation of both an organization, such as Ashley Energy, and its directors, officers, and members, such as Mr. Miller/Power Investments. However, in doing so an attorney is subject to the provisions of Rule 4-1.7.  Rule 4-1.7(a) provides a concurrent conflict of interest exists if: (1) "the representation of one client will be directly adverse to another client, or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [.]" We do not address application of subsection (1) because subsection (2) could apply.

Armstrong Teasdale owed(s) obligations to advise Ashely Energy of its rights and defenses independent of consideration for Mr. Miller/Power Investment's position, which may or may not include taking a position adverse to Mr. Miller/Power Investment. Fulfilling these obligations could be difficult, if not impossible, due to Armstrong Teasdale's dual representation

---

[4] We restate these allegations here, not to imply they are accurate, but to note they have been made.

[5] We conclude Missouri's Rules of Professional Conduct are applicable because Armstrong Teasdale's representation is based out of Missouri (its relevant lawyers are officed in Missouri), the two lawsuits at issue are pending in a Federal District Court sitting in Missouri, and Ashley Energy is a Missouri legal entity.

Ashley Energy, LLC
Board of Directors
February 17, 2022
Page 5

of Ashley Energy and Mr. Miller/Power Investments and its ongoing obligations to Mr. Miller/Power Investments.

There are serious concerns regarding the attorney-client privilege between Ashley Energy and Armstrong Teasdale and whether that could be deemed waived as to Mr. Miller (in his individual capacity) and Power Investments due to the common representation. Moreover, Rule 4-1.8(g) would prohibit Armstrong Teasdale from participating in an aggregate settlement involving both Ashley Energy and Mr. Miller/Power Investments unless there was first informed consent in writing by both Ashley Energy and Mr. Miller/Power Investments.

If after appropriate legal consultation, Ashley Energy chose to forego an adverse position to Mr. Miller/Power Investments and keep their defenses and claims aligned, the conflict (or potential conflict) could be conceivably waived under Rule 4.1-7(b). However, this Rule requires such a waiver be (1) informed (i.e., the lawyer "communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct" per Rule 4-1.0(e)), (2) in writing, and (3) made by each client (i.e., Ashley Energy and Mr. Miller/Power Investments). *See* Rule 4-1.7(b)(4). Because Mr. Miller is the other impacted client, Rule 4-1.13(e) requires a waiver to be made on behalf of Ashley Energy by someone other than Mr. Miller.

To date we have seen no indication Armstrong Teasdale advised Ashley Energy of its rights and defenses independent of Mr. Miller/Power Investments' position. We likewise have not seen evidence of written informed consent by Ashley Energy to the dual representation.[6] The continued representation of Ashley Energy by Armstrong Teasdale after unknown updates to the Board of Directors does not constitute the necessary informed consent in writing. The fact that Armstrong Teasdale has represented all four defendants in the SLEC Lawsuit since its filing also does not equate to informed consent in writing.

To move forward with its representation of Ashley Energy in the SLEC Lawsuit, Armstrong Teasdale would need an informed waiver in writing and signed by all relevant parties, including by someone other than Mr. Miller on behalf of Ashley Energy. If this cannot be obtained, then Armstrong Teasdale should withdraw from its representation of Ashley Energy.

## *Membership Lawsuit*

While continuing to represent Ashley Energy in the SLEC Lawsuit, Armstrong Teasdale now represents Power Investments in the Membership Lawsuit against Cardinals Preferred regarding ownership and governance of Ashley Energy. Important to our analysis is that the

---

[6] There has been reference by Armstrong Teasdale to an "informed consent," but we have not been provided with such a document despite numerous requests. If such a document in fact exists, we would like to see a copy.

Ashley Energy, LLC
Board of Directors
February 17, 2022
Page 6

parties in the Membership Lawsuit have engaged in discovery that directly involves Ashley Energy and will likely continue to do so throughout the pendency of the Lawsuit.

We appreciate Armstrong Teasdale's position that there is no conflict because the involved parties do not overlap, meaning in the Membership Lawsuit, Cardinals Preferred is adverse to Power Investments and Armstrong Teasdale claims it has never represented Cardinals Preferred. Armstrong Teasdale also correctly points out Rule 4-1.13(e) provides its representation of Ashley Energy in the SLEC Lawsuit does not include representation of Cardinals Preferred as an owner of Ashley Energy. *See also Terre Du Lac Property Owners' Ass'n, Inc. v. Shrum,* 661 S.W.2d 45, 48 (Mo. App. E.D. 1983) ("Representing a closely held corporation does not inherently mean that counsel is acting as counsel to the individual director-shareholders.") However, because the Membership Lawsuit involves the ownership and governance of Ashley Energy, it necessarily implicates Ashley Energy, and as a result, the analysis must go deeper.

A concurrent conflict would exist if a "direct adversity" exists between Ashley Energy and Power Investments <u>or</u> representation of one "materially limits" representation of another. We will forego analysis of a "direct adversity" between Ashley Energy and Power Investment because the "materially limited" option is clearer and more consequential here.

As comment [1] to Rule 4-1.7 indicates, "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client." Further, Rule 4-1.6 requires confidentiality of information relating to the representation of a client. ABA Formal Ethics Opinion No. 91-361 discusses a lawyer's dual representation of an organization and a member of the organization, such as is the situation here, and advises such a situation could compromise all three of those essential elements to the lawyer-client relationship and stresses the importance of reflection to ensure all three elements remain intact so there is no concurrent conflict. ("[T]he difficulties inherent in [dual] representation are close to the surface for a lawyer who advises both a partnership and one or more of its partners…. The lawyer should also consider whether dual representation may compromise the lawyer's duties of fidelity, candor and independent professional judgment either to the partnership or to the individual partner clients. Finally, the lawyer should assess whether the dual representation may impair the lawyer's ability to maintain the confidentiality of communications from an individual partner or made on behalf of the partnership.")[7]

_____

[7] ABA Formal Opinion 91-361 addresses partnerships and how they fit into the model ethical rules. The Opinion concluded, "[t]here is no logical reason to distinguish partnerships from corporations or other legal entities in determining the client a lawyer represents." Thus, the Committee's reasoning and analysis in the Opinion is likewise applicable to a legal entity, such as Ashley Energy and its members.

Please also note, while the Opinion addressed the Model Rules of Professional Conduct, Missouri adopted rules nearly identical to the Model Rules.

Ashley Energy, LLC
Board of Directors
February 17, 2022
Page 7

Here, to determine if Armstrong Teasdale's dual representation is "materially limited" we question all three essential elements to the relationship between Armstrong Teasdale and Ashley Energy. While Ashley Energy is the client in the SLEC Lawsuit, the Board of Directors of Ashley Energy acts on behalf of Ashley Energy. *See* Rule 4-1.13(a) ("A lawyer…retained by an organization represents the organization ***acting through its duly authorized constituents***.") (Emphasis added). It is understandable how two members of the Board of Directors question Armstrong Teasdale's loyalty and independent professional judgment as to Ashley Energy when Armstrong Teasdale also represents Mr. Miller/Power Investments in the SLEC Lawsuit (in which as discussed above, their interests may not be aligned and there may be no informed waiver of conflict) as well as Power Investments in the Membership Lawsuit—a lawsuit requiring Armstrong Teasdale to advocate directly against Cardinals Preferred, which elected, in whole or in part, the two other members of the Board of Directors. The Membership Lawsuit also directly involves the ownership and governance of Ashley Energy.

In fact, when discussing "dual representation" of the organization and a member of the organization, ABA Formal Ethics Opinion 91-361 states, "it is also clear that, under Rule 1.7(a), the partnership's attorney ***could not, without the informed consent of both the partnership and all adverse partners, represent the interests of one partner against other partners with respect to a matter involving the partnership's affairs***."[8] (Emphasis added). The Membership Lawsuit clearly involves Ashley Energy's "affairs." *See also e.g., Deerin v. Ocean Rich Foods,* LLC 158 A.D.3d 603, 608, 71 NY3d 123 (2018) ("One who has served as attorney for a corporation may not represent an individual shareholder in a case in which his interests are adverse to other shareholders"); *Morris v. Morris,* 763 NYS2d 622 (2003) ("One who has served as attorney for a corporation may not represent an individual shareholder in a case in which his interests are adverse to other shareholders"). Moreover, to date, we have not seen a written informed consent signed by Ashley Energy and the adverse Board of Directors members to support Armstrong Teasdale's representation in the Membership Lawsuit.

The duties of loyalty and confidentiality are also put directly at issue by the discovery in the Membership Lawsuit, which has thus far directly involved Ashley Energy and will likely continue to do so. We understand to date this discovery has included a subpoena to Ashley Energy as well as Armstrong Teasdale proposing to depose two of the Ashley Energy Board Members. Those two individuals have likely been called for deposition in their capacity as someone associated with Cardinals Preferred, rather than, or at least in addition to, their capacity as Board of Directors members.

---

[8] The Opinion goes on to state, "[h]owever, a lawyer undertaking to represent a partnership with respect to a particular matter does not thereby enter into a lawyer-client relationship with each member of the partnership, so as to be barred, for example, by Rule 1.7(a) from representing another client on a matter adverse to one of the partners but unrelated to the partnership affairs."

Ashley Energy, LLC
Board of Directors
February 17, 2022
Page 8

ABA Formal Ethics Opinion 91-361 states, "simultaneous representations of partnerships and of individual partners, even on basically unrelated matters, may result in the lawyer possessing confidences of one client that may not be revealed to another, a circumstance which could effectively prevent continued representation of the other client. (Citations omitted). In such a case the lawyer may have to withdraw from one or both of the representations." Moreover, ABA Formal Ethics Opinion 92-367 concludes "[a] lawyer who in the course of representing a client examines another client as an adverse witness in a matter unrelated to the lawyer's representation of the other client, or conducts third party discovery of the client in such a matter, *will likely face a conflict that is disqualifying in the absence of appropriate client consent*." (Emphasis added). While we appreciate Board of Directors members elected by Cardinals Preferred are not directly Armstrong Teasdale's client (Ashley Energy is), we also appreciate Ashley Energy only acts through its Board of Directors.

Therefore, under the Rules, a conflict is created when Armstrong Teasdale seeks to depose individuals who are members of Ashley Energy's Board of Directors or by participating in discovery otherwise directly impacting Ashley Energy.  The information gained as counsel for Ashley Energy will necessarily impact the questioning by Armstrong Teasdale in these depositions, even if done so unintentionally. We also question whether Power Investment's own discovery plan or response to Cardinal Preferred's discovery plan is not impacted by Armstrong Teasdale's dual representation.

Overall, we conclude there is a conflict of interest for Armstrong Teasdale to represent Ashley Energy in the SLEC Lawsuit as well as Power Investments in the Membership Lawsuit. We also conclude this conflict is not waivable because we question how Armstrong Teasdale could provide "competent and diligent representation to each affected client," as is required by Rule 4-1.7(b)(1) given the issues raised above.

Please let us know if you have any questions following review of this correspondence.

Very truly yours,

Andrew C. Ruben

ACR:kls

CC:   Mr. Andrew Kasnetz
      Ms. Katrina Smeltzer

16659080.1