# EXHIBIT I

Thomas B. Weaver

Direct  T 314.342.8021  F 314.612.2302

tweaver@atllp.com

February 10, 2022

Katrina L. Smeltzer
Sandberg Phoenix
4600 Madison Avenue Suite 1000
Kansas City, MO 64112

RE:  Ashley Energy—AT Conflict Analysis

Dear Ms. Smeltzer,

I am writing in response to your letter dated February 2, 2022, requesting additional information from Armstrong Teasdale (AT) in response to Cardinals' claim of an alleged conflict of interest in AT's representation of Ashley Energy and other defendants in the SLEC litigation and its representation of Power in the pending litigation with Cardinals.  I am also responding to Michael Downey's letter of February 1 which was forwarded to me last week.  As we have stated previously, and to use Mr. Downey's term, there is no disqualifying conflict of interest that precludes AT from representing its clients in either of those lawsuits.

Regarding AT's representation of four parties in the SLEC litigation, your February 2 letter requested information regarding engagement letters and conflict waivers.  You have previously been given the relevant engagement letter between Ashley and AT, as well as the minutes of the board meeting at which Ashley's board, including Mr. Dupont and Mr. Disque, authorized AT to jointly represent the four parties in the SLEC lawsuit.  Those are the documents relevant to AT's retention as counsel for the four parties in the SLEC litigation.  Please let me know if you would like another copy of those documents.  Regarding any conflict waivers related to that representation, Ashley, Cardinals (though its representatives Mr. Dupont and Mr. Disque) and Power all provided informed consent to the joint representation of all defendants by AT, even though there was no actual or perceived disqualifying conflict of interest in that representation.

In addition, the SLEC lawsuit has been pending since 2017, and AT's joint representation of the four defendants has been known to the board and Cardinals since that time. Moreover, Dentons has been aware of separately represented Cardinals and Arena in connection with that litigation throughout its pendency and has at times participated in the litigation on behalf of Cardinals and Arena.  Before Cardinals and Arena raised the conflict issue four years into that litigation, none of the four parties in the SLEC lawsuit raised any concerns about an actual or potential conflict.

With regard to billing, AT's invoices for its work on the SLEC litigation have been submitted to Ashley for payment.  Amounts being paid for legal services would have appeared in Ashley's quarterly financial

February 10, 2022
Page 2

statements that were circulated to the board, as well as in the monthly financial statements provided to Arena and Cardinals. The board minutes also reflect that those expenses were discussed at board meetings.

To date, no one has explained how AT had any disqualifying conflict of interest in representing the four parties in the SLEC lawsuit. To the extent any potential for a conflict ever existed, in the 4 years that litigation has been pending no adversity among those parties or disqualifying conflict of interest has ever existed, and no disqualifying conflict exists between any of the remaining defendants regarding any of the remaining claims. Mr. Downey identifies none in his February 1 letter.

Mr. Downey instead relies on the language of 4-1.7 identifying a conflict when there is a significant risk that representation of one or more clients will be materially limited by responsibilities owed to another client. Mr. Downey states that a material limitation may occur when the attorney does not zealously represent one client because of responsibilities owed to another client. Mr. Downey then suggests but abandons an argument that AT may have been less than zealous in its representation of Ashley because of either its representation of other parties in the SLEC lawsuit or its representation of Power in the breach of contract litigation with Cardinals. Mr. Downey's abandonment of the lack-of zeal argument is understandable because there is nothing to support an assertion that AT was less than zealous in representing Ashley in the SLEC litigation, or that AT's representation of Ashley while it was also representing Power was in any way adverse or harmful to Ashley. To the contrary, the SLEC court's dismissal or entry of summary judgment on every substantive claim against Ashley proves that AT has zealously represented Ashley in that litigation.

As one of the attorneys of record for SLEC directly adverse to Ashley in that lawsuit, Mr. Downey has personally experienced the effect of AT's zealous representation of Ashley and the other parties in the SLEC litigation. Considering that AT has been consistently successful in winning issue after issue against Mr. Downey's clients in the SLEC litigation, including a sanctions dismissal of some of his clients' claims, it is clear why Mr. Downey would want AT out of that lawsuit. What is less clear is why anyone would give any weight to Mr. Downey's opinion about whether AT can represent Ashley in the SLEC lawsuit when he is counsel of record for SLEC in that lawsuit.

Mr. Downey then argues that AT has a disqualifying conflict because of how it has handled information regarding the SLEC lawsuit, claiming that AT has improperly withheld information from certain directors and shareholder Cardinals. But in attempting to conjure a material limitation in AT's representation of Ashley, Mr. Downey has his facts wrong. The record does not support Mr. Downey's assumption that AT was improperly hiding information from Mr. Dupont and Mr. Disque. Attorneys representing a corporation in litigation commonly work with corporate officers, not board members, in managing the litigation. Consistent with this practice and with the operating agreement, AT regularly reported to Mason Miller, CEO and President of Ashley, regarding the status of the SLEC litigation. The company's board minutes prove that Mr. Miller regularly reported to other board members about that lawsuit as needed for any informed decisions regarding that litigation. Mr. Downey also incorrectly states that Mr. Miller is the only member of Power. He is one of four members of Power.

Although the SLEC lawsuit began in 2017, the first time any Ashley board member other than Mr. Miller requested AT to provide any information regarding the status of or files relevant to that lawsuit was in October of 2021. In the response to the 2021 request for files, AT stated that it would provide copies of the appropriate portions of the files to the requesting directors after they confirmed that they would not be using those files for any improper purpose that might jeopardize the attorney-client privilege that attached to those files or otherwise be adverse to Ashley's interests. In making this request, AT was properly

February 10, 2022
Page 3

protecting the interests of its client Ashley, as it was required to do when those interests were potentially at odds with the personal interests of the requesting directors and shareholder. Mr. Dupont and Mr. Disque failed to provide the requested confirmation, to explain why the requested confirmation was improper, or provide any response to AT's request. Mr. Miller separately made a similar offer 4 months ago to Mr. Dupont and Mr. Disque but also did not receive a response.

AT was not directed by Mr. Miller or Power about what client files AT would share with the board members who requested files in October of 2021. In responding to the request for information, AT was guided by its concerns about preserving the attorney-client privilege with regard to pending litigation against SLEC and the recognized limitations on a corporation's constituents' access to confidential information when that information might be used for an improper purpose or adverse to the interests of the client corporation.

The fact that Cardinal hired SLEC's lawyer as part of its attempt to disqualify AT after AT has successfully defeated every one of SLEC's substantive claims against Ashley justifies AT's consideration of how Cardinals and Arena might use the confidential information Mr. Dupont and Mr. Disque requested. Having been retained by Cardinals to offer an opinion about AT's successful representation of Ashley in the SLEC litigation, Mr. Downey now has provided a letter in which he refers to and apparently relies on confidential internal communications among Ashley board members, including internal communications about settlement discussions in the SLEC litigation. However, that information was communicated to Mr. Downey, his reliance on it to force AT to withdraw from the lawsuit in which Mr. Downey represents an adverse party validates AT's concerns about turning over its files to Mr. Dupont and Mr. Disque without confirmation by them that the information would not be improperly used. Using that information in an attempt to disqualify or replace counsel who has successfully represented Ashley in the SLEC litigation is not in Ashley's interests.

Mr. Downey complains that AT has not sought direction from Mr. Dupont and Mr. Disque about how the litigation should be prosecuted or resolved. Mr. Dupont and Mr. Disque have never offered or asked to offer any direction or management of the litigation, including the upcoming trial in April. And since Mr. Dupont and Mr. Disque first requested information in October of 2021, there have been no substantive claims pending against Ashley.

Mr. Downey also cites no examples or otherwise explains how the management of the litigation, before or after October of 2021, has been harmful to Ashley or its directors or shareholders, or how the litigation could or should have been managed differently. Neither Mr. Dupont, Mr. Disque, nor Cardinals has suggested, much less shown, how CEO and President Miller's management of the litigation was improper or harmful to Ashley, its directors, or shareholders.

Mr. Downey also complains that AT has not communicated with the entire board about the litigation even though Mr. Dupont and Mr. Disque have expressed concerns that Mr. Miller has misrepresented the status of the litigation. Again, this assertion is contrary to the facts, and there is no evidence of any disqualifying conflict. Mr. Dupont and Mr. Disque did not request information from AT until October of 2021 by which time the claims against Ashley had been dismissed, little has occurred in the SLEC litigation since October of 2021 except for settlement discussions (which have stalled since Mr. Downey became of aware of internal board discussions), and, in any event, there have been no misrepresentations. Moreover, the status of the case is a matter of public record.

February 10, 2022
Page 4

In addition, even if there were any basis for concluding that 4-1.7 precluded AT from continuing to represent Ashley in the SLEC lawsuit—and there is none—that still would not justify disqualifying AT from representing Power in its lawsuit with Cardinals.  In its email dated January 31, AT has already explained why there is no conflict of interest precluding it from representing Power in its breach of contract dispute with Cardinals.  Mr. Downey, who finds no issue with representing Cardinals, a shareholder in Ashley, at the same time he is suing Ashley on behalf of another client, does not address AT's representation of Power in its lawsuit with Cardinals.   And Reed Smith fails to identify any conflict of interest arising from AT's representation of Power in the lawsuit with Cardinals and AT's representation of Ashley in the SLEC lawsuit.  No one has made any showing that AT's representation of Power in the breach of contract action is adverse to Ashley so as to warrant disqualification.

Based on the above analysis, as well as the reasons stated my email of January 31, there is no basis for concluding that AT's representation of Ashley in the SLEC litigation and its representation of Power in its contract litigation with Cardinals created a disqualifying conflict of interests requiring AT to withdraw from either of those representations.

Finally, Cardinals should not be permitted to stall the lawsuit with Power while Cardinals struggles to find some basis for disqualifying AT in both that and the SLEC lawsuit.  Since at least October of 2021, Cardinals has been aware of the circumstances on which it bases its claim that AT should be disqualified in the Power/Cardinals contract litigation—that AT cannot represent one shareholder in a dispute with another shareholder while also representing the corporation in an unrelated lawsuit.  If Cardinals thinks that AT has a conflict, then it should file a motion to disqualify and stop attempting to use an alleged conflicts analysis to delay resolution of its dispute with Power.  As Mr. Downey is no doubt aware, it is improper to attempt to use allegations of a conflict of interest for strategic purposes in litigation.

Let me know if you need any additional information.  Thank you.

Very truly yours,

Thomas B. Weaver

TBW:sf