IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| POWER INVESTMENTS, LLC, ) | |
| ) | |
|     Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-01022-SEP |
| ) | |
| CARDINALS PREFERRED, LLC, ) | |
| ) | |
|     Defendant/Counterclaim Plaintiff. ) | |

**PLAINTIFF POWER INVESTMENTS, LLC'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Power Investments, LLC ("Power"), for its Motion for Summary Judgment against Defendant Cardinals Preferred, LLC ("Cardinals") pursuant to Federal Rule of Civil Procedure 56, states as follows:

1. This case is an ownership dispute between the investors in Ashley Energy LLC, which operates an energy plant in downtown St. Louis. Plaintiff is Power Investments, LLC, an entity managed by Mason Miller. Mr. Miller has been Ashley's CEO for the past five years. Defendant is Cardinals Preferred, LLC, an entity created by the professional investment company Arena Investors L.P., a New York hedge fund.

2. On August 9, 2017, Power and Cardinals agreed to acquire the Ashley plant and executed the Operating Agreement at issue in this case. Cardinals invested $999,222 and received "Preferred Units" in Ashley. (The Preferred Units, plus a return on investment, would be paid out first in a liquidation.) Power invested $850,988 and received "Common Units" in Ashley, as well as a 20% "promote," which would give Power an additional 20% of the equity in certain circumstances, such as a profitable sale.

1

3. In negotiations, Cardinals sought the right to require Power to buy out Cardinals at a pre-determined price at any time on or after the fourth anniversary of the acquisition of the plant. Power, in turn, sought the right to require Cardinals to sell to Power on identical terms. These reciprocal put/call rights were memorialized in § 10.5 of the Operating Agreement.

4. On August 9, 2021, Power provided the notice required by § 10.5 to exercise its call right to purchase Cardinals' equity. Power also notified Cardinals that the call would be consummated for approximately $1.6 million, which was an amount equal to Cardinals' initial investment plus 12%. In response (and days later), Cardinals purported to "moot" Power's call right by attempting to convert its units to common shares under § 4.1 of the Agreement.

5. Section 10.5 has certain critical language that demonstrates that Power's call of Cardinals' equity was effective as of the date notice was provided and thus could not thereafter be "mooted" by Cardinals.

6. *First*, § 10.5 states that Power has the "right to purchase" Cardinals' interest; this right is unqualified and without limitations.

7. *Second*, § 10.5 states that upon notice Power "has exercised" the right to acquire Cardinals' interest. This use of the present perfect tense in "has exercised" means that the exercise has happened, and that Cardinals cannot undo the exercise *after* notice is provided.

8. *Third*, § 10.5 states that upon notice, the call right "shall be consummated." "Shall" is a mandatory term, meaning that the consummation of the call cannot be avoided post-exercise by Cardinals' purported conversion.

9. Thus, Power's call was effective upon notice, with only the closing of the transaction to take place later.

10. Moreover, Cardinals' claim that it can "moot" Power's call *even after Power has exercised that right* is not supported by the text of § 4.1.

11. Section 10.5 does *not* state that Power's unequivocal call right is "subject to" Cardinals' conversion right. Nor does § 4.1 state that a notice of conversion must be recognized after the exercise of the call, even though such a term is standard in agreements where a party wants to preserve that right.

12. Indeed, long-settled law recognizes that when a contract grants a purchase option, the ownership of the shares transfers upon notice, even if the transaction closes later.

13. The negotiations of the parties further demonstrate that Power was granted a call right that was the equivalent of Cardinals' put right. This bargained-for equivalency would be defeated if, as Cardinals contends, it can "moot" Power's call right after it is exercised because Power has no reciprocal right to "moot" Cardinals' put option.

14. Cardinals' counterclaims against Power are centrally premised on the incorrect notion that Cardinals could convert the Preferred Units following Power's call exercise, and thus these counterclaims fail as a matter of law for the reasons provided above.

15. Cardinals' counterclaims are also based on meritless allegations that Power and its manager, Mason Miller, delayed Ashley from distributing "$4 million in excess capital" for pretextual reasons in order to "usurp [a] distribution owed to Cardinals," hired an auditor for Ashley that Mr. Miller "believed he could influence" in order to "further his 'buy out' scheme," and "artificially" lowered Ashley's value. These allegations have no evidentiary support.

16. Summary judgment is proper when the pleadings and other record materials show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment

is appropriate in a contract case where the language of the contract is clear and unambiguous. *Deal v. Consumer Programs, Inc.*, 470 F.3d 1225, 1229 (8th Cir. 2006). When a contract uses plain and unequivocal language, it must be enforced as-written. *Id*. at 1230. The Court may grant summary judgment on a nonmovant's claim where the nonmovant has no evidence to support its claim. *See Collins-Myers v. Triangle Trucking, Inc.*, 2020 WL 1455743, at *3 (E.D. Mo. Mar. 25, 2020).

17. Power has carried its burden of showing that there is no genuine issue of material fact, that the Agreement is unambiguous, that the Agreement supports its position, and that the evidence overwhelmingly supports its position.

18. Count I of Power's Complaint seeks declaratory relief with respect its rights under the Agreement and Cardinals' breach of this Agreement. In particular, Power seeks a declaration that Cardinals has breached the Agreement and must consummate Power's call by selling Ashley's Preferred Units to Power at the purchase price listed in Power's call notice. Count II seeks specific performance of the Agreement, in particular an order that Cardinals consummate Power's call by selling the Preferred Units to Power at the purchase price listed in Power's call notice. Count III asserts claims for breach of contract and breach of the covenant of good faith and fair dealing based on Cardinals' refusal to recognize and consummate Power's call. Power is entitled to summary judgment on all of these Counts because Cardinals has in fact breached the Agreement by refusing to recognize Power's call, and Cardinals is obligated to sell the Preferred Units to Power.

19. Count I of Cardinals' Counterclaims seeks declaratory judgment, in particular a judgment that Cardinals' purported conversion is valid, that Power's call is moot, and that Power has acted in bad faith to artificially lower Ashley's value. Count II seeks specific performance, in particular an order that Power accept Cardinals' purported conversion. Count III asserts a claim

4

for breach of contract based on Power's refusal to recognize Cardinals' purported conversion. Count IV asserts a claim for breach of the implied covenant of good faith and fair dealing based on Power's alleged attempts to artificially lower Ashley's value, alleged delay of a distribution to Cardinals, and refusal to recognize Cardinals' purported conversion.  Power is entitled to summary judgment on these Counts because Power's call is effective and must be consummated while Cardinals' purported conversion is not, and because there is no evidence to support an allegation that Power artificially lowered Ashley's value or delayed a distribution.

WHEREFORE, for the reasons stated herein and in the Memorandum in Support and Statement of Uncontroverted Material Facts filed contemporaneously herewith, Power respectfully requests that the Court grant Power summary judgment, enter a declaration that Cardinals has breached the Agreement and must sell Ashley's Preferred Units to Power, order Cardinals to sell Ashley's 999,222 Preferred Units to Power at the price listed in Power's call notice, dismiss Cardinals' counterclaims, and grant such other and further relief as the Court deems just and proper.

Dated: July 8, 2022                              Respectfully submitted,

                                                  **DOWD BENNETT LLP**

*/s/* James F. Bennett
James F. Bennett,        46826 (MO)
Edward L. Dowd, Jr.,     28785 (MO)
Jeffrey R. Hoops,        69813 (MO)
Milton P. Wilkins,       65278 (MO)
7733 Forsyth Boulevard, Suite 1900
St. Louis, MO 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
jbennett@dowdbennett.com
edowd@dowdbennett.com
jhoops@dowdbennett.com
mwilkins@dowdbennett.com

*Attorneys for Plaintiff / Counterclaim
Defendant Power Investments, LLC*

### **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 8, 2022, the foregoing and all attachments were electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the same to all counsel of record.

*/s/* James F. Bennett

6