**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **POWER INVESTMENTS, LLC,** | ) | |
| | ) | |
| **Plaintiff/Counterclaim Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:21-cv-01022-SEP** |
| | ) | |
| **CARDINALS PREFERRED, LLC,** | ) | |
| | ) | |
| **Defendant/Counterclaim Plaintiff.** | ) | |

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN
SUPPORT OF PLAINTIFF POWER INVESTMENTS, LLC'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Power Investments, LLC submits this Statement of Uncontroverted Material Facts in support of its Motion for Summary Judgment and states as follows:

**<u>Introduction</u>**

1.      This case is an ownership dispute between the investors in Ashley Energy LLC ("Ashley" or the "Company").

2.      Ashley is an energy plant in downtown St. Louis that provides heat to much of the central business district, including this Courthouse. ████████████████████

3.      Plaintiff is Power Investments, LLC ("Power"), an entity managed by Mason Miller.  **Ex. 49** (Declaration of Mason L. Miller ¶ 3).

4.      Mr. Miller has been Ashley's CEO for the past five years.  *Id*.

5.      Defendant is Cardinals Preferred, LLC ("Cardinals"), an entity created by the professional investment company Arena Investors L.P. ("Arena"). ████████████████

████████████████████████████████

███  ████████████████████████████████████████████

████████████

███  ████████████████████████████████████████████

████████████████████

8.      On August 9, 2017, Power and Cardinals agreed to acquire the Ashley plant, executing at that time the Operating Agreement ("Agreement") at issue in this case.  **Ex. 1** (Agreement).

9.      Cardinals invested $999,222 and received "Preferred Units" in Ashley.  *Id*. at Schedule I.

10.     The Preferred Units, plus a return on investment, would be paid out first in the event of a liquidation.  *Id.* ¶ 5.1(b)

11.     Power invested $850,988 and received "Common Units" in Ashley, as well as a 20% "promote," which would give Power an additional 20% of the equity in the event certain conditions were met, such as a profitable sale.  *Id*. ¶ 5.1(b), Schedule I.

12.     In negotiations, Cardinals sought the right to require Power to buy out Cardinals at a pre-determined price at any time on or after the fourth anniversary of the acquisition of the plant. Miller Decl. ¶ 12.

13.     Power, in turn, sought the right to require Cardinals to sell to Power on identical terms.  *Id*.

14.     These reciprocal put/call rights were memorialized in §10.5 of the Operating Agreement.  **Ex. 1**.

15.     On August 9, 2021, Power provided the notice required by §10.5 to exercise its call right to purchase Cardinals' equity.  **Ex. 2** (Call Notice).

16.     Power also notified Cardinals that the call would be consummated at the price of approximately $1.6 million, which was an amount equal to Cardinals' initial investment plus 12%. *See* **Exs. 1-2**.

17.     In response (and days later), Cardinals purported to "moot" Power's right to purchase that equity by attempting to convert its units to common shares under § 4.1 of the Agreement.  **Exs. 3-4** (Letters).

## The Parties

18.     Power Investments, LLC is a member of Ashley Energy, LLC.  **Ex. 1** (Agreement).

19.     Power is managed by Mason Miller, an individual.  Miller Decl. ¶ 3.  Power's business has been to purchase and own an interest in the Company, Ashley Energy, LLC, that owns the Ashley Power Plant.  *Id.*

20.     Cardinals Preferred, LLC is a member of Ashley Energy, LLC.  *Id.* ¶ 6.

███ ███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███ ███████████████████████████████████████████████████████

████████████████████████████████████

23.     Arena created Defendant Cardinals to accomplish its partial ownership and management of the Ashley Power Plant.  Miller Decl. ¶ 8.

## The Ashley Power Plant

███ ███████████████████████████████████████████████████████

████████████████████████████████████████████ ████████████████

███████████████████



### The Operating Agreement

29.     On August 9, 2017, Power and Cardinals executed the Ashley Energy LLC Amended and Restated Limited Liability Company Agreement (the "Agreement"). **Ex. 1**.

30.     Under the Agreement, Power is the sole owner of the Company's Class A Common Units ("Common Units"). *Id.* at Schedule I.

31.     Pursuant to the Agreement, Power purchased 850,988 Class A Common Units. *Id.*

32.     The Agreement made Cardinals the sole owner of the Company's Preferred Units. *Id.*

33.     Pursuant to the Agreement, Cardinals purchased 999,222 Preferred Units. *Id.*

34.     Section 10.5 of the Agreement provides the parties with put and call options. *Id.* § 10.5.

35.     Section 10.5(b) of the Agreement provides: "Call Option. At any time on or following August 9, 2021, a majority of Class A Common Units shall have the right to purchase a portion or all of the Preferred Units pursuant to this Section 10.5(b) (the 'Call')." *Id.*

36.     Section 10.5(b) of the Agreement further provides: "The Call shall be consummated within the same time period and at the same price described in Section 10.5(a) above." *Id.*

37.     Section 10.5(a)(ii) of the Agreement provides: "The Put shall be consummated within six (6) months after the delivery of notice that the Preferred Unitholder has exercised the Put (such date of consummation, the 'Put Closing')." *Id.* § 10.5(a).

38.     Section 10.5(a)(i) of the Agreement provides:

The price for Preferred Units Sold to the LLC in accordance with this Section 10.5(a) shall be equal to the greater of (x) the sum of (1) the Preferred Unitholder's Unreturned Capital and (2) the Preferred Unitholder's Unpaid Return, in each case as of the date of such redemption or (y) the price of the Preferred Units calculated in accordance with the following formula:

$$E * 11 - D - WC - O$$

E = trailing twelve month EBITDA, as determined by LLC's auditors, measured from the month ending prior to redemption;

D = all secured debt outstanding at the time of redemption;

WC = adjusted working capital, as determined by the LLC's auditors;

O = other material, on-balance sheet LLC obligations, measured for the month ending prior to redemption

*Id.* § 10.5(a) (the formula above is hereinafter the "Formula Calculation").

39.     Section 8.1 of the Agreement is titled "Records and Accounting." *Id.* § 8.1.

40.     Section 8.1 of the Agreement provides: "All matters concerning . . . accounting procedures and determinations shall be determined by the Board, whose determination shall be final and conclusive as to all of the Unitholders absent manifest error." *Id.*

41.     Section 15.12 of the Agreement is titled "Further Action." *Id.* § 15.12.

42.     Section 15.12 of the Agreement provides: "The Parties agree to execute and deliver all documents, provide all information and take or refrain from taking such actions as may be necessary or appropriate to achieve the purposes of this Agreement." *Id.*

43.     Section 15.3 of the Agreement is titled "Remedies." *Id.* § 15.3.

44.     Section 15.3 of the Agreement provides: "The Parties agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of this Agreement and that the LLC and each Unitholder may in its sole discretion apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive relief (without posting a bond or other security) in order to enforce or prevent any violation of the provisions of this Agreement." *Id.*

45.     Section 4.1 of the Agreement is titled "Conversion Right." **Ex. 1** § 4.1.

46.     Section 4.1(a) of the Agreement provides: "Preferred Units shall be convertible at any time or from time to time by a holder of such Preferred Units giving written notice to the LLC of the exercise of conversion rights contemplated by this Article IV (the 'Conversion Rights')." *Id.* §  4.1(a).

47.     Section 4.1(b) of the Agreement provides: "In the event of a liquidation, dissolution or winding up of the LLC, the Conversion Rights shall terminate at the close of business on the last full day preceding the date fixed for the payment of any such amounts distributable on such event to the Preferred Unitholder." *Id.* § 4.1(b).

██  ████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

████████████████████████

49.     Section 5.1 of the Agreement is titled "Distributions." *Id.* § 5.1.

50.     Section 5.1(b) of the Agreement governs distributions that result from a liquidation, dissolution, or winding up of the Company, including liquidations under Article XIII of the Agreement. *Id.* § 5.1(b).

51.     Section 5.1(b) provides that Preferred Unitholders must receive the first such distribution, followed by the Common Unitholders who take "ratably among such holders based upon the number of Common Units held by each such holder immediately prior to such Distribution." *Id.* § 5.1(b)(i)-(ii).

52.     Article XIII of the Agreement is titled "Dissolution and Liquidation." *Id.*, art. XIII.

53.     Article XIII of the Agreement provides that the Board of the Company (or others appointed as liquidators by the Board) must promptly "determine the amounts to be distributed to each Unitholder in accordance with Section 5.1." *Id.* § 13.2(b).

54.     A number of provisions in the Agreement expressly state that they are subject to other provisions, including § 3.1(b) ("Subject to Section 3.1(a) . . . ."), § 5.3(a) ("but otherwise subject to Article X . . . ."), § 6.4(a) ("subject to Section 6.4(c) and 7.5"), § 6.7 ("subject to the same conditions under which it is obligated to . . . under Section 6.7(a)"), § 9.2 ("Subject to Section 2.7(b) . . . ."), § 12.1 ("subject to the provisions of Section 10.5 . . . .").

55.     Section 10.5 does not contain any language stating that it is "subject to" another provision of the Agreement.

## **Power's Call Exercise and Cardinals' Purported Conversion**

56.     On and effective August 9, 2021, Power exercised the § 10.5 Call Option.  **Ex. 2** (August 9, 2021 Notice of Election to Exercise Call Option, or "Call Notice").

57.      On August 9, 2021, Power delivered written notice to Cardinals that Power had exercised its call option and was purchasing of all of the Preferred Units.  *Id.*

58.     Power's call notice was titled, "Election to Exercise Call Option," it stated that Power was "irrevocably electing to exercise the Call with respect to all of the Preferred Units," and it stated Power's intention to work with Cardinals "to effectuate the closing of the Call pursuant to the terms of Section 10.5."  *Id.*

59.     Power' call notice also sought consummation of the call "in a timely manner and . . . as soon as practicable."  *Id.*

60.     Power's call notice also set forth a purchase price calculated under § 10.5; this figure was approximately $1.6 million, the sum of Cardinals' unreturned capital and unpaid return.  **Ex. 2**; Miller Decl. ¶ 18.

61.     The call notice stated this $ 1.6 million figure as the purchase price because it was higher than the figure that would have been obtained using the formula in § 10.5 that was based on Ashley's EBITDA (§ 10.5(a)(i)(y)), which was negative at the time.  *Id.*

62.     Power's call notice also included a calculation under § 10.5's EBITDA-based formula.  **Ex. 2;** Miller Decl. ¶ 18.

64.     This EBITDA-based formula produced a negative number: negative $12,772,807.84. **Ex. 2**; Miller Decl. ¶ 19.

65.     Power's call notice was delivered to Cardinals' office located at 405 Lexington Ave., 59th Floor, New York, NY 10174 via personal delivery, facsimile, and USPS Priority Express mail on August 9, 2021. **Ex. 2**.

66.     On Sunday, August 15, 2021, at 8:15 p.m. EDT, Cardinals sent a letter to Mr. Miller in his capacity as manager of Power. **Ex. 3** (August 15, 2021 letter to Mr. Miller and Power).

67.     That letter notified Power that Cardinals had received Power's notice of call exercise. *Id*.

68.     The letter further purported to reject Power's call exercise on the grounds that Cardinals lacked sufficient information to determine the validity of Power's purchase price. *Id.*

69.     The letter did not explain what information was lacking, nor did it request any additional information. *Id.*

70.     The letter further conveyed that Cardinals had purportedly "elected to convert all of the Preferred Units held by the Preferred Holder into Class A Common Units" pursuant to § 4.1(a) of the Agreement. *Id*.

71.     The letter further conveyed that Cardinals considered Power's call to be "moot" in light of Cardinals' purported conversion of all of the Preferred Units, stating: "[F]ollowing the date of delivery of the Conversion Notice (the same as the date of this notice to you), there are no longer any outstanding Units that are subject to the provisions of Section 10.5(b) of the Operating Agreement. Consequently, the transactions contemplated by the Purported Option Notice are moot as of the date hereof." *Id.*



73.     Also on Sunday, August 15, 2021, at 8:15 p.m. EDT, Cardinals sent a letter to Mr. Miller in his capacity as an Ashley Board member.  **Ex. 4** (August 15, 2021 letter to Mr. Miller and Ashley).

74.     That letter contained the same information as Cardinals' letter to Power.  *Id.*

<u>**The Parties' Contract Negotiations**</u>













**Cardinals' Reaction to Power's Call Exercise**





**Arena's Conversion Rights in Other Contracts**

129.    In July 2019, Arena executed a stock purchase agreement with Biorestorative Therapies, Inc. ("BRTX") that gave Arena conversion rights.  **Ex. 19** (BRTX August 1, 2019 Form 8-K and Securities Purchase Agreement).

130.    The BRTX contract was signed by Arena COO Lawrence Cutler.  *Id*.

131.    The BRTX contract provided that "[e]ach share of Preferred Stock shall be convertible, *at any time and from time to time*."  *Id*. at Ex. C § 6.  The contract further expressly provided that a conversion could moot an exercised call: "[BRTX] covenants and agrees that it will honor all Notices of Conversion tendered from the time of delivery of the Optional Redemption Notice through the date the Optional Redemption Amount is paid in full."  *Id*. at Ex. C § 8.

132.    In December 2021, Arena executed a stock purchase agreement with Charge Enterprises, Inc. that permitted Arena to convert "at any time" and expressly provided that Arena could convert following a call exercise.  **Ex. 20** (Charge Enterprises, Inc. December 23, 2021 Form 8-K and Securities Purchase Agreement) at Ex. 3.1 § 6(a) ("Each share of Preferred Stock shall be convertible, at any time and from time to time"), Ex. 3.1 § 8(b) ("The Corporation covenants and agrees that it will honor all Notices of Conversion tendered from the time of delivery of the Optional Redemption Notice through the date the Optional Redemption Amount is paid in full").

**Management of Ashley**

133.    From 2017 to August 2021, Mr. Miller operated Ashley's business as President and CEO.  Miller Decl. ¶¶ 5, 21.

134.    Mr. Miller regularly reported to Cardinals' representatives on the Board of Managers, Mr. Dupont and Mr. Disque.  *Id*. ¶ 21.

135.    Mr. Miller kept the Board informed with detailed Board presentations of activities.

*Id.*

**Ashley's Engagement of BSW to Determine EBITDA and as Ashley's Auditors**









**Return on Arena's Investment**



**Distributions of Alleged "Excess Capital"**



**The Nature of Insurance Proceeds**

██ ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

██ ████████████████████████████████████████████████

████████████████████████████████████████████

██ ████████████████████████████████████████████████

████████████████████████████████████████████

██ ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██

**TTM EBITDA Determinations**

██ ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

██ ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

## Declaration

195.    Attached hereto as **Ex. 49** is a declaration by Mason Miller that authenticates various other exhibits cited herein.


Dated: July 8, 2022                     Respectfully submitted,

                                        **DOWD BENNETT LLP**

                                        */s/ James F. Bennett*
                                        James F. Bennett,        46826 (MO)
                                        Edward L. Dowd, Jr.,   28785 (MO)
                                        Jeffrey R. Hoops,        69813 (MO)
                                        Milton P. Wilkins,       65278 (MO)
                                        7733 Forsyth Boulevard, Suite 1900
                                        St. Louis, MO 63105
                                        (314) 889-7300 (telephone)
                                        (314) 863-2111 (facsimile)
                                        jbennett@dowdbennett.com
                                        edowd@dowdbennett.com
                                        jhoops@dowdbennett.com
                                        mwilkins@dowdbennett.com

                                        *Attorneys for Plaintiff / Counterclaim*
                                        *Defendant Power Investments, LLC*


## CERTIFICATE OF SERVICE

The undersigned certifies that on July 8, 2022, the foregoing and all attachments were electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the same to all counsel of record.

                                        */s/ James F. Bennett*


29