**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| POWER INVESTMENTS, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cv-01022 |
| | ) | |
| CARDINALS PREFERRED, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

**CARDINALS PREFERRED, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO**
**EXCLUDE THE EXPERT REPORT OF PROFESSOR M. TODD HENDERSON**

Stephen J. O'Brien
DENTONS US LLP
One Metropolitan Square, Suite 3000
St. Louis, Missouri 63102
Telephone: (314) 241-1800
Fax: (314) 259-5959
stephen.obrien@dentons.com

*Attorneys for Defendant/Counterclaim*
*Plaintiff Cardinals Preferred, LLC*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL STANDARD................................................................................................................. 2

ARGUMENT .............................................................................................................................. 4

I.     PROFESSOR HENDERSON'S REPORT AND TESTIMONY SHOULD BE
EXCLUDED AS LEGAL OPINION ............................................................................. 4

II.    GENERAL NEGOTIATING PRINCIPLES AND EXPECTATIONS OF BUSINESS
PERSONS ARE NOT PROPER SUBJECTS OF EXPERT TESTIMONY ...................... 8

III.   PROFESSOR HENDERSON LACKS THE REQUISITE EXPERTISE TO TESTIFY
ON LIMITED LIABILITY COMPANY AGREEMENTS............................................. 11

CONCLUSION.......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acceptance Ins. Companies Sec. Litig.*,
    423 F.3d 899 (8th Cir. 2005) ...................................................................................3

*CDX Liquidating Tr. v. Venrock Assocs.*,
    411 B.R. 571 (N.D. Ill. 2009) .................................................................................8

*Christensen v. Lemaster*,
    2006 U.S. Dist. LEXIS 16905 (D. Idaho Mar. 21, 2006) ....................................4, 11

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 576 (1993)...........................................................................................2, 4, 11

*Farmland Indus. v. Frazier-Parrott Commodities, Inc.*,
    871 F.2d 1402 (8th Cir. 1989) .................................................................................7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).............................................................................................4, 11

*Langenbau v. Med-Trans Corp.*,
    167 F. Supp. 3d 983 (N.D. Iowa 2016)...............................................................3, 13

*Lipp v. Ginger C, LLC*,
    2017 U.S. Dist. LEXIS 7413 (W.D. Mo. Jan. 19, 2017) ................................ *passim*

*Marx & Co. v. Diners' Club, Inc.*,
    550 F.2d 505 (2d Cir. 1977)...................................................................................6, 7

*McCabe v. Macaulay*,
    2007 U.S. Dist. LEXIS 14210 (N.D. Iowa Feb. 26, 2007) ......................................3

*Morley v. Square, Inc.*,
    2016 U.S. Dist. LEXIS 56983 (E.D. Mo. Apr. 29, 2016).......................2, 3, 10, 11

*In re Novatel Wireless Secs. Litig.*,
    No. 08-cv-1689-AJB (RBB), 2012 U.S. Dist. LEXIS 160555 (S.D. Cal. Nov.
    8, 2012) .....................................................................................................................8

*Pless v. Cleveland Wrecking Co.*,
    2006 U.S. Dist. LEXIS 66557 (W.D.N.Y. Sept. 18, 2006) ....................................10

*Reynolds v. Henderson*,
    220 F. Supp. 3d 889 (N.D. Ill. 2016) .......................................................................8

*Salem v. United States Lines Co.*,
370 U.S. 31 (1962) ................................................................................................10

*Smilovits v. First Solar, Inc.*,
No. CV12-0555-PHX-DGC, 2019 U.S. Dist. LEXIS 221424 (D. Ariz. Dec.
27, 2019) ...........................................................................................................8

*Specht v. Jensen*,
853 F.2d 805 (10th Cir. 1988) ...................................................................................3

*TCBY Sys., Inc. v. RSP Co.*,
33 F.3d 925 (8th Cir. 1994) ....................................................................................10

*In re Twitter Secs. Litig.*,
No. 16-cv-05314-JST, 2020 U.S. Dist. LEXIS 252718 (N.D. Cal. Apr. 20,
2020) ...............................................................................................................8

*United Rentals, Inc. v. Ram Holdings, Inc.*,
937 A.2d 810 (Del.Ch. 2007) ....................................................................................5

*United States v. Klaphake*,
64 F.3d 435 (8th Cir. 1995) .....................................................................................1

*Wagner v. Hesston Corp.*,
450 F.3d 756 (8th Cir. 2006) ....................................................................................2

*Weitz Co., LLC v. Lexington Ins. Co.*,
786 F.3d 641 (8th Cir. 2015) ....................................................................................6

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*,
254 F.3d 706 (8th Cir. 2001) .............................................................................3, 12, 13

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
644 F.3d 604 (8th Cir. 2011) ....................................................................................2

**Rules**

Federal Rule of Evidence 702 ...................................................................................2

**Other Authorities**

VII *Wigmore on Evidence* § 1949 (3d ed. 1940) ...............................................................7

Defendant/Counterclaim-Plaintiff Cardinals Preferred, LLC ("Cardinals") submits this Memorandum of Law in Support of its Motion to Exclude the Report of Professor M. Todd Henderson dated April 29, 2022 (the "Report") (Ex. A) and to preclude Professor Henderson from testifying at trial.

## PRELIMINARY STATEMENT

Plaintiff/Counterclaim-Defendant Power Investments, LLC ("Power") has put forth an opinion from a corporate law professor who has never served on the board of a limited liability company, who has never written any articles on limited liability companies, and who has never been at the bargaining table in negotiating the terms of an LLC agreement. *See* Henderson Dep. (Ex. B) at 23:7-10; 24:17-19; 25:7-12; 25:17-26:4.  While Professor Henderson purports to opine on "custom and practice of investment arrangements like the one between Power and [Cardinals]," the opinions that Professor Henderson offers are legal opinions cloaked in expert language.

In the Executive Summary of his Report, Professor Henderson enumerates fourteen opinions that he is offering. *See* Ex. A at 4-5.  The first nine of these opinions (Opinions 1-9) are articulations and applications of purported principles of contract interpretation.  The final five opinions (Opinions 10-14) are an explanation and application of a legal principle -- the "forthright negotiator" principle -- developed by Delaware's equitable Court of Chancery to resolve ambiguous contracts.  Neither of these are proper subjects for expert testimony.  Instead, Professor Henderson is propounding and applying legal principles, seeking to intrude on a task that falls squarely within the purview of the Court. *See United States v. Klaphake*, 64 F.3d 435, 438 (8th Cir. 1995) ("[Q]uestions of law are the subject of the court's instructions and not the subject of expert testimony.").

To the extent that Professor Henderson is offering anything beyond his legal opinions, his opinions on general negotiating principles and his own expectations of business people are not "technical or complex matters" beyond the ken of the judge or jury and presentation of these opinions would be both unnecessary and prejudicial. *See Morley v. Square, Inc.*, 2016 U.S. Dist. LEXIS 56983, at *8 (E.D. Mo. Apr. 29, 2016). Further, even were such opinions permissible in the abstract, Professor Henderson lacks the relevant background and expertise to opine on the matters in this case, having not written on LLC agreements and having only limited "consulting" experience in the business world. *See* Ex. B at 24:17-19; 74:4-75:5. For all these reasons, the opinions in the Report do not satisfy the requirements for expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 576 (1993) and should be excluded in their entirety.

## LEGAL STANDARD

The Court must act as "gatekeeper" to "insure that proffered expert testimony is both relevant and reliable." *Morley*, 2016 U.S. Dist. LEXIS 56983, at *8 (quoting *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006)); *see also Daubert*, 509 U.S. at 589. Federal Rule of Evidence 702 provides the standard for the Court's admission of expert testimony, requiring that the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Accordingly, the testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." F.R.E 702. The Court's role as gatekeeper is especially important in a jury trial. *See, e.g. In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony.").

2

"It is well-settled that experts may not offer legal conclusions about a case." *Morley*, 2016 U.S. Dist. LEXIS 56983, at \*7.  It is inappropriate for a party to proffer an expert opinion that is merely that party's repackaged legal argument.  *See In re Acceptance Ins. Companies Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005) (holding that the trial court properly excluded expert opinions that were "more or less legal conclusions about the facts of the case as presented to the experts by the [plaintiffs]" and were "meant to substitute [for] the judgment of the [trial court]"). "[R]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." *McCabe v. Macaulay*, 2007 U.S. Dist. LEXIS 14210, at \*8 (N.D. Iowa Feb. 26, 2007). Accordingly, "federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case."  *Id*.  Such testimony "circumvents the fact finder's decision-making function by telling it how to decide the case."  *Id*. (*quoting Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988)).

Testimony on "custom and practice" is only permissible where it elucidates industry-specific practices that are beyond the ken of the judge or average juror.  *See, e.g. Morley*, 2016 U.S. Dist. LEXIS 56983, at \*8-9; *see also Lipp v. Ginger C, LLC*, 2017 U.S. Dist. LEXIS 7413, at \*7-8 (W.D. Mo. Jan. 19, 2017).  Further, expert testimony on "industry standards" must be anchored in the expert's specific experience with these standards, not just general experience in the field.  *See Langenbau v. Med-Trans Corp.*, 167 F. Supp. 3d 983, 1000 (N.D. Iowa 2016) (rejecting testimony on "best industry practices" in aviation where the expert relied on his "43 years of experience" but could not cite any "specific regulations or specific expressions of 'best industry practices'"); *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (holding that trial court erred in allowing hydrologist who was qualified

3

as an expert in flood risk management to testify on "safe warehousing practices" in the absence of relevant "education, employment, or other practical personal experiences" on that specific topic). Nor is it appropriate for an industry expert to testify as to a defendant's intent or state of mind. *Lipp*, 2017 U.S. Dist. LEXIS 7413, at *12 (citing *Christensen v. Lemaster*, 2006 U.S. Dist. LEXIS 16905, at *3 (D. Idaho Mar. 21, 2006)).

Even where the topics of expert testimony are permissible, the expert's testimony must still be reliable. *Daubert*, 509 U.S. at 589 ("[T]he trial judge must ensure that any and all scientific testimony or evidence is not only relevant, but reliable."). The subject of an expert's testimony must be "scientific knowledge," which requires "more than subjective belief or unsupported speculation." *Id.* Even in the "soft" sciences, *Daubert* still imposes the strict requirement "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151-52 (1999) (holding that *Daubert* "gatekeeping" obligation applies not only to "scientific" testimony, but to all expert testimony, including where the expert "relies on skill- or experience-based observation").

## ARGUMENT

### I.   PROFESSOR HENDERSON'S REPORT AND TESTIMONY SHOULD BE EXCLUDED AS LEGAL OPINION

Professor Henderson's Report, and any subsequent testimony, constitutes impermissible legal opinion both in laying out and applying principles of contract interpretation (Opinions 1-9) and effectively briefing and applying the "forthright negotiator" principle, a legal principle developed by the Delaware Chancery Court (Opinions 10-14). For example, Henderson offers the legal opinion that "[t]here are three relevant dates for put/call options":

4

- The *execution* date is when the option right vests in the holder of the option—***in this case, the options became vested rights on August 9, 2017***, the day the parties executed the Agreement;

- The *exercise* date is when a party with a right uses that right to buy/sell as per the terms of the option—in this case, Power exercised its call on August 9, 2021, and ***it was on this date that it became the beneficial owner of the shares (or units)*** under the terms of the Agreement and its call;

- The *settlement* date is when the paperwork and administrative details (including transfer of funds, transfer of record title or stock certificates, amendments to company agreements, etc.) are finalized—***in this case, the parties had up to six months from August 9, 2021 to finish this administrative work***[.]

Ex. A at 4 (emphasis added).  While Professor Henderson subsequently makes some effort to couch these legal opinions in "custom and practice" language, it is transparently little more than lip service.  Professor Henderson goes on to opine "*there is no doubt among market participants that the exercise of an option finalizes ownership rights in the party exercising the option at the moment of exercise*" and "*[i]n practice, conversion rights do not trump or modify the ability to exercise a plain-vanilla option.*"  Ex. A at 4-5 (emphasis added).  The "bottom line" conclusion, according to Professor Henderson's Report is that "*it is accepted practice that* beneficial ownership in an asset underlying an option transfers immediately upon the exercise of that option."  Ex. A at 9 (emphasis added).  But even if Henderson is correct that business people hold certain legal opinions (and there is no reason to think he is, *see infra*), the fact that a legal opinion regardless of who it is held by, is still just that – a legal opinion.

Professor Henderson's exposition and application of the "forthright negotiator" principle (Opinions 10-14) fares no better.  Professor Henderson explains "forthright negotiator" as a principle that "permit[s] a court deciding between conflicting accounts of ambiguous contract language to privilege the interpretation that 'has been objectively manifested [by one party] and is known or should be known by the other party.'"  Ex. A at 28-29 (quoting *United Rentals, Inc. v. Ram Holdings, Inc.*, 937 A.2d 810, 836 (Del. Ch. 2007)).  It is a principle of contract interpretation

5

for ambiguous contracts.   Again, Professor Henderson subsequently attempts to repackage his

discussion and conclusion of this legal principle in "custom and practice" language, asserting that

"*United Rentals* did not invent the 'forthright negotiator' principle from whole cloth, but rather

reflected the common practice among negotiators in deals like these."   Ex. A at 29.   But

Henderson's wholly unsupported assertion that the *United Rentals* Court derived its legal principle

from extant practices supposedly in the business world does not change the simple fact that

"forthright negotiator" is, as Henderson admits, understood by lawyers and courts to be "a

principle of contract interpretation."  Ex. B at 113:5-114:16; 116:8-20; 117:5-118:8.[1]

It is well established that the construction of the terms and conditions of a written contract

is "an issue of law for the trial court to determine, not matters of fact insertable into the trial record

through the Federal Rules of Evidence." *Weitz Co., LLC v. Lexington Ins. Co.*, 786 F.3d 641, 646

(8th Cir. 2015) (expert's interpretation of contract was a "clear invasion of the interpretative

responsibilities and legal pronouncements of the trial judge").   A law professor's experience is

"hardly a qualification for construing a document for its legal effect when there is a knowledgeable

[judge] whose exclusive province it is to instruct the jury on the law." *Marx & Co. v. Diners'

Club, Inc.*, 550 F.2d 505, 512 (2d Cir. 1977).   "The danger is that the jury may think that the

'expert' in the particular branch of the law knows more than the judge—surely an inadmissible

inference in our system of law." *Id*.

In *Marx*, the Court of Appeals found that the trial court erred in permitting a securities

expert to testify "as to the legal standards which he believed to be derived from the contract and

which should have governed [the defendant's] conduct." *Id*. at 509.  The expert testified that "best

---

[1] Professor Robert Rhee, Cardinals' rebuttal expert, made this very point in his rebuttal report and during his deposition.  *See, e.g.,* Ex. C (Rebuttal Report of Robert J. Rhee dated June 10, 2022) at 27-30; Ex. D (Rhee Deposition, Rough) at 131:4-132:8; 133:13-24.

efforts" in the context of a covenant to register shares means "the assumption on the part of the person who gives the covenant [of] an absolute, unconditional responsibility, to set to work promptly and diligently to do everything that would have to be done to make the registration statement effective." *Id*. The Court of Appeals found that this sort of testimony was not merely testimony about "common practice" in the securities field, but impermissible legal opinion on matters that "[t]he *judge* (or the jury as instructed by the judge) can determine equally well." *Id*. at 510 (quoting VII *Wigmore on Evidence* § 1949, at 81 (3d ed. 1940)).

Similarly, in *Lipp v. Ginger C*, the defendants presented an expert to opine on the elements of a joint venture under Missouri law and whether the evidence of a joint venture was sufficient in this case. *See* 2017 U.S. Dist. LEXIS 7413, at *6-10. The District Court excluded these opinions, holding that "[a]llowing expert testimony as to the requirements for a joint venture—a matter that can be illustrated succinctly in jury instructions—would be improper because it is unnecessary, not helpful to the jury and, cloaked as expert testimony, would be unduly prejudicial." *Id*. at *8. In addition, the expert's "conclusions about the lack of a joint venture relationship" between the defendants were excluded on the grounds that the "special legal knowledge of the judge makes the witness' testimony superfluous and the admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case." *Id*. at *9 (quoting *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989)).

Here, despite his attempts to couch his conclusions in "business practice" language, Professor Henderson, like the experts in *Marx* and *Lipp*, is opining on how the contract in this case should be interpreted and the legal meaning of the terms therein. Beyond that, Professor Henderson is providing a supplemental legal principle on the grounds of which he thinks this Court should find for Power in the event the contract is ambiguous. Professor Henderson's opinions are

legal principles and legal conclusions.  This is nothing new to Professor Henderson and his

opinions have been excluded as legal opinions in at least five (5) recent cases.  *See In re Twitter*

*Secs. Litig.*, No. 16-cv-05314-JST, 2020 U.S. Dist. LEXIS 252718 (N.D. Cal. Apr. 20, 2020)

(excluding Professor Henderson's testimony regarding whether trading activity at issue is

consistent with scienter); *Reynolds v. Henderson*, 220 F. Supp. 3d 889 (N.D. Ill. 2016) (granting

motion for summary judgment, partially based on finding Professor Henderson's testimony

inadmissible as legal opinion); *In re Novatel Wireless Secs. Litig.*, No. 08-cv-1689-AJB (RBB),

2012 U.S. Dist. LEXIS 160555 (S.D. Cal. Nov. 8, 2012) (excluding Professor Henderson from

offering legal opinions or legal conclusions as part of his testimony); *Smilovits v. First Solar, Inc.*,

No. CV12-0555-PHX-DGC, 2019 U.S. Dist. LEXIS 221424 (D. Ariz. Dec. 27, 2019) (instructing

counsel that Professor Henderson will not be permitted to provide legal opinions and/or

conclusions at trial); *CDX Liquidating Tr. v. Venrock Assocs.*, 411 B.R. 571 (N.D. Ill. 2009)

(same).  The Court should likewise exclude Professor Henderson's opinions in this case.

## II.      GENERAL NEGOTIATING PRINCIPLES AND EXPECTATIONS OF BUSINESS PERSONS ARE NOT PROPER SUBJECTS OF EXPERT TESTIMONY

To the extent that the Court finds any of Professor Henderson's opinions survive after his

legal conclusions are excluded, the remaining opinions (if any) would be little more than

pronouncements of purported general negotiating principles and *ipse dixit* statements about "what

reasonable market participants would expect." Ex. A at 37.  These are not proper subjects of expert

testimony.   For example, Professor Henderson generally opines that "[p]arties to complex

negotiations have an obligation to be forthright about what they want and what they are giving"

and "it is expected that parties convey their understanding of contractual language." Ex. A at 28-

29.  He explains that lawyers generally counsel clients that, on key terms, "it is essential that

turning points in negotiations are based on clear articulations of the parties' intent." Ex. A at 30

(internal quotation, citation omitted).  Professor Henderson even goes so far as to suggest that Cardinals' failure to educate Power on its understanding of the deal amounted to "[d]eliberately hiding the ball" through "secret ambiguity designed to mislead one party" because "reasonable market participants would expect" their counterparties to explain their interpretations of the contract.  *See* Ex. A at 30, 37.

Professor Henderson goes through the negotiations in this case and flags what he calls certain "turning points" from which he then argues the parties' intents can be inferred. Specifically, Henderson argues that ███████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████   Ex. A at 30-31.  Professor Henderson argues Mr. Dupont failed to be a "forthright negotiator" in failing to clarify in his response to Mr. Miller that Cardinals still intended to seek a conversion right that could trump Power's call option. Ex. A at 31 (explaining that Cardinals was at that moment ████████████████████████

████████████████████████████████████████.  Putting aside other numerous substantive problems with Professor Henderson's interpretation of the interactions between Dupont and Miller, the bigger problem is that it is not the province of the expert to opine on the parties' intentions.[2]

Expert testimony is properly excluded where "all the primary facts can be accurately and intelligibly described to the jury" and jurors "'of common understanding, are as capable of

---

[2]  While it would not alter the conclusion that his testimony is impermissible for all of the reasons set forth herein, it is also noteworthy that Professor Henderson's conclusions regarding a request in a February 11, 2017 email fail to address the fact that this was six months before the deal closed and pre-dated the lopsided economic investment and concomitant risk Cardinals was taking given Power's small monetary contributions.

comprehending the primary facts and of drawing correct conclusions' as anyone else." *Morley*,

2016 U.S. Dist. LEXIS 56983, at *8-9 (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35

(1962)). While expert testimony can be appropriate under the limited circumstance where

industry-specific norms are "technical or complex," Henderson's testimony regarding a general

"obligation to be forthright" and what "market participants would expect" does not fit this bill.

*Compare TCBY Sys., Inc. v. RSP Co.*, 33 F.3d 925, 929 (8th Cir. 1994) (permitting expert

testimony on reasonableness of site review and evaluation processes in the franchise industry) *and*

*Pless v. Cleveland Wrecking Co.*, 2006 U.S. Dist. LEXIS 66557, at *12 (W.D.N.Y. Sept. 18, 2006)

(permitting expert testimony on occupational safety regulatory standards) *with Morley*, 2016 U.S.

Dist. LEXIS 56983, at *8-9 (excluding expert testimony regarding what "typical founders

presume" and "believe" regarding ownership).

The Court's decision in *Morley v. Square, Inc.*, 2016 U.S. Dist. LEXIS 56983 (E.D. Mo.

Apr. 29, 2016) is instructive here. In *Morley*, the plaintiffs sought to prove, among other things,

that the defendants unlawfully cut one of the founders out of an alleged joint venture startup. *See*

i*d*. at *4. The plaintiffs presented an expert to opine on "the typical expectations of participants in

early stage ventures." *Id*. at *4-5. The plaintiffs represented that the expert would testify "based

on his extensive experiential expertise, about typical standards, behaviors, and assumptions in the

world of early-stage joint ventures" and that based on the facts, "other similarly situated parties at

similarly nascent stages of business would assume themselves to be joint owners of the business."

*Id*. at *7. The District Court excluded this opinion on the grounds that "it is not helpful to the jury

and, cloaked as expert testimony, would be unduly prejudicial." *Id*. at *8-9.

The Court in *Lipp* similarly excluded opinions of the expert on the parties' intent. 2017

U.S. Dist. LEXIS 7413, at *12. The Court explained that the expert's testimony "that certain

10

documents and amendments 'show that it was the intent of the parties that the properties would be vacant by the time [one defendant] acquired them from [the other defendant]'" did not meet the reliability requirement under Rule 702. *Id.* (citing *Christensen v. Lemaster*, 2006 U.S. Dist. LEXIS 16905 (D. Idaho 2006) ("[The expert] is not an expert in either the law or psychology—and did not personally observe [defendant's] conduct—and thus has nothing to offer" on the defendant's state of mind)).

Here, like in *Morley* and *Lipp*, Henderson invokes "concepts surrounding human interaction and basic business activity" that "will not be foreign to the jury." *Morley*, 2016 U.S. Dist. LEXIS 56983 at *8. Professor Henderson is not an expert in psychology and is not qualified to opine on the parties' intentions or how the course of dealings evinces these intentions. *See Lipp*, U.S. Dist. LEXIS 7413, at *12. The jury is fully equipped to understand this evidence and draw its own factual conclusions. Professor Henderson's opinions should be excluded for this additional reason as well.

## III.   PROFESSOR HENDERSON LACKS THE REQUISITE EXPERTISE TO TESTIFY ON LIMITED LIABILITY COMPANY AGREEMENTS

Finally, even if the Court were to find any of Professor Henderson's opinions still *relevant* despite the prejudice described above, a fundamental problem remains, i.e., that Professor Henderson's opinions also must be reliable. *See Daubert*, 509 U.S. at 589. Despite his impressive academic credentials, Professor Henderson simply lacks the level of expertise on limited liability company agreements and real world business negotiations to make his testimony much more than "subjective belief or unsupported speculation." *Id.* Professor Henderson's Report therefore lacks the "level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 151-52.

Professor Henderson provides only vague pronouncements about his experience in the field as an "academic and a consultant for the past two decades," Professor Henderson provides no concrete connection between his personal experience or academic research and the subject matter at hand.  *See* Ex. A at 2.  Professor Henderson concedes that he has never served on the board of a limited liability company (Ex. B at 25:7-12), has never written any articles on limited liability agreements (Ex. B at 24:17-19), and has "never been at the bargaining table on behalf of myself or another entity" in negotiating an LLC agreement (Ex. B at 25:17-26:4).  Indeed, Professor Henderson appeared somewhat unfamiliar by the term "alternative entity law"—the common term used to describe business organizations other than corporations (*e.g.*, LLCs, LPs, LLPs).  *See* Ex. B at 23:18-21 (Q: Is corporate law as you use the term different than alternative entity law?  A: I don't know what you mean by— do you mean L.L.C.s or something like that?).

Professor Henderson does not claim to have surveyed business people or conducted some other empirical study on the beliefs of business persons—or to be relying on any empirical studies done by others.  *See* Ex. A at 8 ("Materials Considered").  Nor, does Professor Henderson claim to have undertaken any empirical study of limited liability agreements.  *See id*.  Despite these holes in his experience and methodology, Professor Henderson makes sweeping pronouncements, including that the rights and responsibilities in the Ashley LLC agreement "are similar to those set out *in tens of thousands of investment agreements*" (Ex. A at 2, emphasis added), even though he later makes the more modest claim of what he has "seen in my experience working with dozens of closely held companies similar to Ashley" (Ex. A at 18).

Where the basis of an expert's opinion is personal experience (or academic study), the expert must actually have the relevant experience (or have done the relevant academic study).  *See Wheeling*, 254 F.3d at 715-16.  Merely citing general experience in the field is not enough.  *See*

12

*Langenbau*, 167 F. Supp. 3d at 1000 ("43 years of experience" insufficient without tie to specific subject matter).   The expert needs to show the connection between his experience and the conclusions he reaches.  *See id.* (proffered expert's views on what "regulations require or should require or what 'best industry practices' should dictate in particular circumstances is not transformed into a reliable expert opinion simply by his years of experience, in the absence of some connection to specific regulations or specific expressions of 'best industry practices'").

In *Wheeling*, for example, the Eighth Circuit Court of Appeals found that the District Court abused its discretion by allowing an expert to testify beyond the scope of his expertise.  254 F.3d at 715-16.   Although the expert was "eminently qualified to testify as an expert hydrologist regarding matters of flood risk management," he "sorely lacked the education, employment, or other practical personal experiences to testify as an expert specifically regarding safe warehousing practices."  *Id.* at 715.  The Court observed that the expert "did not study warehousing practices during his formal education, he has not written about warehousing practices in any of his sixty-plus published articles, and he has never been employed by a warehouseman during any of the twenty-one projects on which he has worked."  *Id*.  Furthermore, the expert did not compensate for his lack of personal practical experience "by, for example, determining or studying the actions of other warehousemen along the Mississippi River."  *Id*.

Like the expert in *Wheeling*, despite his impressive resume, Professor Henderson lacks "the education, employment, or other practical personal experiences" to testify on the particular matters at issue in this case.  Thus, Professor Henderson's opinions should likewise be excluded on reliability grounds.

13

**CONCLUSION**

For the foregoing reasons, Cardinals respectfully asks this Court to exclude the Report and to preclude Professor Henderson from testifying at trial.

Dated: July 7, 2022                                  Respectfully submitted,

                                                     DENTONS US LLP

                                                     By: */s/ Stephen J. O'Brien*
                                                      Stephen J. O'Brien, #43977MO
                                                      One Metropolitan Square, Suite 3000
                                                      St. Louis, Missouri 63102
                                                      Telephone: (314) 241-1800
                                                      Fax: (314) 259-5959
                                                      stephen.obrien@dentons.com

                                                     REED SMITH LLP

                                                     By: */s/ Wayne C. Stansfield*
                                                      Joseph J. Tuso
                                                      Wayne C. Stansfield
                                                      Nicholas R. Rodriguez
                                                      Three Logan Square
                                                      1717 Arch Street, Suite 3100
                                                      Philadelphia, PA 19103
                                                      215-851-8100
                                                      jtuso@reedsmith.com
                                                      wstansfield@reedsmith.com
                                                      nrodriguez@reedsmith.com
                                                      (*admitted pro hac vice*)

                                                      *Attorneys for Defendant/Counterclaim*
                                                      *Plaintiff Cardinals Preferred, LLC*

**CERTIFICATE OF SERVICE**

14

I hereby certify that a true and correct copy of the above and foregoing was electronically filed on July 7, 2022 with the United States District Court for the Eastern District of Missouri using the CM/ECF system and send copies will be sent to all parties via electronic mail.

_/s/ Wayne C. Stansfield_

Wayne C. Stansfield
